**In re NORPLANT CONTRACEPTIVE PRODUCTS LIABILITY LITIGATION.**

MDL No. 1038.

United States District Court, E.D. Texas, Beaumont Division.

Aug. 14, 2002.

Christopher Matthew Parks, Parker & Parks, Port Arthur, TX, for Plaintiffs.

F. Lane Heard III, Williams & Connolly, Washington, DC, for Defendants.

*MEMORANDUM OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART WYETH'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE THE LEARNED INTERMEDIARY DOCTRINE/CAUSATION AND (2) GRANTING WYETH'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE CONDITIONS FOR WHICH THERE IS NO EVIDENCE OF CAUSATION*

SCHELL, District Judge.

Pending before the court is "Wyeth's Motion For Partial Summary Judgment Re The Learned Intermediary Doctrine/Causation," filed by Defendants American Home Products Corporation, Wyeth–Ayerst Laboratories, Inc., and Wyeth Laboratories, Inc. (collectively "Defendants"), on May 25, 1999 (Dkt.# 712, 713).[1] A response was filed on behalf of Plaintiffs represented by the law firms of Provost ★ Umphrey and Ness, Motley, Loadholt, Richardson & Poole on May 12, 2000 (Dkt.# 747). Additionally, a number of Plaintiffs filed individual responses,[2] while some Plaintiffs individually filed joinders to the response filed by Provost ★ Umphrey, and Ness, Motley, Loadholt, Richardson & Poole, adopting at least some of the arguments made therein.[3] Defendants filed a reply in support of their

1. On March 11, 2002, American Home Products Corporation officially changed its corporate name to Wyeth, and Wyeth–Ayerst Laboratories became Wyeth Pharmaceuticals. *Special Announcements*, at http://www.wyeth.com/news/special.asp (last visited August 6, 2002).

2. *See* "Memorandum Of Points & Authorities In Opposition To Wyeth's Four Motions For 'Partial' Summary Judgment On Behalf Of Barbara Bueno And Annette Caraveo," filed on May 9, 2000 (Dkt.# 745); "Affidavit Opposing Defendant's Four Motions For Summary Judgment," filed on May 1, 2000, on behalf of Brandy L. Linsner (Dkt.# 2); "Response Of Plaintiff Karan L. Zopatti To

Wyeth's Four Motions For Partial Summary Judgment," filed on May 15, 2000 (Dkt.# 751); "Plaintiff's Response To Defendant Wyeth–Ayerst Laboratories' Motions For Partial Summary Judgment," filed on May 16, 2000 on behalf of Penny and Robert Robinson (Dkt.# 753); "[R]esponse to the[ ] motions for partial Summary Judgment," filed on May 15, 2000, by Plaintiff Christa White; and Response letter to the Law Offices of Williams & Connolly, L.L.P., from Plaintiff Ingrid Hakala, filed on May 30, 2000 (Dkt.# 4).

3. *See* "Plaintiffs' Response To Defendants' Motions For Partial Summary Judgment Re The Learned Intermediary Doctrine, Adequacy Of Norplant Labeling And Conditions For

motion on June 16, 2000 (Dkt.# 758) and a supplemental reply on August 10, 2000 (Dkt.# 762). Defendants contend that they are entitled to partial summary judgment because the learned intermediary doctrine shields them from liability for most of Plaintiffs' claims.

Also pending is "Wyeth's Motion For Partial Summary Judgment Re Conditions For Which There Is No Evidence Of Causation" (Dkt.# 716, 717), filed on May 25, 1999.[4] Once again, Plaintiffs represented by Provost ★ Umphrey and Ness, Motley, Loadholt, Richardson & Poole filed a joint response (Dkt.# 752), and several Plaintiffs' responded individually. On June 16, 2000, Defendants replied to the responses (Dkt.# 760). Upon careful consideration of the parties' submissions in light of the applicable law, the court finds that Defendants' motion for partial summary judgment regarding the learned intermediary doctrine should be GRANTED in part and DENIED in part. Defendants' motion for partial summary judgment regarding conditions for which there is no evidence of causation should be GRANTED.[5]

## TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 799

Which There Is No Evidence Of Causation," filed on May 15, 2000, on behalf of all Plaintiffs represented by the law firm of Parker & Parks (Dkt.# 748); "Joinder In Memorandum In Opposition To Motion For Summary Judgment," filed on behalf of Jaylee Smith on May 15, 2000 (Dkt.# 750); "Plaintiff's Brief In Opposition To Wyeth's Motions For Partial Summary Judgment," filed on behalf of Susan Port on May 15, 2000 (Dkt.# 754); and "Plaintiff's Response To Defendants' Motions For Partial Summary Judgment Re The Learned Intermediary Doctrine, Adequacy Of The Norplant Labeling And Conditions For Which There Is No Evidence of Causation," filed on June 16, 2000, on behalf of nineteen Plaintiffs represented by the law firm of Sybil Shainwald, P.C. (of counsel is Allen & Lippes) (Dkt.# 757).

4. Defendants subsequently filed an amended motion for partial summary judgment regarding causation wherein they asked the court to defer consideration of certain side effects when ruling on the motion (Dkt.# 734). On March 3, 2000, Defendants filed a second amended motion effectively requesting the court to disregard the scope of the amended motion in favor of the original motion (Dkt.# 743).

5. Defendants filed three additional dispositive motions with the court:
 (1) "Wyeth's Motion for Partial Summary Judgment Re Adequacy Of The Norplant Labeling," filed on May 25, 1999 (Dkt.# 714, 715). Provost ★ Umphrey and Ness, Motley, Loadholt, Richardson & Poole filed a response on behalf of their clients on May 12, 2000 (Dkt.# 746), and several Plaintiffs filed individual responses. Defendants filed a reply on June 16, 2000 (Dkt.# 759). In this motion, Defendants contend they are entitled to partial summary judgment because their physician warnings are adequate as a matter of law.
 (2) Defendants' "Motion For Summary Judgment Re 102 Plaintiffs," filed on February 13, 2001 (Dkt.# 779, 780). No response was filed, but Defendants filed a reply on March 20, 2001 (Dkt.# 782). This motion is based on res judicata.
 (3) Defendants also filed a "Motion To Dismiss For Want Of Prosecution" on December 4, 2000 (Dkt.# 765, 766). Numerous Plaintiffs filed responses (among them, Dkt. # 767, 769, 772, 774, 776, 777), and Defendants replied on February 1, 2002 (Dkt.# 778).
Due to the court's decision in this memorandum opinion and order, Defendants' motion for partial summary judgment regarding the adequacy of Norplant labeling, motion for summary judgment regarding 102 Plaintiffs, and motion to dismiss for want of prosecution are MOOT.

II. SUMMARY JUDGMENT STANDARD ..................................802

III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
 REGARDING THE LEARNED INTERMEDIARY DOCTRINE/
 CAUSATION ..............................................803
 A. INTRODUCTION AND RULES ..............................803
 B. APPLICABILITY OF THE LEARNED INTERMEDIARY DOCTRINE TO EACH CASE.....805
 1. Jurisdictions That Apply The Learned Intermediary Doctrine With-
 out An Exception Relevant To Norplant ...........806
 2. The New Jersey Exception To The Learned Intermediary Doctrine
 In Norplant Cases ...............................811
 a. Plaintiffs Who Filed In New Jersey, But Had Norplant Implant-
 ed In Another Jurisdiction ..................812
 i. New Jersey Choice Of Law Rules .........813
 ii. Analysis Of New Jersey Choice Of Law Rules .................814
 b. Plaintiffs Who Filed In Jurisdictions Other Than New Jersey,
 But Had Norplant Implanted In New Jersey ....818
 i. New York Choice Of Law Rules And Analysis .................818
 ii. Illinois Choice Of Law Rules And Analysis ....................820
 3. Plaintiffs Who Responded Individually To This Motion .................821
 C. ANALYSIS OF SUMMARY JUDGMENT EVIDENCE REGARDING CAUSATION ...........823
 D. SUMMARY OF THE COURT'S DECISION ON THIS MOTION ......828

IV. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
 REGARDING CONDITIONS FOR WHICH THERE IS NO EVIDENCE
 OF CAUSATION ...........................................829
 A. INTRODUCTION ........................................829
 B. ANALYSIS OF SUMMARY JUDGMENT EVIDENCE REGARDING CAUSATION ...........829
 C. SUMMARY OF THE COURT'S DECISION ON THIS MOTION ......833

V. CONCLUSION ..............................................833
 A. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE
 LEARNED INTERMEDIARY DOCTRINE ......................833
 B. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
 CONDITIONS FOR WHICH THERE IS NO EVIDENCE OF CAUSATION ..............834
 C. RAMIFICATIONS OF THE COURT'S RULINGS—THE CLOSE OF MDL NO. 1038.....835

## I. BACKGROUND

This is a multidistrict products liability action involving the Norplant prescription contraceptive device manufactured by Defendants. In 1991, Defendants introduced Norplant to the market after more than two decades of research and development. Norplant is a long term, reversible birth control device that consists of six plastic capsules. *See Fact Sheet: Norplant and You* (Planned Parenthood Federation of America, Inc., New York, N.Y.), Jan. 1997, at 1, *available at*, http://www.plannedparenthood.org/birth-control/norplant.htm.

Each of these capsules contains the synthetic hormone levonorgestrel. *Id.* The capsules are implanted below the skin of a woman's upper arm and, while implanted, constantly release a small dose of levonorgestrel into the blood stream. *Id.* Levonorgestrel prevents pregnancy by keeping the ovaries from releasing eggs, thickening the cervical mucus, and deterring sperm from joining with an egg. *Id.* Statistics show Norplant to be a highly effective method of birth control: fewer than four out of 100 women who use Norplant for five years will become pregnant. *Id.* at 2.[6]

---

**6.** Defendants recently announced they will not resume selling Norplant. *Wyeth Won't Resume Its Sales of Norplant,* HOUSTON CHRONI-

CLE, July 27, 2002. This statement comes nearly two years after Defendants pulled Norplant from the market. *Id.*

Central to *all* claims of each Plaintiff in this litigation is the assertion that Defendants failed to adequately warn consumers and their prescribing physicians or health-care providers about the dangerous side effects associated with Norplant. In their motion for partial summary judgment regarding the learned intermediary doctrine, Defendants seek summary judgment against all Plaintiffs claiming to have suffered any of the 26 primary side effects listed in the "Adverse Reactions" section of Norplant's physician labeling.[7] Defendants contend that, even if their labeling is shown to be inadequate, the learned intermediary doctrine requires Plaintiffs to put on evidence showing that the inadequate warnings proximately caused their alleged injuries, and they have failed to do so.

Defendants also move for partial summary judgment against all Plaintiffs who have allegedly suffered any side effect other than the 26 listed as "Adverse Reactions" in Norplant's labeling. Plaintiffs collectively allege more than 950 other side effects (hereinafter "exotic conditions").[8] In short, Defendants argue that summary judgment as to the exotic side effects is proper because Plaintiffs, who have the burden to prove causation, have not come forward with any scientifically reliable evidence on general causation.

While the extensive facts of this case are well documented in other orders and opinions and need not be fully recounted here, a brief overview of the procedural history is in order. Beginning in 1994, thousands of lawsuits were filed against Defendants in state and federal courts throughout the nation. Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation transferred all federal Norplant cases to this court for consolidated pretrial handling on December 6, 1994. 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred [by the judicial panel on multidistrict litigation] to any district for coordinated or consolidated pretrial proceedings."). Once transferred to this court, Plaintiffs sought certification of a nationwide class of all persons who have suffered or may suffer injury as a result of using Norplant. The court denied that motion as premature on August 5, 1996, finding that bellwether trials were needed to assess the propriety of certifying such a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

---

7. The 26 side effects are as follows: bleeding irregularities (specifically, (1) many bleeding days or prolonged bleeding; (2) spotting; (3) amenorrhea; (4) irregular onsets of bleeding; (5) frequent bleeding onsets; (6) scanty bleeding); (7) infection at implant site; (8) pain or itching at implant site; (9) removal difficulties; (10) headaches; (11) nervousness; (12) nausea; (13) dizziness; (14) adnexal enlargement; (15) dermatitis; (16) acne; (17) change in appetite; (18) mastalgia; (19) weight gain; (20) hair loss and hair growth; (21) breast discharge; (22) cervicitis; (23) musculoskeletal pain; (24) abdominal discomfort; (25) leukorrhea; and (26) vaginitis. *See* Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 2, Tab 36 at unnumbered 3.

8. Approximately 950 exotic conditions are enumerated at Tab 35 in volume two of De-fendants' "Appendix· In Support Of Wyeth's Four Motions For Partial Summary Judgment." Some of the many conditions claimed therein are as follows: abdominal pain, AIDS, anemia, anxiety, birth defects, dry mouth, eye problems, tumors, hepatitis, hair problems, itching, jaundice, bowel problems, lesions, nervous breakdown, ovarian problems, red eye, paralysis, sexual problems, depression, spastic colon, swelling, ulcers, warts, various fears, and hundreds of others. *See* Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 2, Tab 35. Basically, the exotic conditions encompass every claim of injury made by Plaintiffs against Defendants, even if not among those inscribed at Tab 35, other than claims corresponding to the 26 side effects mentioned above.

After several Plaintiffs were selected for the first of three bellwether trials and the parties had completed discovery, Defendants moved for summary judgment on the basis of the learned intermediary doctrine. Similar to the instant motion concerning the learned intermediary doctrine, Defendants argued that the doctrine required them to warn only Plaintiffs' prescribing physicians about the dangerous propensities of Norplant, not each individual patient, and that there was no evidence that Defendants had failed to adequately do so or that their allegedly inadequate physician warnings were the producing cause of Plaintiffs' injuries. *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F.Supp. 700, 702–03 (E.D.Tex.1997), *aff'd*, 165 F.3d 374 (5th Cir.1999). The court found that the learned intermediary doctrine did indeed apply to the bellwether Plaintiffs' claims whether asserted under a theory of strict products liability, negligence, breach of implied warranty of merchantability, misrepresentation, or consumer fraud under the Texas Deceptive Trade Practices Act ("DTPA") because the claims were essentially claims for failure to warn.[9] *Id.* at 709, *aff'd*, 165 F.3d 374.

Because the bellwether Plaintiffs failed to produce any evidence that their prescribing physicians were unaware of Norplant's complained of side effects, or that "but for" Defendants' inadequate warning labels they would not have prescribed Norplant, the court found that the bellwether Plaintiffs failed to prove causation and granted Defendants' motion for summary judgment on March 4, 1997. *Id.* at 709–11, *aff'd*, 165 F.3d 374. In reaching that decision, the court declined to recognize an exception to the learned intermediary doctrine for prescription contraceptives and rejected the assertion that the doctrine should not apply because Defendants had engaged in an aggressive direct-to-consumer advertising campaign. *Id.* at 705–08, *aff'd*, 165 F.3d 374.

The bellwether Plaintiffs appealed the court's summary judgment ruling to the Fifth Circuit. On appeal, they argued that the learned intermediary doctrine is a common law defense that does not apply to statutes like the DTPA or to claims for fraud and misrepresentation; that the court should recognize a contraceptive exception to the doctrine given that physicians play a reduced role in the selection of contraceptives and cannot be expected to convey adequate warnings to patients under the circumstances; that the doctrine should not apply because Defendants aggressively marketed Norplant directly to consumers, thereby rendering inadequate the warnings provided to physicians; and finally, that the doctrine should not apply because the FDA required Defendants to provide warnings about Norplant's side effects. On January 29, 1999, the Fifth Circuit rejected each of the bellwether Plaintiffs' arguments and affirmed this court's ruling. *See In re Norplant Contraceptive Prod. Liab. Litig.*, 165 F.3d 374 (5th Cir. 1999).

Shortly after the Fifth Circuit issued its opinion, Defendants filed the partial summary judgment motions now pending before the court. Not long thereafter, the parties advised the court that they were engaged in settlement negotiations and wanted the court to postpone consideration of Defendants' motions until the settlement process had run its course. In Au-

---

9. Because each bellwether Plaintiff had Norplant implanted in Texas, the substantive law of Texas governed Defendants' summary judgment motion in those cases. As further discussed in this opinion, application of the learned intermediary doctrine to the claims of the remaining Plaintiffs who had Norplant inserted in other jurisdictions depends upon the substantive law of those jurisdictions.

gust 1999, Defendants began the process of making settlement offers that most eligible Plaintiffs in both state and federal cases were expected to accept. That prediction proved to be correct: over the next three years approximately 32,000 Plaintiffs accepted Defendants' settlement offer while another 2,970 either rejected it or failed to timely respond.

The court acknowledges the instant motions have been on file for three years, but, in the interests of judicial economy, the court wanted to wait and see which Plaintiffs would settle before ruling on the motions. Given the large number of Plaintiffs involved, however, the settlement plan moved slowly, taking several years to consummate. The last stipulations of settlement were received in April 2002. Now that the settlement process is complete, the time has come to resolve Defendants' motions.[10] *See, e.g.,* MANUAL FOR COMPLEX LITIGATION, THIRD, § 31.132, at 253 (1995) (stating that the transferee judge is empowered to rule on motions for summary judgment) (citing *In re Trump Casino Sec. Litig.—Taj Mahal Litig.,* 7 F.3d 357, 367–68 (3d Cir.1993)).

At this point, the court notes that, consistent with its findings in the first bellwether case, the claims of all remaining Plaintiffs are fundamentally grounded in the assertion that Defendants failed to warn them of Norplant's adverse side effects. Therefore, no matter how Plaintiffs characterize their specific claims in each individual complaint—*i.e.,* strict products liability, negligence, fraud, misrepresentation, breach of warranty, et cetera—the court will treat Plaintiffs' claims against Defendants as failure to warn claims in analyzing these motions for partial summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Defendants seek partial summary judgment in this case pursuant to Rule 56 of the Federal Rules of Civil Procedure. FED.R.CIV.P. 56(b). Under Rule 56, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 56(c). A material fact issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To carry its summary judgment burden, Defendants must demonstrate that Plaintiffs have failed to establish an essential element of their cases. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264 (5th Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Because Plaintiffs bear the burden of proof at trial on the issues of adequacy of Defendants' warning labels and causation, Defendants are not required to " 'produce evidence negating the existence of a material fact,' " but need "only . . . point out the absence of evidence supporting [Plaintiffs'] case[s].' " *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.1992) (quoting *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir.1990)); *In re Norplant Contraceptive Prod. Liab. Litig.,* 955 F.Supp. at 710 (citation omitted), *aff'd,* 165 F.3d at 377–78.

If Defendants satisfy their initial burden, the burden shifts to Plaintiffs to "identify specific evidence in the summary judgment record demonstrating that there

---

**10.** Defendants assert the instant motions for partial summary judgment against the 2,970 nonsettling Plaintiffs who remain in this litigation.

is a material fact issue concerning the essential elements" of their cases. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (citation omitted). In that situation, Plaintiffs cannot rest on allegations or denials in the pleadings and must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429. Of course, all evidence must be viewed in the light most favorable to the nonmoving party and all reasonable inferences must be drawn in that party's favor. *See Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

## III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE LEARNED INTERMEDIARY DOCTRINE/CAUSATION

### A. *INTRODUCTION AND RULES*

 In this case, Defendants invoke the learned intermediary doctrine as a bar to Plaintiffs' recovery. The learned intermediary doctrine provides an exception to the general rule imposing a duty on manufacturers to warn consumers about the risks of their products. *See Reyes v. Wyeth Lab.*, 498 F.2d 1264, 1276 (5th Cir. 1974); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 85 (8th Cir.1966). Under the doctrine, a drug "manufacturer is excused from warning each patient who receives the product when the manufacturer properly warns the prescribing physician of the product's dangers." *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467–68 (5th Cir. 1999) (citing *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 591–92 (Tex. 1986)). Hence, a drug manufacturer's duty to warn consumers about the dangers of its prescription drugs extends only to the prescribing physician or healthcare provider, who acts as a "learned intermediary" between the manufacturer and the ultimate consumer and assumes responsibility for advising individual patients of the risks associated with the drug. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912 (5th Cir.1992). The manufacturer's duty to warn is limited to adequately informing the healthcare provider of any risks associated with the product's use. *See Brooks v. Medtronic*, 750 F.2d 1227 (4th Cir.1984); *Porterfield*, 183 F.3d at 467–68 (observing that the manufacturer relies on the physician to pass on its warnings). "Thus, a warning to the [healthcare provider] is deemed a warning to the patient; the manufacturer need not communicate directly with all ultimate users of prescription drugs." *Kirsch v. Picker Intern., Inc.*, 753 F.2d 670, 671 (8th Cir.1985) (citation omitted). This is because the prescribing healthcare provider is a medical expert and can weigh the benefits of the medication against its potential dangers. *Reyes*, 498 F.2d at 1276–77.[11]

██ If the learned intermediary doctrine applies, Plaintiffs must prove the following in order to recover for failure to warn: (1) that the product warnings given by the drug manufacturer to healthcare providers are inadequate; and (2) that the inadequate warnings were a producing

---

11. When the warning to the intermediary is inadequate or misleading, however, the manufacturer remains liable for injuries sustained by the ultimate user. *Porterfield*, 183 F.3d at 468 (citation omitted). Put another way, if the prescribing healthcare provider is not sufficiently warned, the provider is not acting as a learned intermediary for the purpose of determining whether the warning was adequate.

cause of and/or proximately caused Plaintiffs' subsequent injuries. *See Porterfield,* 183 F.3d at 468.

■ Because the Judicial Panel on Multidistrict Litigation transferred these Norplant cases to this court pursuant to 28 U.S.C. § 1407, the undersigned is obligated to apply the substantive law of the transferor courts and treat each case as if it were pending in the district from which it was transferred. *See In re Dow Sarabond Prods. Liab. Litig.,* 666 F.Supp. 1466, 1468 (D.Colo.1987) (citing *In re Plumbing Fixtures Litig.,* 342 F.Supp. 756, 758 (J.P.M.L.1972) (citation omitted)); *see also Van Dusen v. Barrack,* 376 U.S. 612, 643–46, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Moreover, given that Plaintiffs' claims are in federal court on the basis of diversity jurisdiction, the court looks to the law of the forum state to determine which jurisdiction's law governs each case. *See Huddy v. Fruehauf Corp.,* 953 F.2d 955, 956 (5th Cir.1992) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)) (citation omitted). While the vast majority of jurisdictions recognize and apply the learned intermediary doctrine to prescription drugs like Norplant, at least one state recognizes an exception to the rule that may significantly impact its applicability here. The Supreme Court of New Jersey has held that the doctrine does not apply when a drug manufacturer engages in direct-to-consumer advertising. *Perez v. Wyeth Lab. Inc.,* 161 N.J. 1, 734 A.2d 1245 (1999). Massachusetts has exempted oral contraceptives from the reach of the learned intermediary doctrine. *MacDonald v. Ortho Pharm. Corp.,* 394 Mass. 131, 475 N.E.2d 65 (1985).

Hence, when determining the applicability of the learned intermediary doctrine with regard to this motion, choice of law questions quickly arise. For example, if a hypothetical plaintiff who had Norplant inserted in New Jersey filed suit in Texas, an apparent conflict would arise between New Jersey law, which does not apply the learned intermediary doctrine to prescription contraceptives that are directly marketed to consumers, and Texas law, which does. In that instance, the court would have to apply Texas choice of law rules to determine which state's law governs. Because Texas follows the Restatement's "most significant relationship test," which presumes that the law of the state where the injury occurred should govern unless another state has a more significant relationship to the occurrence or the parties, it very well may be that New Jersey law would control and the learned intermediary doctrine would be inapplicable to this hypothetical plaintiff when considering the instant motion. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 847–50 (Tex. 2000) (applying the "most significant relationship" test to resolve Texas choice of law issue); *Sanchez v. Brownsville Sports Center, Inc.,* 51 S.W.3d 643, 668 (Tex. Ct. App.-Corpus Christi 2001) (citation omitted); Restatement (Second) of Conflict of Laws § 6, 145 (1971). The above scenario is merely hypothetical.

As a practical matter, there will not be an actual conflict of laws with regard to the claims of most Plaintiffs who filed their suits in jurisdictions different from the one where their Norplant devices were surgically implanted because most jurisdictions would reach the same result under the learned intermediary doctrine. Nonetheless, the court will deal individually with Plaintiffs who either filed their lawsuits or had Norplant inserted in jurisdictions that limit the applicability of the learned intermediary doctrine in cases like these.

Defendants base their first motion for partial summary judgment on the learned intermediary doctrine and directed it exclusively at Plaintiffs who claim they suffer from one or more of the 26 primary side

effects listed in the "Adverse Reactions" section of Norplant's physician labeling. Defendants contend they are entitled to partial summary judgment with regard to those claims because there is no competent summary judgment evidence demonstrating that (1) Defendants failed to adequately warn Plaintiffs' prescribing healthcare providers about those side effects; and (2) the inadequate warnings were a producing cause of and/or proximately caused any alleged injuries. *See Porterfield,* 183 F.3d at 468.

Defendants' motion focuses on the second of those two elements—the causation prong—and emphasizes the absence of evidence showing that prescribing healthcare providers were unaware of Norplant's 26 primary side effects before they prescribed the drug, or that "but for" Defendants' inadequate warnings they would not have recommended Norplant to their patients. Defendants note, for example, that every healthcare provider to testify in a Norplant case thus far, either by affidavit, deposition, or at trial, has declared that he or she was aware of and adequately warned about the 26 potential side effects. Defendants argue that Plaintiffs' claims cannot survive summary judgment without a proper showing of causation.

Plaintiffs respond that the question of causation is still at issue in this litigation. They point to the fact that one state court jury in Jefferson County, Texas, found that Defendants' physician warnings were inadequate and that the inadequate warnings were the producing cause of injuries

to four plaintiffs.[12] They also argue that, although all testifying healthcare providers have admitted to being aware of the 26 side effects prior to prescribing Norplant, there is a fact issue about whether they were adequately warned about the potential severity of the side effects for each Plaintiff.

Additionally, Plaintiffs argue that the learned intermediary doctrine has no application here because Defendants engaged in aggressive direct-to-consumer marketing and over-promotion of Norplant, thereby nullifying the impact of Defendants' physician warnings. According to Plaintiffs, the product information Defendants provided to consumers was misleading and deceptive. Plaintiffs further contend that an exception to the learned intermediary doctrine should be recognized for contraceptive drugs and that the doctrine does not apply to claims of misrepresentation and fraud, or violations of the DTPA.

### B. APPLICABILITY OF THE LEARNED INTERMEDIARY DOCTRINE TO EACH CASE

Before analyzing the substance of Defendants' motion for partial summary judgment, the court must determine to what extent the learned intermediary doctrine governs Plaintiffs' failure to warn claims at issue. Determining whether the doctrine applies in each state or territory is essential to deciding this motion because such a determination will inform the court exactly which Plaintiffs' cases are subject to this motion.[13] After the court knows to whom the motion applies, it can proceed to re-

---

**12.** The case to which Plaintiffs refer is *Medrano v. American Home Prod. Corp. d/b/a Wyeth–Ayerst Lab.,* Cause No. B–150,760 (60th Jud. Dist. Ct., Jefferson County, Tex.). Pls.' Resp. at 2. That case was reversed on appeal and judgment was rendered in favor of Defendants on the basis of the learned intermediary doctrine. *See Wyeth–Ayerst Lab. Co. v. Medrano,* 28 S.W.3d 87, 91–96 (Tex. Ct.App.-Texarkana 2000); Defs.' Supp. Reply

1. The appeals court decided that the learned intermediary doctrine applies to prescription contraceptives and that nurses as well as doctors are learned intermediaries. Consequently, Plaintiffs citation is inapposite to the instant motion.

**13.** That is, assuming each Plaintiff asserts some of the 26 "Adverse Reactions."

solve whether the motion should be granted or denied as to those Plaintiffs.

Defendants correctly note in their motion that this court and the Fifth Circuit previously held that the learned intermediary doctrine defines Defendants' duty to warn of the potential risks associated with the use of Norplant. *See In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F.Supp. 700, 703–09, *aff'd*, 165 F.3d 374. The court's ruling in the first bellwether trial, however, does not foreclose all argument in the present cases. Since the bellwether Plaintiffs had Norplant implanted in Texas, the previous rulings interpreted the application of the learned intermediary doctrine under Texas state law only. This motion is much broader in scope because it applies to all of the active Plaintiffs who claim they suffer from one or more of the 26 primary side effects listed in the "Adverse Reactions" section of Norplant's physician labeling. These Plaintiffs come from disparate jurisdictions throughout the United States. Thus, to decide how many Plaintiffs are subject to this motion, the court must initially determine which jurisdictions apply the learned intermediary doctrine, and whether any jurisdictions apply a relevant exception to the doctrine. To make such determinations, the court will survey the substantive law of each state and territory within the jurisdiction of the United States regarding the learned intermediary doctrine.

1. *Jurisdictions That Apply The Learned Intermediary Doctrine Without An Exception Relevant To Norplant*

The overwhelming majority of jurisdictions to address the issue apply the learned intermediary doctrine to define a pharmaceutical company's duty to warn of risks associated with the use of a prescription drug like Norplant. As illustrated in the table below, the doctrine either applies or is recognized, without an exception relevant to the Norplant cases, in 48 states, the District of Columbia, and Puerto Rico.

| *JURISDICTION* | *CASE LAW APPLYING THE LEARNED INTERMEDIARY DOCTRINE* |
|---|---|
| (1) Alabama | *Stone v. Smith Kline & French Lab.*, 447 So.2d 1301, 1303 n. 2 (Ala.1984). |
| (2) Alaska | *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1195 n. 6 (Alaska 1992) (recognizing the learned intermediary doctrine under Alaska law) (citing *Polley v. GIBA–GEIGY Corp.*, 658 F.Supp. 420, 422–23 (D.Alaska 1987)). |
| (3) Arizona | *Byer v. Best Pharmacal*, 577 P.2d 1084 (Ariz.1978); *Piper v. Bear Med. Sys.*, 180 Ariz. 170, 178 (Ariz.1993). |
| (4) Arkansas | *West v. Searle & Co.*, 806 S.W.2d 608 (Ark.1991) ("[W]e are convinced that the stated public policy reasons for the learned intermediary doctrine are present with respect to oral contraceptives."). |
| (5) California | *Carlin v. Superior Court*, 920 P.2d 1347 (Cal.1996). |
| (6) Colorado | *Caveny v. CIBA–GEIGY Corp.*, 818 F.Supp. 1404, 1406 (D.Colo. 1992); *Hamilton v. Hardy*, 549 P.2d 1099 (1976) (applying the learned intermediary doctrine to oral contraceptives), *disapproved of on other grounds by*, *State Bd. of Md. Exam'r v. McCroskey*, 880 P.2d 1188 (Colo.1994). |
| (7) Connecticut | *Goodson v. Searle Lab.*, 471 F.Supp. 546 (D.Conn.1978) (applying the doctrine to oral contraceptives); *Vitanza v. Upjohn Co.*, 778 A.2d 829, 838–39 (Conn.2001). |
| (8) Delaware | *Lacy v. G.D. Searle & Co.*, 567 A.2d 398, 400–01 (Del.1989) (applying the doctrine to intrauterine devices). |

| District of Columbia | *MacPherson v. Searle & Co.*, 775 F.Supp. 417 (D.D.C.1991) (applying the doctrine to oral contraceptives). |
|---|---|
| (9) Florida | *Felix v. Hoffmann–LaRoche*, Inc., 540 So.2d 102, 104 (Fla.1989); *Zanzuri v. G.D. Searle & Co.*, 748 F.Supp. 1511 (S.D.Fla.1990) (applies the doctrine to intrauterine devices, but a fact issue as to whether the manufacturer supplied adequate warnings blocked summary judgment). |
| (10) Georgia | *Presto v. Sandoz Pharm. Corp.*, 487 S.E.2d 70 (Ga.Ct.App.1997); *Walker v. Merck & Co.*, 648 F.Supp. 931 (M.D.Ga.1986), *aff'd without op.*, 831 F.2d 1069 (11th Cir.1987) (applying the doctrine to prescription vaccines). |
| (11) Hawaii | *Craft v. Peebles*, 893 P.2d 138 (Haw.1995) (applying the doctrine to breast implants). |
| (12) Idaho | *Silman v. Aluminum Co. of America*, 731 P.2d 1267, 1270–71 (Idaho 1986) (taking guidance from a Texas case and applying the doctrine). |
| (13) Illinois | *Martin by Martin v. Ortho Pharm. Corp.*, 661 N.E.2d 352 (Ill.1996) (applying the doctrine to oral contraceptives). |
| (14) Indiana | *Ortho Pharm. Corp. v. Chapman*, 388 N.E.2d 541 (Ind.Ct.App.1979) (applying the doctrine to oral contraceptives). |
| (15) Iowa | *Petty v. United States*, 740 F.2d 1428, 1440 (8th Cir.1984) (intimating that the doctrine is part of Iowa's common law, but refusing to apply it in a mass immunization context). |
| (16) Kansas | *Humes v. Clinton*, 792 P.2d 1032 (Kan.1990) (applying the doctrine to intrauterine devices). |
| (17) Kentucky | *Snawder v. Cohen*, 749 F.Supp. 1473, 1480 (W.D.Ky.1990) (acknowledging the doctrine, but not reaching the issue of whether it applies in this case). |
| (18) Louisiana | *Mikell v. Hoffman–LaRouche, Inc.*, 649 So.2d 75, 79–80 (La.Ct.App. 1994); *Rhoto v. Ribando*, 504 So.2d 1119 (La.Ct.App.1987) (holding that the warnings supplied by drug manufacturers adequately informed the patient through her doctor of known risks associated with normal use of their product). |
| (19) Maine | *Violette v. Smith & Nephew Dionics, Inc.*, 62 F.3d 8, 13 (1st Cir.1995) (recognizing and applying the doctrine under Maine law). |
| (20) Maryland | *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1004 (4th Cir.1992) (applying the doctrine to intrauterine devices under Maryland law); *Doe v. American Nat'l Red Cross*, 866 F.Supp. 242, 248 (D.Md.1994); *Lee v. Baxter Healthcare Corp.*, 898 F.2d 146 (4th Cir.1990) (applying the doctrine to Maryland law in a breast implant case). |
| (21) Massachusetts | *MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65 (Mass.1985) (holding that the doctrine applies, but creating an exception for oral contraceptives). *But see Linnen v. A.H. Robins Co., Inc.*, No. Civ. A. 97–2307, 2000 WL 89379 (Mass.Super.Ct. Dec. 14, 1999) (refusing to extend the exception created in *MacDonald* to fen-phen, arguing that *MacDonald* created a *narrow exception* to the doctrine which is confined only to oral contraceptives where the FDA required the manufacturer to warn the consumer directly). |
| (22) Michigan | *Reaves v. Ortho Pharmaceutical Corp.*, 765 F.Supp. 1287, 1291 (E.D.Mich.1991) (applying the doctrine to oral contraceptives); see also this courts discussion in *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F.Supp. 700, 704–05 n. 21, 22 (E.D.Tex. 1997) (determining that the correct reading of Michigan law shows |

that the learned intermediary doctrine applies), *aff'd*, 165 F.3d 374 (5th Cir.1999).

| | |
|---|---|
| (23) Minnesota | *Mulder v. Parke Davis & Co.*, 181 N.W.2d 882 (Minn.1970); *Kociemba v. G.D. Searle & Co.*, 680 F.Supp. 1293 (D.Minn.1988) (applying the doctrine to intrauterine devices under Minnesota law); *Klempka v. G.D. Searle & Co.*, 769 F.Supp. 1061, 1065 n. 4 (D.Minn.1991) (citing *Kociemba*). |
| (24) Mississippi | *Wyeth Lab., Inc. v. Fortenberry*, 530 So.2d 688, 691 (Miss.1988) (applying the doctrine in a case involving paralysis after flu vaccination). |
| (25) Missouri | *Johnston v. Upjohn Co.*, 442 S.W.2d 93, 94–95 (Mo.Ct.App.1969). |
| (26) Montana | *Davis v. Wyeth Lab., Inc.*, 399 F.2d 121, 130 (9th Cir.1968) (applying the doctrine using Montana law); *Hill v. Squibb & Sons, E.R.*, 592 P.2d 1383 (Mont.1979) ("As a general rule, the duty of a drug manufacturer to warn of the dangers inherent in a prescription drug is satisfied if adequate warning is given to the physician who prescribes it."). |
| (27) Nebraska | *Freeman v. Hoffman–La Roche, Inc.*, 618 N.W.2d 827 (applying the doctrine in reference to the RESTATEMENT (THIRD) OF TORTS § 6). |
| (28) Nevada | *Allison v. Merck & Co.*, 878 P.2d 948 (Nev.1994) (recognizing the doctrine, but applying an exception for mass immunization to manufacturer of measles, mumps, and rubella vaccine); *Moses v. Danek Med., Inc.*, No. CV–S–95–512PMP RLH, 1998 WL 1041279, *5 (D. Nev. Dec. 11, 1998) (applying the doctrine in a case of spinal implantation). |
| (29) New Hampshire | *Brochu v. Ortho Pharm. Corp.*, 642 F.2d 652, 656 (1st Cir.1981) (applying New Hampshire law); *Nelson v. Dalkon Shield Claimants Trust*, No. 84–276–SD, 1994 WL 255392, *4 (D.N.H. Jun.8, 1994) (applying the doctrine to intrauterine devices under New Hampshire law). |
| (30) New Mexico | *Serna v. Roche Lab.*, 684 P.2d 1187 (N.M.Ct.App.1984); *Hines v. St. Joseph's Hosp.*, 527 P.2d 1075 (N.M.Ct.App.1974). |
| (31) New York | *Martin v. Hacker*, 185 A.D.2d 553, 554–55 (N.Y.App.Div.1992); *Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87 (2d Cir.1980) (applying the doctrine to oral contraceptives under New York law). |
| (32) North Carolina | *Foyle v. Lederle Lab.*, 674 F.Supp. 530, 535–36 (D.N.C.1987) (applying the doctrine after acknowledging the great weight of authority supporting the doctrine's application—"[t]his 'learned intermediary' doctrine requires that defendant's motion for summary judgment on the claim of failure to warn be [granted]."). |
| (33) North Dakota | *Harris v. McNeil Pharm.*, No. CIV 3:98CV105, 2000 WL 33339657, *4 n. 4 (D.N.D. Sept.5, 2000) ("It is well recognized that the duty an eithical [i.e., prescription] drug manufacturer owes to the consumer is to warn only physicians or others permitted to dispense prescription drugs of any risks or contraindications associated with that drug.") (citing *Stanbeck v. Parke, Davis and Co.*, 657 F.2d 642, 643 (4th Cir.1981) (discussing the learned intermediary doctrine)). |
| (34) Ohio | *Tracy v. Merrell Dow Pharm.*, Inc., 569 N.E.2d 975 (Ohio 1991) (applying the doctrine to manufacturer of nicotine chewing gum); *Seley v. G.D. Searle & Co.*, 423 N.E.2d 831 (Ohio 1981) (applying the doctrine to oral contraceptives). |
| (35) Oklahoma | *Edwards v. Basel Pharm.*, 933 P.2d 298 (Okla.1997) (applying the doctrine, but noting an exception for nicotine patches because the FDA mandated direct warnings to consumers); *McKee v. Moore*, |

| | |
|---|---|
| | 648 P.2d 21, 24 (Okla.1982) (applying the doctrine to intrauterine devices). |
| (36) Oregon | *McEwen v. Ortho Pharm. Corp.*, 528 P.2d 522 (Or.1974) (applying the doctrine to oral contraceptives); *Allen v. G.D. Searle & Co.*, 708 F.Supp. 1142, 1148 (D.Or.1989) (applying the doctrine to intrauterine devices under Oregon law). |
| (37) Pennsylvania | *Taurino v. Ellen*, 579 A.2d 925, 928 (Pa.Super.Ct.1990) (applying the doctrine to oral contraceptives); *Brecher v. Cutler*, 578 A.2d 481 (Pa.Super.Ct.1990) (applying the doctrine to intrauterine devices). Puerto Rico *Pierluisi v. E.R. Squibb & Sons, Inc.*, 440 F.Supp. 691 (D.P.R.1977) (applying Puerto Rican law). |
| (38) Rhode Island | *Hodges v. Brannon*, 707 A.2d 1225 (R.I.1998) (indicating that the doctrine applies in Rhode Island because the court mentioned a jury instruction given by the trial court showing that it had applied the doctrine at trial). |
| (39) South Carolina | *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1231 (4th Cir.1984) (applying South Carolina law); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001 (4th Cir.1992) (applying the doctrine to intrauterine devices under South Carolina law). |
| (40) South Dakota | *McElhaney v. Eli Lilly & Co.*, 575 F.Supp. 228 (D.S.D.1983) (applying South Dakota law), *aff'd*, 739 F.2d 340 (8th Cir.1984). |
| (41) Tennessee | *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 429 (Tenn.1994); *Dunkin v. Syntex Lab., Inc.*, 443 F.Supp. 121 (W.D.Tenn.1977) (applying the doctrine to oral contraceptives under Tennessee law). |
| (42) Texas | *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F.Supp. 700, 703–05 (E.D.Tex.1997), *aff'd*, 165 F.3d 374 (5th Cir.1999); *Wyeth–Ayerst Lab. Co. v. Medrano*, 28 S.W.3d 87, 91 (Tex. Ct.App.-Texarkana 2000); *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467–68 (5th Cir.1999) (citing *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 591–92 (Tex.1986)). |
| (43) Utah | *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832 (Utah 1984) (recognizing that the duty of a prescription drug manufacturer is to adequately warn the medical profession). |
| (44) Virginia | *Pfizer, Inc. v. Jones*, 272 S.E.2d 43 (Va.1980) (holding that drug manufacturer was not liable for warnings adequately given to physicians). |
| (45) Washington | *Terhune v. A.H. Ruobins Co.*, 577 P.2d 975 (Wash.1978) (applying the doctrine to intrauterine devices). |
| (46) West Virginia | *Pumphrey v. C.R. Bard, Inc.*, 906 F.Supp. 334 (N.D.W.Va.1995) (applying the doctrine and promulgating two reasons why the court believes that West Virginia would adopt the doctrine). |
| (47) Wisconsin | *Lukaszewicz v. Ortho Pharm. Corp.*, 510 F.Supp. 961, 963 (D.Wis. 1981) (recognizing the doctrine under Wisconsin law, but applying an exception for oral contraceptives because federal regulations require the manufacturer to warn the patient directly). |
| (48) Wyoming | *Jacobs v. Dista Prod. Co.*, 693 F.Supp. 1029, 1036 (D.Wyo.1988) (applying Wyoming law). |

Accordingly, the learned intermediary doctrine applies or is recognized, without relevant exception, in the 48 states listed above, along with the District of Columbia and Puerto Rico. In jurisdictions where the doctrine is merely recognized and not specifically applied in the common law, the court will defer to the great weight of case authority, which shows that the doctrine is applicable in the majority of jurisdictions in the United States, and con-

sider the learned intermediary doctrine germane to the common law. Further, the highest courts in certain jurisdictions listed above have not yet decided the precise application of the doctrine. Instead, state appellate courts and federal district or appellate courts have applied the doctrine when analyzing state law. "Where the issues involved are ones upon which the state supreme court has not yet ruled, federal courts must attempt to predict how the state supreme court, if presented with the question, would decide the issue." *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F.Supp. at 703–05 (citing *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir.1994)), *aff'd*, 165 F.3d 374 (5th Cir.1999). For all of those jurisdictions, the court will make an *Erie* guess that each state supreme court would find the learned intermediary doctrine applicable regarding the Norplant cases. *Id.* at 703 n. 12 (stating that federal courts may consider lower state court opinions in making an *Erie* guess); *see also Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

With reference to Vermont, which is not listed in the table above, the court could not find any case making reference to the learned intermediary doctrine when discussing Vermont law. It is possible that no state or federal court in Vermont has decided whether the doctrine applies in that state. Nonetheless, based on the sheer number of jurisdictions that apply the doctrine, the court will make an *Erie* guess that the Vermont supreme court, if presented with the issue, would hold that the learned intermediary doctrine applies in Vermont without an exception relevant to the Norplant cases.

Two more states merit further discussion: Massachusetts and New Jersey.[14] Massachusetts, as noted in the table above, recognizes and applies the learned intermediary doctrine, but its supreme court

recognizes a special exception to the doctrine for *oral contraceptives*. *See MacDonald v. Ortho Pharm. Corp.*, 394 Mass. 131, 475 N.E.2d 65 (1985). In *MacDonald*, the Massachusetts Supreme Court held that the learned intermediary doctrine does not shield a manufacturer of birth control pills from its duty to warn the consumer directly of the dangers inherent in the use of birth control pills. *Id.* at 68. The court declared that "[o]ral contraceptives ... bear peculiar characteristics which warrant the imposition of a common law duty on the manufacturer to warn users directly of associated risks." *Id.* at 69. Specifically, the court reasoned that oral contraceptives differ from other prescription drugs in five ways: (1) patients participate directly in decisions relating to the use of oral contraceptives; (2) the use of oral contraceptives presents substantial risks; (3) *the FDA has explicitly required manufacturers of this particular oral contraceptive to provide the consumer with warnings directly*; (4) the physician's role in prescribing oral contraceptives is limited; and (5) oral communications between physicians and consumers may be insufficient to fully apprise consumers of the product's dangers. *Id.* at 69–70.

Given the reasoning behind *MacDonald* and recent Massachusetts state court opinions, the court does not believe that *MacDonald* creates an exception to the learned intermediary doctrine that renders the doctrine inapplicable to the Norplant cases. First, Norplant is an implant and not an oral contraceptive. Although some concerns voiced by the Massachusetts Supreme Court may relate to Norplant since, like oral contraceptives, it is a prescription contraceptive, one major difference is apparent: with Norplant, the FDA did not expressly require Norplant's manufacturers to warn the consumer directly. Also, at least two Massachusetts state courts

---

**14.** The court will discuss New Jersey law starting on page 811 below.

interpreted *MacDonald* as a "narrow exception to the learned intermediary rule," thereby limiting its application to oral contraceptives only. "Massachusetts has not extended this narrow duty to warn consumers directly, even for manufacturers of other forms of birth control." *Linnen v. A.H. Robins Co., Inc.,* No. Civ. A. 97–2307, 2000 WL 89379, at *2 (Mass.Super.Ct., Dec. 14, 1999) (citing *Raimer v. Searle,* Civil Action No. 870248, (Berkshire Super. Ct., Jan. 31, 1990) (holding that a manufacturer of intrauterine devices had no duty to warn the consumer about the product's risks where no federal regulations required the manufacturer to warn the consumer directly)). Thus, the court finds that the learned intermediary doctrine should be applied, without exception, to the Norplant cases in this multidistrict litigation to the extent Massachusetts law governs.

Consequently, the court will apply the doctrine, without exception, to any Plaintiff who both filed her case and had the Norplant device implanted in a state or territory listed in the table above, as well as Vermont. In looking at each case, if both jurisdictions are enumerated in the above table, the court need not conduct a conflict of laws analysis because no conflict exists when the learned intermediary doctrine applies or is recognized in the jurisdiction of filing and the jurisdiction of implantation.

A different problem arises with Plaintiffs who failed to supply the court with the jurisdiction in which Norplant was implanted. On February 17, 1998, the court signed an order "directing all joined plaintiffs in any single case filed on or after October 4, 1996, who have failed to allege in their original complaints the state in which each joined Plaintiff had the implantation of Norplant performed, to provide the court such information via an offer of proof on or before April 17, 1998." [15] Order of Feb. 17, 1998, at 1. The court warned that it would dismiss without prejudice all joined Plaintiffs who failed to provide the court with the requested information by the aforementioned deadline. *Id.* at 2. The court further ordered "all joined plaintiffs in any single case filing Norplant claims after [February 17, 1998] to allege in their original complaints the state in which Norplant implantation was performed for each joined plaintiff." *Id.* Thus, by now all pending Norplant Plaintiffs should have furnished the court with both the jurisdiction of filing and the jurisdiction of implantation.

Notwithstanding the previous order, the court believes that the most efficient resolution of the pending cases is by way of these motions for partial summary judgment. Accordingly, for purposes of deciding these motions, the court will proceed as follows: if Plaintiffs failed to supply the court with the state of implantation, or for some reason that information is not readily available, the court will assume the jurisdiction of implantation is the same as the jurisdiction in which Plaintiff filed her case. Thus, no choice of law analysis is necessary for those Plaintiffs.

2. *The New Jersey Exception To The Learned Intermediary Doctrine In Norplant Cases*

The New Jersey Supreme Court has held that the learned intermediary doctrine does not apply when a manufacturer of prescription drugs or medical devices markets its product directly to the consumer. In *Perez v. Wyeth Lab. Inc.,* 161

---

**15.** Prior to that order, the court entered an order on October 4, 1996, "requiring that 'joined Plaintiffs or Plaintiff–Intervenors in any single case must be represented by the same counsel and must have had their implantation of Norplant performed in the same state.'" *Id.*

N.J. 1, 734 A.2d 1245 (1999), the New Jersey Supreme Court recognized the learned intermediary doctrine, but refused to apply it in a case involving the Norplant contraceptive device because it was advertised directly to consumers in popular magazines. 734 A.2d at 1248, 1257–58. The court reasoned that such advertisements allow patients to actively participate in the choice of medication. *Id.* at 1256–57. Additionally, the court determined that the advertisements "encroach" on the doctor patient relationship by encouraging consumers to ask for advertised products by name. *Id.* at 1256. The court found that consumer advertising of Norplant "alters the calculus" of the doctrine and "belies ... the premises on which the learned intermediary doctrine rests." *Id.* at 1254, 1256. "[W]hen mass marketing of prescription drugs seeks to influence a patient's choice of a drug, a pharmaceutical manufacturer that makes direct claims to consumers for the efficacy of its product should not be unqualifiedly relieved of a duty to provide proper warnings of the dangers or side effects of the product." *Id.* at 1247.

Since *Perez,* no other court in any jurisdiction has directly addressed an advertising exception to the learned intermediary doctrine, making New Jersey the only jurisdiction to recognize this exception. Accordingly, New Jersey's advertising exception renders the learned intermediary doctrine wholly inapplicable to Norplant cases in this multidistrict litigation, but only to the extent that this court is required to follow the substantive law of New Jersey in deciding the instant motion. This means that New Jersey law is in direct conflict with the law of every other jurisdiction in the United States.[16] Because the court must determine which jurisdiction's law to apply by looking at each individual case in this litigation, the court will examine pending cases that have a factual nexus to New Jersey and perform a choice of law analysis, if necessary.

The court will primarily consider the jurisdiction where each Plaintiff had the Norplant device implanted, as well as the jurisdiction in which each Plaintiff filed her case. If both of these states are New Jersey, no choice of law discussion is necessary because New Jersey law clearly applies in that case and, as such, the instant motion would not pertain to that Plaintiff. However, no remaining Plaintiffs fall into this category. In the event that a Plaintiff filed her case in a jurisdiction such as Texas, but had the Norplant device implanted in New Jersey, the court would need perform a choice of law analysis because Texas law directly conflicts with New Jersey law regarding the learned intermediary doctrine. In this scenario, because the court must apply the law of the state in which each case was filed, the court would utilize Texas choice of law rules to resolve which state's substantive law applies to that particular Plaintiff. *See Huddy v. Fruehauf Corp.,* 953 F.2d 955, 956 (5th Cir.1992). Alternatively, if a Plaintiff filed her case in New Jersey, but Texas was the state of implantation, the court would apply New Jersey choice of law rules to that Plaintiff. After a comprehensive choice of law analysis in all necessary cases, the court will know with certainty to whom this motion applies.

 a. *Plaintiffs Who Filed In New Jersey, But Had Norplant Implanted In Another Jurisdiction*

■ The first group of cases the court will examine are those wherein Plaintiffs

---

**16.** This finding is supported by the court's conclusions above in its survey of the learned intermediary doctrine's applicability to pre-

scription drugs. *See* Table Summarizing Case Law, *supra,* at 806–09.

filed in New Jersey, but had the Norplant device implanted in another jurisdiction. Because Plaintiffs addressed in this section filed in New Jersey, its choice of law rules apply. *Erny v. Estate of Merola*, 171 N.J. 86, 792 A.2d 1208, 1212 (2002) (citing *Fu v. Fu*, 160 N.J. 108, 733 A.2d 1133 (1999)).

### i. *New Jersey Choice Of Law Rules*

New Jersey recognizes the Restatement (Second) of Conflict of Laws when determining choice of law issues. *Id.* at 1213. Under section 172 of the Restatement, the law of the site of the conduct and injury provides the presumptively applicable law. *Id.* at 1215–16; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 172 (1971). New Jersey courts additionally employ a flexible "governmental-interest" analysis to determine which jurisdiction has the greatest interest in governing the specific issue that arises in the underlying litigation. *Seiderman v. American Inst. for Mental Studies*, 667 F.Supp. 154, 156 (D.N.J.1987) (citing *Mellk v. Sarahson*, 49 N.J. 226, 229 A.2d 625 (1967)). "The first prong of the governmental-interest test requires the Court to determine whether there is an actual conflict between the laws of the states involved." *Erny*, 792 A.2d at 1216 (citations omitted). Here, there is unquestionably an actual conflict between the application of the learned intermediary doctrine in New Jersey versus every other United States jurisdiction. The New Jersey Supreme Court fashioned an exception to the learned intermediary doctrine when a manufacturer of prescription drugs markets its product directly to consumers. *Perez*, 734 A.2d at 1257–58. In contrast, every other jurisdiction recognizes the learned intermediary doctrine without an exception for direct-to-consumer advertising. *See* Table Summarizing Case Law, *supra*, at 806–09. Those jurisdictions, though they may permit different exceptions to the doctrine, excuse a drug manufacturer from warning patients who re-

ceive its product when the manufacturer properly warns the prescribing healthcare provider of the product's dangers regardless of any marketing to consumers.

The second prong of the governmental interest analysis requires the court to determine the interests each jurisdiction has in applying the learned intermediary doctrine, or relevant exception, to the parties in this litigation. *Erny*, 792 A.2d at 1216 (citation omitted); *see also Veazey v. Doremus*, 103 N.J. 244, 510 A.2d 1187, 1189 (1986) (Courts must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and the parties.") (citations omitted). "If the contacts do not align with the policies, the state has no interest in applying its law." *Erny*, 792 A.2d at 1216–17 (citations omitted).

Five factors culled from section 145 of the Restatement guide courts in applying the governmental interest analysis: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states. *Id.* (citing *Fu*, 733 A.2d at 1140–41); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). The primary factor is the competing interests of the states. *Erny*, 792 A.2d at 1217. Within that factor, the court should initially focus on the policies that the New Jersey Supreme Court intended to protect by applying the advertising exception to domestic concerns, and, then, whether applying the exception to the multistate situation will further those concerns. *Id.* (citing *Fu*, 733 A.2d at 1142).

The other four factors also require individual consideration. "When considering the interests of interstate comity, a court must determine 'whether application of a competing state's law would frustrate the policies of other interested states.'" *Id.*

(quoting *Fu*, 733 A.2d at 1141). "When determining the interests underlying the field of tort law, a court must consider 'the degree to which deterrence and compensation, the fundamental goals of tort law, would be furthered by the application of a state's local law.'" *Id.* (quoting *Fu*, 733 A.2d at 1141).

The court should give less weight to the final two factors in making choice of law determinations. The interests of the parties is relatively unimportant because "a person who causes an unintentional injury is not necessarily aware of the law that may be applied to the consequences of his actions." *Id.* (citing *Fu*, 733 A.2d at 1141). Lastly, the interests of judicial administration offer courts the opportunity to consider the "practicality of applying a specific law in a given situation; however, to the extent that that factor conflicts with a strong state policy, the factor yields." *Id.* (citing *Fu*, 733 A.2d at 1142).

To give context to the governmental interest analysis, the court also must review the actual contacts of the parties with each related jurisdiction. The factual contacts that the court considers in determining which jurisdiction's laws should apply include the following: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* (citing *Fu*, 733 A.2d at 1142); *see also Wuerffel v. Westinghouse Corp.*, 148 N.J.Super. 327, 372 A.2d 659, 662–63 (1977) (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (1971)).

### ii. *Analysis Of New Jersey Choice Of Law Rules*

The court will proceed by noting the facts considered most significant to the governmental interest test. The court derived this factual information from close perusal of the record and by examining each Plaintiff's complaint or amended pleading. Because the court has already sifted through the specific facts of each case in preparing to draft this opinion, the court need not set forth the facts of each case here *ad nauseam*. Such attention to the minutia is unnecessary in this opinion and would prove tedious. This opinion will broadly present the facts gathered, noting any discrepancies or exceptions to the generalities where necessary.

(1) The place where the injury occurred: the court believes that the jurisdictions where Plaintiffs had Norplant implanted qualify as the places where their injuries occurred. There is no evidence indicating that any Plaintiff's injury occurred in a place other than the jurisdiction of implantation. Thus, for all Plaintiffs in this section, the places where their injuries occurred are jurisdictions other than New Jersey. None of the Plaintiffs who filed in New Jersey were implanted with Norplant in New Jersey.

(2) The place where the conduct causing the injury occurred: the court finds that the jurisdictions where Plaintiffs had Norplant implanted are also the places where the conduct causing the injuries occurred. No evidence suggests otherwise. Thus, for all Plaintiffs in this category, the conduct causing the injuries occurred in places other than New Jersey.

(3) The domicile, residence, nationality, place of incorporation, and place of business of the parties:

(a) Plaintiffs in this category reside in jurisdictions other than New Jersey.

(b) Defendant American Home Products Corporation is a Delaware corporation with its principal place of business in New Jersey. Defendant Wyeth–Ayerst Labo-

ratories, Inc., subsidiary of American Home Products Corporation, is a Delaware corporation with its principal place of business in Pennsylvania. Defendant Wyeth Laboratories, Inc., is a New York Corporation with its principal place of business in Pennsylvania.

(4) The place where the relationship, if any, between the parties is centered: the places where Plaintiffs had Norplant implanted are the places where the parties' relationships are centered. Plaintiffs in this category all had Norplant implanted in jurisdictions other than New Jersey.

The aforesaid contacts are relevant to the extent that they implicate the policies underlying the conflicting applications of the learned intermediary doctrine. *Erny*, 792 A.2d at 1218 (citing *Fu*, 733 A.2d at 1142).

The court next will apply the five factors drawn from section 145 of the Restatement to determine whether New Jersey or another jurisdiction, depending on the particular case, has the most significant relationship to the occurrence and parties in question. That determination is made by identifying the governmental policies underlying each jurisdiction's application of the learned intermediary doctrine and then deciding how the contacts listed above influence those policies. *Id.* at 1218. As mentioned above, the competing interests of the states is the primary factor, followed by the interests underlying tort law, the interests of interstate comity, the interests of the parties, and the interests of judicial administration. *Id.* (citation omitted).

First, the court will examine the competing interests of New Jersey as opposed to the other jurisdictions. As previously mentioned, the learned intermediary doctrine has long acted as an exception to a manufacturer's duty to warn by allowing a drug company to warn the healthcare provider instead of the patient directly. *See*

*Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467–68 (5th Cir.1999). State courts generally identify four theoretical justifications for the doctrine. First, states want to preserve the doctor-patient relationship, which could be undermined if patients received warnings from drug manufacturers that differed from their doctor's warnings. *Perez*, 734 A.2d at 1255 (citing Lars Noah, *Advertising Prescription Drugs to Consumers: Assessing the Regulatory and Liability Issues*, 32 GA. L.REV. 141, 157–59 (1997)). Second, physicians are in a better position to convey information to patients than manufacturers. *Id.* Third, manufacturers lack an efficient means to communicate warnings to individual consumers. *Id.* Finally, states are concerned that patients cannot comprehend complex medical information, and it is too burdensome for pharmaceutical companies to translate the medical jargon into understandable language. *Id.* At bottom, states that recognize the learned intermediary doctrine reduce the exposure of pharmaceutical corporations to liability for product warnings.

New Jersey also recognizes the learned intermediary doctrine in certain circumstances. *Perez*, 734 A.2d at 1250, 1257 (" 'In New Jersey . . . we accept the proposition that a pharmaceutical manufacturer generally discharges its duty to warn the ultimate users of prescription drugs by supplying physicians with information about the drug's dangerous propensities.' ") (citation omitted). With the *Perez* decision, however, the New Jersey Supreme Court refused to apply the learned intermediary doctrine to Norplant because Defendants advertised Norplant directly to consumers. *Id.* at 1248, 1257–58. This decision was the first and only to recognize such an exception to the doctrine for Norplant and, in so doing, broke with every other jurisdiction on the application of the learned intermediary doctrine. *See* Table

Summarizing Case Law, *supra*, at 806–09. The *Perez* court reasoned that direct-to-consumer advertising undercuts all four theoretical justifications for the learned intermediary doctrine. *Perez*, 734 A.2d at 1255–56. The court also emphasized the increasingly important part played by patient choice in modern drug prescription. *Id.* at 1257. The court concluded that direct advertising unduly influences consumers and belies the necessity of a learned intermediary. *Id.* at 1247, 1257–58. *Perez* essentially declines to afford drug manufacturers the benefit of using the learned intermediary doctrine as a shield from liability if they attempt to influence consumers via advertising.

Thus, the policies underlying New Jersey's advertising exception to the learned intermediary doctrine promote accountability for drug manufacturers if they choose to advertise their products directly to consumers. Unlike New Jersey, however, every other jurisdiction considers the doctrine appropriate in litigation like Norplant. Some jurisdictions recognize different exceptions to the doctrine, but none carve out an exception for direct-to-consumer advertising. New Jersey's policies thus reflect the minority view regarding the scope of the learned intermediary doctrine. The overwhelming majority of jurisdictions either disagree or have not yet adopted the exception as law.

The court must next examine the interests of interstate comity and determine whether application of a competing state's law would frustrate the policies of other interested states. *Erny*, 792 A.2d at 1217. Plaintiffs at issue filed their cases in New Jersey and, thus, the court must consider its interests. But, keeping in mind the actual contacts of the parties, New Jersey is relatively unimportant: Plaintiffs' injuries and the conduct causing the injuries occurred in jurisdictions other than New Jersey; Plaintiffs and Defendants—except

Wyeth–Ayerst Laboratories, Inc., which has its principal place of business in New Jersey—reside in jurisdictions other than New Jersey; and the places where the parties' relationships are centered are jurisdictions other than New Jersey. Hence, Plaintiffs' contacts with New Jersey are minimal at best. If the court decided to apply New Jersey law to the affected Plaintiffs, it would thwart the policies of many other jurisdictions in the United States.

In addition to the above factors, the court must consider how the laws in issue promote deterrence and compensation, the fundamental goals of tort law. *Erny*, 792 A.2d at 1217, 1220 (citation omitted). This factor favors applying New Jersey's advertising exception to the learned intermediary doctrine. New Jersey law expresses a "weightier interest" in both deterrence and compensation than do the laws of jurisdictions that apply the doctrine without the advertising exception. *Id.* at 1220. The advertising exception deters tortious conduct by drug makers by making inapplicable the doctrine protecting them if they advertise their products directly to consumers. Instead of shifting the responsibility to physicians and other healthcare providers, the New Jersey exception forces drug manufacturers to scrutinize their products and its accompanying warnings before advertising to the masses. Further, the exception provides patients another avenue toward compensation by allowing them to sue drug manufacturers for failure to warn when they could not do so before. The learned intermediary doctrine applied without the advertising exception, in contrast, limits who a patient can sue by guarding drug manufacturers from certain failure to warn claims.

The next task is to weigh the interests of the parties, which is relatively unimportant in the New Jersey choice of law ru-

bric. Plaintiffs are interested in applying the New Jersey advertising exception to the learned intermediary doctrine ushered in by *Perez* because it gives them the opportunity to maintain suit against Defendants as to the 26 "Adverse Reactions." As drug manufacturers, however, Defendants have an interest in applying the learned intermediary doctrine unimpeded by the advertising exception, making partial summary judgment proper as to the 26 "Adverse Reactions" alleged by Plaintiffs in this category. It is worth mentioning that all Plaintiffs who filed against Defendants in New Jersey did so prior to the *Perez* decision in 1999. Before *Perez* was decided by the New Jersey Supreme Court, New Jersey did not recognize an advertising exception to the doctrine.[17] Plaintiffs therefore did not file in New Jersey based on the advertising exception since state law changed in the midst of this litigation. Regardless, neither side's interests greatly affect the court's decision on this issue.

Finally, the court must consider the interests of judicial administration. As a practical matter, this factor is neutral. Applying New Jersey law to Plaintiffs who filed in New Jersey poses no problem to this court. Likewise, applying the laws of other jurisdictions should not prove burdensome.

The court acknowledges that these situations present close calls on the choice of law issue. After analyzing Plaintiffs' cases under New Jersey's choice of law analysis, the court finds that New Jersey law should not apply to these cases. Instead, the laws of jurisdictions with more significant contacts to each respective case should apply. The law applied will be different for each case depending on the facts, including where the injury occurred, the residences of the parties, and where the parties' relationship is based. But, ultimately, that analysis is unnecessary in this opinion because whichever jurisdiction's law applies, the learned intermediary doctrine will bar Plaintiffs' claims to the extent they allege the 26 "Adverse Reactions" listed on the Norplant labeling.

Although applying the laws of other jurisdictions undermines New Jersey's policies regarding advertising exception, the court concludes that the Restatement's presumption in favor of the law of the situs of the conduct and injury is not overcome in these cases. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 145, 172 (1971). The policies put forth by New Jersey do not match up with the contacts in these cases, and "[i]f the contacts do not align with the policies, the state has no interest in applying its law." *Erny*, 792 A.2d at 1216–17 (citations omitted). Plaintiffs chose to file in New Jersey and Wyeth–Ayerst Laboratories, Inc.'s principal place of business is in New Jersey, but, aside from those two facts, none of the Plaintiffs in this category have any actual connection to New Jersey. New Jersey is neither the place where the conduct causing the injuries occurred nor where the injuries occurred, none of the Plaintiffs reside in New Jersey, and the parties' relationships are not centered in New Jersey. In short, New Jersey has only a slight factual nexus to Plaintiffs cases. Moreover, New Jersey adopted the advertising exception in 1999, which was two years or more after Plaintiffs filed their cases. The learned intermediary doctrine, which was the universal rule at that time, protected drug manufacturers from failure to warn claims when they issued proper warnings. Finally, to this day every jurisdiction but New Jersey

---

17. Indeed, the superior court in *Perez* applied the learned intermediary doctrine and granted summary judgment against the plaintiffs; the appeals court affirmed. *Perez*, 734 A.2d at 1245.

applies the learned intermediary doctrine without an exception for direct-to-consumer advertising. Therefore, Defendants motion for partial summary judgment regarding the learned intermediary doctrine applies to all Plaintiffs who filed in New Jersey, but had Norplant implanted in another jurisdiction.

b. *Plaintiffs Who Filed In Jurisdictions Other Than New Jersey, But Had Norplant Implanted In New Jersey*

The second group of cases are those wherein Plaintiffs filed in jurisdictions other than New Jersey, but had Norplant implanted in New Jersey. In such cases, the court employs the choice of law rules from the jurisdiction in which each Plaintiff filed her case to determine which jurisdiction's laws control. This analysis will also decide whether or not the learned intermediary doctrine applies. Fortunately for the court, very few Plaintiffs in this litigation had Norplant implanted in New Jersey, but filed somewhere else. These select Plaintiffs filed either in New York or Illinois, thus, limiting the court's choice of law analyses to the rules of two states. As such, the court will first examine the facts surrounding each Plaintiff who filed in New York under New York's choice of law rules to see whether New York or New Jersey substantive law governs. Then the court will do the same with Plaintiffs who filed in Illinois. If New Jersey law applies to any Plaintiff's case, neither the learned intermediary doctrine nor this motion will apply and her case likely will be remanded back to the district court where it originated.

i. *New York Choice Of Law Rules And Analysis*

Six Plaintiffs in this litigation had Norplant implanted in New Jersey, but filed in New York: (1) Rhonda Randazzo; (2) Linda Vitali (both 1:97–CV–7359); (3) Marie Badame (1:97–CV–7979); (4) Shaunda Taylor; (5) Rebecca Zenguis (both 1:97–CV–8125); and (6) Marva Christie (1:97–CV–8126). "When a case presents a potential choice of law issue, a court should first analyze whether there is an actual conflict between the laws in the different jurisdictions." *Bodea v. Trans. Nat. Express, Inc.*, 286 A.D.2d 5, 8, 731 N.Y.S.2d 113 (N.Y.App.Div.2001). In these cases, there is an actual conflict between the laws of New Jersey and New York concerning application of the learned intermediary doctrine. New Jersey allows an exception to the learned intermediary doctrine when drug makers market their products directly to consumers. *Perez*, 734 A.2d at 1257–58. New York, however, applies the learned intermediary doctrine without the advertising exception. *See Martin v. Hacker*, 185 A.D.2d 553, 554–55, 586 N.Y.S.2d 407 (N.Y.App.Div.1992); *Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87 (2d Cir.1980) (applying the doctrine to oral contraceptives under New York law).

The "interest analysis" test is the relevant analytical approach to choice of law issues in tort actions under New York law. *See Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 684 (1985). " '[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.' " *Id.* at 684 (quoting *Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877, 879 (1968)). Two separate inquires are thus required to determine which jurisdiction has the "greater interest" in the litigation: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310,

644 N.E.2d 1001, 1002 (N.Y.1994) (citation omitted).

As to the first inquiry, the court notes that the significant facts or contacts consist exclusively of the parties' domiciles and the place where the tort occurred. *Schultz,* 491 N.Y.S.2d 90, 480 N.E.2d at 684. Plaintiffs Marie Badame, Shaunda Taylor, Rebecca Zenguis, and Marva Christie are domiciliaries of New Jersey. Plaintiffs Rhonda Randazzo and Linda Vitali "do not reside in a defendant's state of incorporation or principal place of business," which means they are domiciliaries of states other than Delaware, New York, New Jersey, or Pennsylvania. *See* Randazzo and Vitali Compl. at 2 (1:97–CV–7359). Defendant American Home Products Corporation is a Delaware corporation with its principal place of business in New Jersey. Defendant Wyeth–Ayerst Laboratories, Inc., is a Delaware corporation with its principal place of business in Pennsylvania. Defendant Wyeth Laboratories, Inc., is a New York Corporation with its principal place of business in Pennsylvania. The place of the tort in all cases is New Jersey—the state in which each of the six Plaintiffs had Norplant implanted.

The court must next determine whether the purpose of the dichotomous learned intermediary policies in question is to regulate conduct or allocate loss. *Padula,* 620 N.Y.S.2d 310, 644 N.E.2d at 1002. "Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring." *Id.* Where the conflicting laws implicate the appropriate standards of conduct, the law of the place where the tort occurred applies "because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.; see also Schultz,* 491 N.Y.S.2d 90, 480 N.E.2d at 684–85. "Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability *after the tort*

*occurs* ...." *Padula,* 620 N.Y.S.2d 310, 644 N.E.2d at 1003 (emphasis added) (citations omitted). Where the conflicting laws relate to allocating losses that result from tortious conduct, a court should apply one of three rules set forth in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972).

The learned intermediary doctrine and the New Jersey advertising exception "embody both conduct-regulating and loss-allocating functions." *Padula,* 620 N.Y.S.2d 310, 644 N.E.2d at 1003. The learned intermediary doctrine regulates conduct by requiring drug manufacturers to give proper warnings to healthcare providers to prevent injuries from occurring. However, the doctrine also allocates loss as it limits a manufacturer's normal liability to warn patients of a product's dangers. New Jersey's advertising exception to the doctrine primarily regulates conduct because it does not allow drug makers to be shielded by the doctrine when they market to consumers. The court concludes that the learned intermediary doctrine and its relevant exception are primarily conduct-regulating rules, requiring that adequate warnings be given to healthcare providers or to patients directly, depending on the jurisdiction. Accordingly, the court must apply the law of New Jersey to the cases brought by Plaintiffs Rhonda Randazzo, Linda Vitali, Marie Badame, Shaunda Taylor, Rebecca Zenguis, and Marva Christie because New Jersey is the place where the torts occurred. *Id.* at 1002; *see also Schultz,* 491 N.Y.S.2d 90, 480 N.E.2d at 684–85. As a result, the instant motion for partial summary judgment regarding the learned intermediary doctrine does *not* apply to these Plaintiffs' cases. These six Plaintiffs' failure to warn claims remain as to any of the 26 "Adverse Reactions" alleged.

### ii. *Illinois Choice Of Law Rules And Analysis*

Four Plaintiffs in this litigation had Norplant implanted in New Jersey, but filed in Illinois: (1) Charlene Harris (1:97–CV–7789); (2) Deborah R. Campione; (3) Oneyda Fay; and (4) Dawn Lauterborn (all three 1:97–CV–7795). At the outset, the court observes that there is an actual conflict between New Jersey law and Illinois law regarding the applicability of the learned intermediary doctrine in this litigation. Illinois recognizes the learned intermediary doctrine, but does not acknowledge the advertising exception accepted in New Jersey. *See Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill.2d 234, 214 Ill.Dec. 498, 661 N.E.2d 352 (1996) (applying the doctrine to oral contraceptives).

"In deciding choice-of-law questions in tort cases, Illinois follows the Restatement (Second) of Conflict of Laws and uses a most-significant-contacts approach similar to the one delineated in section 145." *Wreglesworth by Wreglesworth v. Arctco, Inc.*, 316 Ill.App.3d 1023, 250 Ill.Dec. 495, 738 N.E.2d 964, 971 (2000). Courts governed by Illinois choice of law rules should apply the law of the place of injury unless another jurisdiction has a more significant relationship with the occurrence and the parties. *Id.*

Much like New Jersey law, the contacts to be evaluated under Illinois law include the following: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.;* Restatement (Second) of Conflict of Laws § 145 (1971). But, in conducting a most-significant-contacts analysis, courts should not merely tally the relevant contacts. *Wreglesworth by Wreglesworth*, 250 Ill.Dec. 495, 738 N.E.2d at 971 (citation omitted). Rather, courts should apply an "interest analysis" which involves a distinct three step process: (1) isolate the issue presented; (2) identify the relevant policies embraced in the laws in conflict; and (3) examine the contacts and determine which jurisdiction has a superior interest in having its policy applied. *Id.* (citations omitted).

First, the precise issue presented regarding four Plaintiffs who filed in Illinois but were implanted in New Jersey is whether the learned intermediary doctrine bars their failure to warn claims, or whether the advertising exception in New Jersey law applies. Next, the court will examine Illinois' and New Jersey's contacts with the occurrences and the parties.

(1) The place where the injury occurred: the court notes that the four Plaintiffs in this category had Norplant implanted in New Jersey.

(2) The place where the conduct causing the injury occurred: the court finds that New Jersey also qualifies as the place where the conduct causing the injuries occurred.

(3) The domicile, residence, nationality, place of incorporation, and place of business of the parties:

(a) Plaintiff Charlene Harris is a domiciliary of New York state. Plaintiffs Deborah Campione, Oneyda Fay, and Dawn Lauterborn reside in New Jersey.

(b) Defendant American Home Products Corporation is a Delaware corporation with its principal place of business in New Jersey. Defendant Wyeth–Ayerst Laboratories, Inc., is a Delaware corporation with its principal place of business in Pennsylvania. Defendant Wyeth Laboratories, Inc., is a New York Corporation with its principal place of business in Pennsylvania.

(4) The place where the relationship, if any, between the parties is centered: the place where the four Plaintiffs had Norplant implanted is the place where the relationships between the parties are centered. Plaintiffs in this category all had Norplant implanted in New Jersey.

The only relevant contact favoring Illinois is that Plaintiffs chose to file there. It would appear from simply glancing at these contacts that New Jersey law should apply because New Jersey has the more significant relationship with the occurrence and the parties. *Wreglesworth by Wreglesworth*, 250 Ill.Dec. 495, 738 N.E.2d at 972 (citations omitted). "That conclusion is reenforced by [a] review of the policies underlying the laws in conflict." *Id.* (citation omitted). New Jersey's exception to the learned intermediary doctrine for advertising stems from the affect advertising has on patients and the expanding role of patient choice in medicine. *Perez*, 734 A.2d at 1255–57. The learned intermediary doctrine as applied in Illinois protects pharmaceutical corporations from liability. To the extent that the two policies differ, the application of Illinois' rule would hinder the full realization of the underlying policy in New Jersey, which imposes a duty on drug manufacturers to directly warn consumers.

Taking into consideration New Jersey's and Illinois' respective contacts with the occurrence and the parties, as well as the policies underlying the two states' application of the learned intermediary doctrine, the court concludes that New Jersey has the superior interest in having its law and policies applied. *See Kwasniewski v. Schaid*, 153 Ill.2d 550, 180 Ill.Dec. 320, 607 N.E.2d 214, 217 (1992) ("In deciding choice of law questions, Illinois courts will apply the law of the State where the tort occurred unless Illinois has a more significant relationship with the occurrence and with the parties."); *Wreglesworth by Wreglesworth*, 250 Ill.Dec. 495, 738 N.E.2d at 973 (citations omitted). Here, New Jersey is the state in which each of the four Plaintiffs were allegedly injured, and three out of the four reside in New Jersey. Illinois only matters in that Plaintiffs filed there. Thus, the contacts support New Jersey's stated policies regarding the advertising exception.

Accordingly, the court must apply the law of New Jersey to the cases brought by Plaintiffs Charlene Harris, Deborah Campione, Oneyda Fay, and Dawn Lauterborn. As a result, the instant motion for partial summary judgment regarding the learned intermediary doctrine does *not* apply to these Plaintiffs' cases. These four Plaintiffs' failure to warn claims remain as to any of the 26 "Adverse Reactions" alleged.

### 3. *Plaintiffs Who Responded Individually To This Motion*

Provost ★ Umphrey and Ness, Motley, Loadholt, Richardson & Poole filed a response to the motion, which the court discussed above. In addition, a handful of Plaintiffs not represented by those firms responded individually. The court will now examine the individual responses to this motion and determine whether the motion applies to each Plaintiff.

Defendants stipulate that their motion for partial summary judgment regarding the learned intermediary doctrine does not pertain to the following Plaintiffs: (1) Penny Robinson; (2) Robert Robinson (both 1:95–CV–5069); (3) Susan Port (1:95–CV–5049); and (4) Barbara Bueno (1:95–CV–5077). *See* Defs.' Reply at 10–11. These Plaintiffs do not allege any of the 26 "Adverse Reactions."

Defendants argue that the motion should be granted as to Plaintiff Annette Caraveo ("Caraveo") (1:95–CV–5078) to the extent she alleges side effects within the 26 "Adverse Reactions." Plaintiffs'

response claims that Caraveo should be exempt from the motion because she complains about myasthenia gravis. Defendants, however, counter that Caraveo's interrogatory answers reveal her injuries to "include headaches, dizziness, pain in arm and tiredness." *See* Defs.' Reply at 11, Ex. 5. The court finds that such assertions fit within the 26 side effects. Moreover, Caraveo filed her claims in California, which is also where Norplant was implanted. Since California applies the learned intermediary doctrine to actions like Caraveo's, and because Caraveo did not present the court with any evidence that her prescribing healthcare provider did not know about the 26 possible side effects, Defendants' motion applies to the extent Caraveo alleges one or more of the 26 side effects. The motion, however, does not apply to Caraveo's claim for myasthenia gravis.

■ Plaintiff Brandy L. Linsner ("Linsner") (1:95–CV–5080) responded to Defendants' motion by submitting an unsigned affidavit. Her response states that she was diagnosed with polyarthralgia and exhibits symptoms compatible with fibromyalgia. *See* Linsner Aff. at unnumbered 2. Linsner also claims that she had Norplant removed because it caused her pain. *Id.* The court finds that Linsner's unsigned affidavit is not competent summary judgment evidence because it is comprised solely of unsworn statements. Rule 56 of the Federal Rules of Civil Procedure allows parties to submit sworn "affidavits" as evidence in support of and opposing summary judgment. FED. R. CIV. PROC. 56(e). It is well accepted, however, that courts may not consider unsworn statements as evidence in determining the propriety of summary judgment since such statements do not comply with the requirements of Rule 56(e). *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 515 (5th Cir.2001) (holding that an unsworn statement was not competent summary judgment evidence because it did not meet the requirements of Rule 56(e)) (citing *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1305–07 (5th Cir.1988)); *see also Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Piper v. United States,* 392 F.2d 462 (5th Cir.1968); *Jones v. Menard,* 559 F.2d 1282, 1285 n. 5 (5th Cir.1977)). Because Linsner did not present the court with any competent summary judgment evidence showing that her prescribing healthcare provider did not know about the 26 side effects, this motion applies to Linsner to the extent that her claims fit within the 26 side effects. The motion, however, does not apply to Linsner's claims for polyarthralgia and fibromyalgia.

Plaintiff Ingrid Hakala ("Hakala") (1:97–CV–7794) sent a letter to Defendants' counsel, Williams & Connolly, which they forwarded to the court as a response. In her letter, Hakala complains of the Norplant "tubes" moving in her arm and "pressing on a nerve." *See* Hakala Letter at unnumbered 2. She further states that, as a result of Norplant, she lost feeling in her arm and an infection developed. *Id.* at 2–3. The court finds that her complaints come within the 26 "Adverse Reactions." The "Adverse Reactions" warn of infection at implant site, pain at the implant site, removal difficulties, and musculoskeletal pain, which virtually match Hakala's complaints. Hakala filed in Illinois and Maryland was the state of implantation, both of which apply the learned intermediary doctrine in cases such as Hakala's. Because Hakala did not present the court with competent evidence showing that her prescribing healthcare provider did not know about the 26 possible side effects, Defendants' motion applies to Plaintiff Ingrid Hakala.

Plaintiff Christa White ("White") (1:99–CV–8945) filed a response letter alleging

that Defendants' motion does not apply to her because she complains of rheumatoid arthritis. *See* White Letter at unnumbered 1. Rheumatoid arthritis is not listed as one of the 26 side effects subject to this motion. Accordingly, this motion does not apply to White's claim of rheumatoid arthritis, but it does apply to White's claims that allege any of the 26 "Adverse Reactions."

Plaintiff Karan Zopatti ("Zopatti") (1:97–CV–7750) filed a response asserting that Defendants' motion does not apply to her because she complains of complications with pre-existing autoimmune disease. *See* Zopatti Resp. at 2. In their reply, however, Defendants point out that Zopatti describes her injuries caused by Norplant as "'heavy bleeding; absence of bleeding; prolonged bleeding; continued bleeding ... breast discharge; breast enlargement; arm pain at implant site; arm numbness or tingling; fatigue [and] muscle aches.'" Defs.' Reply at 10, Ex. 4. The court finds that the above complaints fall within the 26 "Adverse Reactions." Further, Zopatti filed suit and had Norplant implanted in California; thus, the learned intermediary doctrine applies in her case. Because Zopatti did not present the court with any evidence showing that her prescribing healthcare provider did not know about the possible side effects, the motion applies to Plaintiff Karan Zopatti.

## C. ANALYSIS OF SUMMARY JUDGMENT EVIDENCE REGARDING CAUSATION

██ To overcome the learned intermediary doctrine where it applies, Plaintiffs must demonstrate both of the following: (1) that the product warnings given by the drug manufacturer to healthcare providers are inadequate; and (2) that those inadequate warnings were a producing cause of and/or proximately caused Plaintiffs' subsequent injuries. *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 468 (5th Cir.1999). For Plaintiffs to prove that the allegedly deficient warnings proximately caused, or, with respect to strict products liability failure to warn claims, were a producing cause of Plaintiffs' injuries, even assuming the warnings are inadequate, Plaintiffs "must show that a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir.1991).

The court must examine the motion to see whether it points out the absence of any genuine issue of material fact. Defendants' contend that the court must grant partial summary judgment regarding the learned intermediary doctrine because there is no evidence showing that the allegedly inadequate warnings on Norplant's physician labeling caused Plaintiffs' subsequent injuries. More specifically, Defendants argue that Plaintiffs' cases fail on the essential element of causation absent proof that each Plaintiff's prescribing healthcare provider was unaware of Norplant's 26 primary side effects when he or she prescribed the drug.

As its summary judgment evidence, Defendants first assert facts about Norplant that they deem "undisputed." They aver that Norplant was studied extensively before it was put on the market. Defs.' Mem. in Supp. of Mot. for Partial Summ. J. re the Learned Intermediary Doctrine/Causation at 3–4. Defendants also state that the FDA approved the physician labeling, which included a list of the 26 "Adverse Reactions" possible from Norplant's use. *Id.* Following FDA approval of Norplant, Defendants claim they implemented a training program designed to familiarize healthcare practitioners with Norplant. *Id.* at 4.

Next, Defendants offer the testimony of Anita Nelson, M.D. ("Dr.Nelson"), "a

board-certified obstetrician-gynecologist and Associate Professor of Obstetrics and Gynecology at the UCLA School of Medicine," for the proposition that all healthcare providers who counsel women about contraception should be familiar with the 26 side effects listed in Norplant's physician labeling. *Id.* at 5; Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 1, Tab 34 ¶¶ 1, 20–23. Defendants argue that Dr. Nelson's testimony "demonstrates that [P]laintiffs cannot present" proof that any prescribing physician or healthcare provider was unaware of the 26 side effects. Defs.' Mem. in Supp. of Mot. for Partial Summ. J. re the Learned Intermediary Doctrine/Causation at 8.

Dr. Nelson was aware of the Norplant contraceptive in the late 1980's from the many reports of its "efficacy and safety, which were appearing in the professional journals ...." Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 1, Tab 34 ¶ 8. She had some contact with patients enrolled in a study for Norplant at that time and found the patients were "very positive about the device." *Id.* at Tab 34 ¶ 8. In January 1991, Dr. Nelson participated in a three day Norplant provider training program at which she was given "extensive information about the constituents of the system, its mechanisms of action, and a detailed description of the side effects seen during the product development and testing worldwide." *Id.* at Tab 34 ¶ 11. The next month, Dr. Nelson created a course for training physicians and nurse practitioners about Norplant and subsequently trained more than 100 physicians in four-hour sessions over the next six months. *Id.* at Tab 34 ¶ 12. At those sessions, Dr. Nelson discussed how to select appropriate candidates for Norplant, what the expect-

ed side effects were, and any other technical issues about inserting and removing the device. *Id.* at Tab 34 ¶ 12. Over the following years, Dr. Nelson and her team provided training and hands-on experience to hundreds of other providers, including healthcare providers in the military, in migrant farm worker clinics, in HMOs, and Planned Parenthood clinics. *Id.* at Tab 34 ¶ 14. Dr. Nelson also observes that "Wyeth has provided extensive training materials to healthcare providers to learn about the Norplant Contraceptive System" throughout the years. *Id.* at Tab 34 ¶ 17.

Dr. Nelson then advises that Norplant was merely a novel "delivery system," but "the hormone it provided to protect women from unintended pregnancy ... was well known to healthcare providers." *Id.* at Tab 34 ¶ 18. This synthetic hormone that provides Norplant's only active ingredient is levonorgestrel, which has been used in birth control pills since the 1980's. *Id.* at Tab 34 ¶ 18. She claims that levonorgestrel's side effects are well known and are "virtually the same as we have seen in all hormonal contraceptive products since birth control pills were first introduced in 1960." *Id.* at Tab 34 ¶ 18.

Dr. Nelson states that the 26 side effects of Norplant described in the "Adverse Reactions" section of the physician labeling "reflect the experience of thousands of women enrolled in clinical trials around the world." *Id.* at Tab 34 ¶ 19. Further, over 300 articles were published on Norplant prior to its introduction into the United States market. *Id.* at Tab 34 ¶ 19. Dr. Nelson concludes that "any obstetrician-gynecologist, family practitioner, or other healthcare provider who as part of his or her regular practice counsels women about contraception would be familiar with the 26 side effects described as Adverse Reactions in the physician labeling." [18] *Id.* at Tab 34 ¶ 20.

---

18. Dr. Nelson also surmises that such medical practitioners would also know that any given

In addition, Dr. Nelson "reviewed portions of the deposition testimony of 34 healthcare providers who have testified in the Norplant litigation." *Id.* at Tab 34 ¶ 23. After reviewing this testimony, Dr. Nelson was not surprised that all of the providers "state that they were aware of the side effects listed in the Adverse Reactions section of the physician labeling when they prescribed Norplant." *Id.* at Tab 34 ¶ 23. Dr. Nelson goes further to say that she "would expect every medical professional whose regular practice included contraception counseling to testify to the same effect." *Id.* at Tab 34 ¶ 23. Defendants suggest to the court that every healthcare provider who has testified in any Norplant case has made clear that they were aware of the possible side effects listed in the "Adverse Reactions" section of the Norplant physician labeling before prescribing the drug to patients. Defs.' Mem. in Supp. of Mot. for Partial Summ. J. re the Learned Intermediary Doctrine/Causation at 11–15. Defendants therefore claim that such warnings were adequate. Based on Dr. Nelson's testimony and the fact that *no physician or nurse practitioner has testified that he or she was unaware of Norplant's 26 potential side effects or that he or she would not have recommended Norplant had the physician warnings been different,* Defendants contend that partial summary judgment is proper.

The court finds that Dr. Nelson's affidavit and Defendants' auxiliary evidence properly demonstrate that any competent healthcare provider would have been aware of the 26 "Adverse Reactions" listed in the Norplant physician labeling at the time he or she prescribed Norplant. Defendants therefore have met their initial burden to point out the absence of a genuine issue of material fact regarding the element of causation in Plaintiffs' claims.

The burden now shifts to Plaintiffs to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. In particular, Plaintiffs must offer summary judgment proof establishing a fact issue with regard to the element of causation. Plaintiffs must show that a different warning about the 26 side effects in the Norplant physician labeling would have changed the decision of the treating healthcare providers who prescribed Norplant. Put another way, Plaintiffs must show that the treating providers would not have prescribed Norplant if the physician labeling had been adequate. Their position is made difficult by the fact that Defendants included the 26 side effects in Norplant's physician labeling. Defendants also adduced reliable evidence suggesting that any healthcare provider who prescribed Norplant would have been aware of the 26 side effects.

Plaintiffs' attempt to obfuscate the intent of Defendants' motion by arguing that an issue of fact remains for the element of causation because Defendants must prove that the "inserting physician was aware of *all possible* risks involved in the use of Norplant . . . ." Pls.' Resp. at 2. However, Plaintiffs' assertion is incorrect. The present motion only deals with the 26 side effects listed in Norplant's physician labeling, not "all possible" risks involved with the use of Norplant.

The heart of Plaintiffs' response contends that, contrary to Defendants' assertions, several physicians have testified that there was medical information pertaining to Norplant's risks of which they were unaware at the time of insertion. *Id.* at 3. Plaintiffs offer the deposition testimony of Dr. Peter DeWet ("Dr.DeWet"), Nurse Bonita Anne George ("Nurse George"), Dr. Harold Maury Tatum ("Dr.Tatum"), Dr.

woman could experience "a variable number of those side effects," and that "the intensity of the problems would vary in different women." *Id.* at Tab 34 ¶ 21.

Charles Robert Moses ("Dr.Moses"), Dr. Louis John Kirk ("Dr.Kirk"), and Dr. William Price ("Dr.Price")—all healthcare providers who testified in a Norplant action in Jefferson County, Texas, and allegedly stated they were unaware of some information concerning Norplant's side effects. Plaintiffs maintain that their testimony raises a genuine issue of fact regarding causation because they essentially state that if Defendants had provided them with additional information about Norplant's risks, they would have provided such information to the patients; and that, after receiving the information, if the patients decided they did not want to use Norplant, they would not have inserted the product. *Id.* at 5. Plaintiffs' contentions will be scrutinized below, however, the court notes that this motion only deals with the prescribing healthcare provider's awareness of the 26 side effects listed in the "Adverse Reactions," not other miscellaneous information regarding Norplant about which providers may have been unaware. Moreover, to defeat summary judgment in this motion, Plaintiffs must show that a different warning regarding the 26 possible side effects would have changed the decision of the treating healthcare provider so that he or she would not have prescribed Norplant.

Having examined the testimony of the above mentioned healthcare practitioners, the court finds that Plaintiffs did not create a fact issue on causation because the evidence fails to show that any of the healthcare providers cited by Plaintiffs were unaware of the 26 side effects listed as "Adverse Reactions." *See* Defs.' Reply at 3–5. Dr. DeWet nowhere says that he was not aware of the 26 "Adverse Reactions." At most, he admits that he was aware that moodiness could be related to Norplant and the other side effects "possibly" could be as well. Pls.' Resp. Ex. 1 at 47–48. Nurse George indicates that a Norplant counseling booklet did not men-

tion mood swings or depression as possible side effects. However, neither mood swings nor depression are listed as possible "Adverse Reactions" and, furthermore, Nurse George later mentions that she would have prescribed Norplant regardless of her knowledge. *Id.* Ex. 2 at 119, 122. Nowhere in Dr. Tatum's testimony does he claim that he was unaware of the 26 common side effects at issue. *Id.* Ex. 3 at 57, 61–62. And Dr. Moses never states that he was not aware of the 26 side effects; rather, he believes Defendants' warnings "adequately advised [his] patient as to what to expect from the use of … Norplant." *Id.* Ex. 4 at 61. He does say that the warnings on the physician labeling did not set forth the severity of each side effect; however, whether the healthcare providers were aware of the severity of the side effects before prescribing Norplant is not the issue in this motion. *Id.* Ex. 4 at 48. The issue is whether a warning was given which notified the physician of each side effect. Likewise, Dr. Kirk does not claim he was unaware of the side effects. In fact, he unequivocally states that he "knew what the side effects were." *Id.* Ex. 5 at 37. Much like Dr. Kirk, Dr. Price explicitly acknowledges that he was familiar with the side effects listed in the physician labeling provided by Defendants. *Id.* Ex. 24 at 20–21.

It is clear to the court that Plaintiffs have failed to prove that even a single healthcare provider who prescribed Norplant was not fully aware of the 26 side effects listed as "Adverse Reactions" in the Norplant physician labeling. None of the healthcare providers expressly cited by Plaintiffs state that any additional information regarding the 26 side effects would have altered their decisions to prescribe Norplant. Further, the testimony of these six healthcare practitioners is not directly relevant to this case because there is abso-

lutely no evidence that they prescribed Norplant to any Plaintiff in this suit.[19]

Plaintiffs also issue two collateral attacks on Defendants' motion, both of which were already discussed by this court in its earlier opinion, *In re Norplant Contraceptive Prod. Liab. Litig.*, 955 F.Supp. 700, 703–05 (E.D.Tex.1997), *aff'd,* 165 F.3d 374 (5th Cir.1999). First, Plaintiffs argue that the learned intermediary doctrine does not apply to Plaintiffs because Defendants engaged in direct-to-consumer marketing. Pls.' Resp. at 20–29. This argument is repetitive and lacks merit in all jurisdictions, except New Jersey. The Fifth Circuit reasoned that "[t]his argument is critically weakened by the absence of any evidence on the record that any of the ... plaintiffs actually saw, let alone relied, on any marketing materials issued to them" by Defendants. *In re Norplant Contraceptive Prod. Liab. Litig.,* 165 F.3d 374, 379 (5th Cir.1999). The same deficiency of evidence is present in the instant cases. Plaintiffs offer no evidence that any single Plaintiff saw Norplant advertising and was influenced by it. Moreover, as evidenced by the law in the Fifth Circuit and every other jurisdiction in the United States, apart from New Jersey, direct-to-consumer advertising does not negate the applicability of the learned intermediary doctrine. As noted, however, those ten Plaintiffs whose cases are governed by the substantive law of New Jersey are exempt from this motion. *Perez v. Wyeth Lab. Inc.,* 161 N.J. 1, 734 A.2d 1245, 1257 (1999).

Second, Plaintiffs contend, in the alternative, that the learned intermediary doctrine only applies to Plaintiffs' failure to warn claims rooted in strict products liability, and not their misrepresentation, fraud, or DTPA claims. Pls.' Resp. at 29–31. The court finds Plaintiffs' argument flawed. This motion applies not only to those Plaintiffs whose cases arise under Texas law, but also to Plaintiffs whose cases arise under the laws of many other jurisdictions. Because the DTPA is the law only in Texas, it does not apply to the majority of Plaintiffs subject to this motion. It appears that this argument in Plaintiffs' response to the instant motion was drawn verbatim from their response to Defendants' motion for summary judgment filed in 1997 relating to the first bellwether trial; nonetheless, the court will address it briefly.

This court, in *In re Norplant Contraceptive Prod. Liab. Litig.,* 955 F.Supp. 700, *aff'd,* 165 F.3d 374, held that the learned intermediary doctrine applied to the bellwether Plaintiffs' claims of strict liability, negligence, misrepresentation, implied warranty, and those claims brought under the DTPA because "each claim is based upon failure to warn." 955 F.Supp. at 709, *aff'd,* 165 F.3d at 378. Subsequently, the Fifth Circuit affirmed, distinctly stating that the learned intermediary doctrine applies to claims made under the DTPA. *In re Norplant Contraceptive Prod. Liab. Litig.,* 165 F.3d 374, 378 (5th Cir.1999). Thus, Plaintiffs' argument that the learned intermediary doctrine does not bar their misrepresentation, fraud, or DTPA theories is unavailing; the doctrine applies to all of Plaintiffs' claims premised on Defendants' alleged failure to warn patients

---

**19.** Plaintiffs also argue that Norplant was not actually prescribed by a physician in some instances, but fail to list any instances applicable to the instant litigation. *Id.* at 5. Rather, Plaintiffs rely on the depositions of Dr. Moses, Nurse George, Dr. Tatum, Dr. Uel Crosby, and Dr. Kirk for the proposition that

Plaintiffs were counseled about the potential side effects of Norplant by a nurse or nurse's aid. *Id.* These depositions refer to plaintiffs in the Norplant suit in Jefferson County. The fact that the these practitioners cited by Plaintiffs did not prescribe Norplant to any Plaintiffs in this suit nullifies their argument.

about Norplant's possible 26 "Adverse Reactions."

The court concludes that Plaintiffs have not established a fact issue regarding the element of causation. They have not met their burden because they have failed to show that a different warning in the Norplant physician labeling would have changed the decision of the practitioners who prescribed Norplant to these Plaintiffs. The totality of the evidence submitted by both sides indicates that all of the healthcare providers who prescribed Norplant were aware of the 26 common side effects in question when they prescribed it. As a result, the court finds that Defendants are entitled to partial summary judgment on Plaintiffs' failure to warn claims as to the 26 side effects listed as "Adverse Reactions" in Norplant's physician labeling.

D. *SUMMARY OF THE COURT'S DECISION ON THIS MOTION*

Having concluded that this motion should be granted as to 26 side effects alleged by numerous Plaintiffs, the court will summarize the results of its decision. Overall, Defendants' motion for partial summary judgment regarding the learned intermediary doctrine is GRANTED in part and DENIED in part.

This motion covers all Plaintiffs to the extent they allege any of the 26 primary side effects listed in the "Adverse Reactions" section of Norplant's physician labeling. *See, supra,* at 800 n. 7 (enumerating the "Adverse Reactions"). Generally, this motion is GRANTED as to those numerous Plaintiffs who claim they suffer any of the 26 "Adverse Reactions." Plaintiffs in this category both filed their cases and had Norplant implanted in jurisdictions other than New Jersey.

Defendants' motion is GRANTED as to those Plaintiffs who filed individual responses merely joining with the overarching response filed by Provost ★ Umphrey and Ness, Motley, Loadholt, Richardson & Poole. Plaintiffs in this category include all remaining Plaintiffs represented by Parker & Parks, all remaining Plaintiffs represented by Sybil Shainwald, P.C. (of counsel is Allen & Lippes), as well as Plaintiff Jaylee Smith (1:96–CV–5431). Partial summary judgment is also GRANTED against those Plaintiffs who filed their cases in New Jersey, but had Norplant implanted in a different jurisdiction.

Several Plaintiffs not mentioned above filed individual responses to this motion for partial summary judgment: Annette Caraveo, Brandy L. Linsner, Ingrid Hakala, Christa White, and Karan Zopatti. Defendants' motion is GRANTED as to Plaintiffs Annette Caraveo (1:95–CV–5078), Brandy L. Linsner (1:95–CV–5080), and Christa White (1:99–CV–8945) to the extent they allege any of the 26 side effects. Defendants motion is also GRANTED as to both Ingrid Hakala (1:97–CV–7794) and Karan Zopatti (1:97–CV–7750). Hakala and Zopatti do not allege side effects aside from the 26 in question.

The motion is DENIED as to Plaintiffs Penny and Robert Robinson (1:95–CV–5069); Susan Port (1:95–CV–5049); and Barbara Bueno (1:95–CV–5077) by stipulation of the parties. These Plaintiffs do not allege any of the 26 "Adverse Reactions" listed in the Norplant labeling. It is also DENIED with respect to Plaintiffs Rhonda Randazzo and Linda Vitali (1:97–CV–7359); Marie Badame (1:97–CV–7979); Shaunda Taylor and Rebecca Zenguis (1:97–CV–8125); Marva Christie (1:97–CV–8126); Charlene Harris (1:97–CV–7789); and Deborah Campione, Oneyda Fay, and Dawn Lauterborn (1:97–CV–7795) because New Jersey law applies to their cases.

In sum, this motion is GRANTED as to 2,956 Plaintiffs. This number includes all Plaintiffs except the ten who have asserted claims governed by New Jersey law, and the four Plaintiffs with respect to whom this motion is inapplicable by stipulation of the parties.

## IV. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CONDITIONS FOR WHICH THERE IS NO EVIDENCE OF CAUSATION

### A. INTRODUCTION

Defendants' motion for partial summary judgment regarding conditions for which there is no evidence of causation exclusively pertains to all of the 950–odd side effects, or exotic conditions, alleged by Plaintiffs, but not covered in the Norplant physician labeling. *See* Defs'. Mem. in Supp. of Mot. for Partial Summ. J. re Causation at 1; Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 2, Tab 35 (listing over 950 complained of side effects). The Norplant physician labeling provides warnings for healthcare providers only as to the 26 side effects listed as "Adverse Reactions." The 26 side effects are the subject of the motion for partial summary judgment analyzed directly above. No warnings were given as to the 950 exotic conditions, however, and, thus, the learned intermediary doctrine cannot apply to them. Healthcare providers who have not been sufficiently warned of a drug's harmful effects cannot be considered learned intermediaries. *See Hansen v. Baxter Healthcare Corp.,* 309 Ill.App.3d 869, 243 Ill.Dec. 270, 723 N.E.2d 302, 312 (1999) (citation omitted); *see also Porterfield,* 183 F.3d at 467–68 (opining that a product manufacturer is excused from warning each patient who receives the product only when the manufacturer *properly warns* the prescribing physician of the product's dangers). Thus, separate analysis concerning the 950–odd exotic conditions is necessary to determine if partial summary judgment is proper.

Because it is imperative to explain the ramifications of this motion, the court reiterates that this motion only applies to the more than 950 exotic conditions alleged by Plaintiffs. This is not to say that each Plaintiff alleges all of the 950 conditions. The 950 number serves as the total number of exotic conditions alleged when considering all of Plaintiffs' complaints and interrogatory answers as presented to the court by Defendants. Therefore, this motion covers *every single condition alleged by every Plaintiff in this litigation,* excluding the 26 "Adverse Reactions" dealt with in Defendants' motion for partial summary judgment regarding the learned intermediary doctrine. This motion applies to all Plaintiffs regardless of which jurisdiction's law governs and regardless of the court's ruling on Defendants' motion concerning the learned intermediary doctrine. If the court grants this motion, judgment will be entered in favor of Defendants and against every Plaintiff's claim that asserts any of the exotic conditions.

### B. ANALYSIS OF SUMMARY JUDGMENT EVIDENCE REGARDING CAUSATION

Defendants contend that partial summary judgment is proper as to more than 950 exotic conditions because Plaintiffs have not put forth scientifically reliable evidence of general causation. Defendants argue that Plaintiffs have the burden to prove causation as to the exotic conditions because causation is an essential element of their failure to warn claims.[20]

**20.** The court decided that all of Plaintiffs' claims are grounded upon allegations of failure to warn. *See, supra,* at 801–02.

■ Causation is a fundamental element of Plaintiffs' failure to warn claims, as well as any other tort claim. *Habecker v. Copperloy Corp.*, 893 F.2d 49, 54 (3d Cir.1990) ("Causation is an essential element of a products liability (or any other tort) action."); *see also* Restatement (Second) of Torts § 430 (1965). Defendants claim that to prove causation Plaintiffs must proffer evidence establishing both (1) *general causation*—that Norplant implants are capable of causing Plaintiffs' alleged exotic conditions or injuries; and (2) *specific causation*—that Norplant did, in fact, cause each condition in each individual case. *Rutigliano v. Valley Bus. Forms*, 929 F.Supp. 779, 783 (D.N.J.1996) (citing *DeLuca by DeLuca v. Merrell Dow Pharm., Inc.*, 911 F.2d 941, 958 (3d Cir. 1990) (stating that testimony must be able to support a jury finding both general and specific causation); *In re Agent Orange Prod. Liab. Lit.*, 611 F.Supp. 1223, 1250, *aff'd*, 818 F.2d 187 (2d Cir.1987) (opining that to prove specific causation, plaintiff's expert must first prove general causation and follow by excluding other possible causes of injury)). The court agrees with Defendants' characterization of causation since the causation requirements in failure to warn claims are similar in all United States jurisdictions.

Thus, Defendants may discharge their burden of demonstrating there is no genuine issue of material fact as to causation by showing an absence of evidence concerning general causation. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In this motion, general causation addresses whether Norplant is capable of causing any of the exotic conditions alleged by Plaintiffs. *Rutigliano*, 929 F.Supp. at 783.

■ Evidence of general causation must be provided in the form of expert testimony that satisfies the requirements of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and Rule 702 of the Federal Rules of Evidence. Norplant is a prescription drug and knowledge of its capabilities is based on scientific or other specialized information requiring interpretation by experts in the field. *Id.* at 589–91, 113 S.Ct. 2786 (reasoning that the trial judge must act as a "gatekeeper" to ensure that all expert testimony or evidence to be heard at trial is not only relevant, but also reliable in cases where essential elements of a plaintiff's case are entirely dependent upon expert testimony); Fed.R.Evid. 701 (stating that lay witnesses cannot testify to opinions or inferences based on scientific, technical, or other specialized knowledge within the scope of Rule 702). As Defendants properly point out, "[u]nder *Daubert*, admissible expert testimony must be based on 'scientific knowledge,' that is, knowledge grounded in and based upon the 'methods and procedures of science' and 'supported by appropriate validation.'" Defs.' Mem. in Supp. of Mot. for Partial Summ. J. re Causation at 3 (citing *Daubert*, 509 U.S. at 589–90, 113 S.Ct. 2786).

Defendants further specify that epidemiological evidence is the most useful type of expert evidence to prove general causation. Defs.' Mem. in Supp. of Mot. for Partial Summ. J. re Causation at 4 (citing *Brock v. Merrell Dow Pharm., Inc.*, 874 F.2d 307, 311 (5th Cir.1989); *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 197 (5th Cir.1996)). They believe this court has previously emphasized the importance of epidemiological evidence to prove that pharmaceutical products cause the conditions attributed to them. *Id.* at 5. In fact, this court has acknowledged the importance of epidemiological evidence that is "statistically significant" in providing a scientific basis for causation in the Norplant litigation. Before the court granted summary judgment against the five bellwether

Plaintiffs, the court granted Defendants' motion in limine to bar the bellwether Plaintiffs' argument that Norplant caused mood changes at a rate ten times higher than the incidence of mood changes in IUD users because there was no "statistically significant" epidemiological evidence to support their argument. *See* Order Granting Defs.' Mot. in Limine to Bar Argument that the Incidence of Mood Changes was Ten Times Higher in Norplant Users Compared to IUD Users (Feb. 20, 1997). The court explained that "[e]pidemiological data that is not 'statistically significant' cannot provide a scientific basis for an opinion on causation." *Id.* at 2 (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 197); *see also* Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 1, Tab 33 ¶¶ 6, 8 (outlining the importance of statistically significant epidemiological data in determining general causation). Therefore, the court will extend its former statement on epidemiological evidence to each of the exotic conditions put forth by Plaintiffs.[21]

To prove the absence of evidence on general causation, Defendants offer the affidavit of Dr. Stephen Heartwell ("Dr.Heartwell"), an epidemiologist who serves as associate professor and Director of the Division of Maternal Health and Family Planning in the Department of Obstetrics and Gynecology at the University of Texas Southwestern Medical School. *Id.* at 6–7; Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 1, Tab 33. Dr. Heartwell states that there is no scientifically reliable evidence establishing that Norplant causes the exotic conditions or any conditions not listed on the physician labeling. Defs.' Mem. in Supp. of Mot. for Partial Summ. J. re

Causation 6; Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 1, Tab 33 ¶ 13. He bases his statements on scientific data obtained during the Phase III Norplant clinical trials and a review of the medical literature relied on by Plaintiffs' experts in this litigation. Defs.' App. in Supp. of Wyeth's Four Mots. for Partial Summ. J., Volume 1, Tab 33 ¶ 13.

Phase III clinical trials generally are "intended to determine the safety and efficacy of a pharmaceutical product" in preparation for a New Drug Application filed with the FDA. *Id.* at Tab 33 ¶ 4, 5. "In a clinical trial, a control group is used as a basis for comparing the experiences of users of the product (the study group) with those who are not users of the product." *Id.* at Tab 33 ¶ 5. Dr. Heartwell reports that "[b]y using a control group, researchers are able to determine generally whether adverse events occur more frequently, less frequently, or with the same frequency in the study group (product users) as in ... similar persons not using the product." *Id.* at Tab 33 ¶ 5. "Researchers also use tests of statistical significance to determine whether observed differences may be due to chance." *Id.* at Tab 33 ¶ 6. "If a statistically significant difference is *not* observed between the study group and the control group with respect to a particular adverse effect, the clinical trial provides no scientific evidence that the product is related to the adverse effect." *Id.* at Tab 33 ¶ 8 (emphasis added).

The Norplant Phase III clinical trials consisted of two studies using control groups, including more than 2,400 women who used the Norplant implant device. *Id.* at Tab 33 ¶ 9. In these trials, the control

---

**21.** While the court does not hold that epidemiological proof is a necessary element in all products liability cases, it is certainly a very important element where medical causation is at issue. This is especially true here as Plaintiffs must provide reliable scientific evidence linking Norplant to various and sundry health conditions.

group involved women using a Copper–T Intrauterine Contraceptive Device ("IUD") for birth control. *Id.* at Tab 33 ¶ 9. The results of the Norplant Phase III clinical trials showed that, "[a]part from bleeding irregularities, the only conditions as to which a statistically significant increase in reporting was observed among women using Norplant" in contrast "to women using the Copper–T IUD were headache, nervousness, changes in appetite, weight gain, dermatitis, acne, nausea, mastalgia (breast tenderness), ovarian enlargement, diseases of the hair, and dizziness"—all of which are enumerated as potential "Adverse Reactions" in the Norplant physician labeling. *Id.* at Tab 33 ¶ 10. Dr. Heartwell believes that the Norplant Phase III clinical findings "did not show a statistically significant association between Norplant use and any of the [exotic] side effects . . . ." *Id.* at Tab 33 ¶ 11.

Dr. Heartwell also discusses his review of the medical literature relied on by Plaintiffs' experts in the instant litigation. He declares that "[n]one of these articles report any controlled epidemiological studies that show a statistically significant association between Norplant use and any of the [exotic] side effects . . . or an increased risk of any of the [exotic] side effects . . . in women using Norplant or in Norplant users compared to any control group." *Id.* at Tab 33 ¶ 12.

Based on the scientific data gleaned from the Norplant Phase III clinical trials, coupled with a review of the medical literature relied on by Plaintiffs' experts, Dr. Heartwell concludes that there is "no reliable scientific evidence that Norplant can cause any of the [exotic] side effects . . . , or even that Norplant creates an increased risk of these conditions." *Id.* at Tab 33 ¶ 13. Thus, the court finds that Defendants have met their initial burden to point out the absence of a genuine issue of material fact regarding the element of causa-

tion in Plaintiffs' claims regarding the exotic conditions. The burden now shifts to Plaintiffs to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. In particular, Plaintiffs must offer summary judgment proof establishing a fact issue with regard to general causation. They must adduce affirmative evidence that an allegedly defective drug is capable of causing the complained-of conditions. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1196 (5th Cir.1986).

Instead of producing expert testimony, however, Plaintiffs argue that Defendants filed their motion prematurely because no discovery has been conducted other than the preliminary interrogatories, which do not request information concerning specific scientific causation. Plaintiffs' argument is not well taken: "[a] claim that further discovery . . . might reveal facts which the plaintiff is currently unaware of is *insufficient* to defeat" a motion for summary judgment. *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir.1988) (citing *Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1414–15 (5th Cir.1987)); *Fontenot*, 780 F.2d at 1195–96 (noting that conclusory allegations do not suffice when no evidence supports them) (emphasis added). Plaintiffs have not submitted affidavits under Rule 56(f) stating any reasons why they are unable to meet their burden of proof in response to this motion for partial summary judgment. FED.R.CIV.P. 56(f). Furthermore, Plaintiffs have had ample time in the three years since this motion was filed to engage in discovery on general and/or specific causation. Plaintiffs have not been prohibited from engaging in such discovery.

Plaintiffs also argue that *Daubert* does not apply to this motion because they have the right to offer their own lay testimony regarding the injuries and damages they

allegedly received as a result of using Norplant. Pls.' Resp. at 2–3. They specifically contend that *Daubert* is only applicable to expert testimony and Plaintiffs are not experts, but they will offer their own testimony as to the injuries caused by Norplant. *Id.* In essence, Plaintiffs believe that Defendants are merely seeking to limit Plaintiffs' right to testify about their specific conditions and injuries—*i.e.*, about specific causation. However, Defendants' motion for partial summary judgment regarding causation attacks Plaintiffs' dearth of evidence on "general" causation, not specific causation. The threshold issue on causation is general causation, which requires expert testimony, not personal and specific testimony as to each claim. *Rutigliano*, 929 F.Supp. 779, 783 (D.N.J.1996) (citing *In re Agent Orange Prod. Liab. Lit.*, 611 F.Supp. 1223, 1250 (E.D.N.Y. 1985) (commenting that the plaintiff's expert must prove general causation before proving specific causation)) (citation omitted); *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1320 (11th Cir.1999). Further, Defendants agree that Plaintiffs have a right to testify about their specific ailments, but correctly assert that Plaintiffs themselves are not qualified to testify about whether Norplant is capable of causing the exotic conditions. Defs.' Reply at 3. Plaintiffs instead must adduce expert testimony, preferably in the form of epidemiological data, to establish general causation in this litigation. They have failed to do so.

Notably, in the three years since Defendants filed this motion for partial summary judgment, Plaintiffs have not produced a shred of evidence or expert testimony that supports an association between Norplant and any of the exotic conditions. When, as here, the moving party has carried its burden under Rule 56(c), its opponent must present more than a metaphysical doubt about the material facts. *Washington*, 839 F.2d at 1123 (citing *Matsushita*

*Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Plaintiffs' negligible arguments, however, do nothing more than convey a metaphysical doubt about the material facts, if even accomplishing that. Defendants' motion for partial summary judgment, along with Dr. Heartwell's affidavit, gave Plaintiffs ample opportunity to present expert testimony demonstrating that some scientific data supports a causal association between Norplant and the exotic conditions, but Plaintiffs have failed to offer any such evidence in response. As a result, the court finds that Defendants are entitled to partial summary judgment on Plaintiffs' failure to warn claims as to the more than 950 exotic conditions alleged.

C. **SUMMARY OF THE COURT'S DECISION ON THIS MOTION**

Defendants' motion for partial summary judgment on conditions for which there is no evidence of causation is therefore GRANTED. The motion covers every Plaintiff who alleges that Norplant produced any side effect not among the 26 listed in Norplant's labeling as "Adverse Reactions."

## V. CONCLUSION

A. *DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE LEARNED INTERMEDIARY DOCTRINE*

After reviewing the evidence on record, the court concludes that, when viewed in the light most favorable to Plaintiffs, the summary judgment evidence supports the finding that there are no genuine issues of material fact regarding the element of causation in Plaintiffs' failure to warn claims to the extent Plaintiffs assert any of the 26 side effects itemized as "Adverse Reactions" in the Norplant physician labeling. The court finds that the learned intermediary doctrine applies in all cases not governed by New Jersey substantive

law. Plaintiffs have failed to produce evidence overcoming the doctrine in that they do not show that the purportedly inadequate warnings on Norplant's labeling were either a producing cause of and/or proximately caused Plaintiffs subsequent injuries. Nor do they proffer evidence confirming that any of Plaintiffs' treating healthcare providers would not have prescribed Norplant had the labeling been different. Defendants, however, provide the affidavit of Dr. Anita Nelson, which establishes that the healthcare providers who prescribed Norplant were aware of the 26 "Adverse Reactions." Therefore, "Wyeth's Motion For Partial Summary Judgment Re The Learned Intermediary Doctrine/Causation" is hereby GRANTED in part and DENIED in part.

Unless specified below, this motion is GRANTED as to all Plaintiffs who claim they suffer any of the 26 "Adverse Reactions," including Plaintiffs who filed suit and had Norplant implanted in jurisdictions other than New Jersey; Plaintiffs who filed suit in New Jersey, but had Norplant implanted in a different jurisdiction; and Plaintiffs who filed individual responses joining with the response filed by Provost Umphrey and Ness, Motley, Loadholt, Richardson & Poole.

Moreover, Defendants' motion is GRANTED as to Plaintiffs Annette Caraveo (1:95–CV–5078), Brandy L. Linsner (1:95–CV–5080), and Christa White (1:99–CV–8945) to the extent they allege any of the 26 side effects. It is also GRANTED as to both Ingrid Hakala (1:97–CV–7794) and Karan Zopatti (1:97–CV–7750) because they complain only of side effects enumerated as "Adverse Reactions."

Defendants' motion is DENIED as to Plaintiffs Penny and Robert Robinson (1:95–CV–5069), Susan Port (1:95–CV–5049), and Barbara Bueno (1:95–CV–5077)

by stipulation of the parties because none of these Plaintiffs alleged any of the 26 "Adverse Reactions." The motion is also DENIED with respect to Plaintiffs Rhonda Randazzo and Linda Vitali (1:97–CV–7359); Marie Badame (1:97–CV–7979); Shaunda Taylor and Rebecca Zenguis (1:97–CV–8125); Marva Christie (1:97–CV–8126); Charlene Harris (1:97–CV–7789); and Deborah Campione, Oneyda Fay, and Dawn Lauterborn (1:97–CV–7795) because New Jersey law applies to their cases.

B. *Defendants' Motion For Partial Summary Judgment Regarding Conditions For Which There Is No Evidence Of Causation*

The court further concludes that, when viewed in the light most favorable to Plaintiffs, the summary judgment evidence supports the finding that there are no genuine issues of material fact regarding the element of causation in Plaintiffs' failure to warn claims to the extent Plaintiffs assert any of the side effects beyond the 26 "Adverse Reactions." This motion does not rely on the learned intermediary doctrine. In this motion, Plaintiffs, who have the burden of proof at trial and must come forward in response to a motion for partial summary judgment with some evidence on each element of their claims, submit no expert testimony on general causation. Defendants, on the other hand, advance the affidavit of Dr. Stephen Heartwell, which shows there is no scientifically reliable evidence establishing that Norplant causes any of the exotic conditions. Because there remains no issue of fact to be tried, "Wyeth's Motion For Partial Summary Judgment Re Conditions For Which There Is No Evidence Of Causation" is hereby GRANTED as to all Plaintiffs' claims in this litigation that assert any of the exotic conditions.[22]

---

**22.** This includes the exotic conditions claims

of those Plaintiffs who survived partial sum-

## C. RAMIFICATIONS OF THE COURT'S RULINGS—THE CLOSE OF MDL NO. 1038

By granting these two motions for partial summary judgment simultaneously, the court terminates nearly all remaining non-settling Plaintiffs and their claims in the Norplant multidistrict litigation proceedings. In fact, the court grants summary judgment in favor of Defendants and against 2,960 Plaintiffs in 710 cases, as listed in the attached *Appendix A.* The few Plaintiffs persisting in the wake of these motions are those who maintain claims that survive the motion for partial summary judgment regarding the learned intermediary doctrine because New Jersey law governs. Of those ten Plaintiffs, their six cases endure only to the extent they assert any of the 26 "Adverse Reactions." Judgment will be entered in favor of Defendants with respect to every other claim in this litigation.

The court's ruling on these two motions for partial summary judgment therefore completes the centralized pretrial proceedings pertaining to Multidistrict Litigation number 1038 ("MDL No. 1038"). *See In re Dept. of Energy Stripper Well Exemption Litig.,* 472 F.Supp. 1282 (J.P.M.L. 1979). All but ten Plaintiffs are terminated from the litigation by judgment of this court. *In re Asbestos Litig.,* 7 F.Supp.2d 93, 95 (D.Mass.1998) (citing R. MULTIDIST. LIT. 14, now 7.6 ("Actions terminated in the transferee district court by valid judgment, including ... summary judgment, ... shall not be remanded by the Panel and shall be dismissed by the transferee district court.")); 28 U.S.C. § 1407(a). Thus, in accordance with 28 U.S.C. § 1407(a) and Rule 7.6 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the court suggests that the Judicial Panel on Multidistrict Litigation remand the cases of the ten remaining Plaintiffs to their respective transferor districts because " 'pretrial proceedings [for all Plaintiffs] have run their course.' " *In re Asbestos Litig.,* 7 F.Supp.2d at 94 (citing *Lexecon Inc. v. Milberg Weiss,* 523 U.S. 26, 118 S.Ct. 956, 962, 140 L.Ed.2d 62 (1998)); 28 U.S.C. § 1407(a) ("Each action ... transferred shall be remanded by the panel at or before the conclusion of ... pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."). Listed below are the names of the remaining ten Plaintiffs, their assigned MDL No. 1038 case numbers, and the district courts and divisions from which they were transferred:

(1) Plaintiffs Rhonda Randazzo and Linda Vitali (1:97–CV–7359) were transferred from the Southern District of New York, New York Division;

(2) Plaintiff Marie Badame (1:97–CV–7979) was transferred from the Southern District of New York, White Plains Division;

(3) Plaintiffs Shaunda Taylor and Rebecca Zenguis (1:97–CV–8125) were also transferred from the Southern District of New York, White Plains Division;

(4) Plaintiff Marva Christie (1:97–CV–8126) was transferred from the Southern District of New York, White Plains Division;

(5) Plaintiff Charlene Harris (1:97–CV–7789) was transferred from the Northern District of Illinois, Eastern Division; and

mary judgment regarding the learned intermediary doctrine for one reason or another: Penny and Robert Robinson (1:95–CV–5069); Susan Port (1:95–CV–5049); Barbara Bueno (1:95–CV–5077); Rhonda Randazzo and Linda Vitali (1:97–CV–7359); Charlene Harris (1:97–CV–7789); Deborah Campione, Oneyda Fay, and Dawn Lauterborn (1:97–CV–7795); Marie Badame (1:97–CV–7979); Shaunda Taylor and Rebecca Zenguis (1:97–CV–8125); and Marva Christie (1:97–CV–8126).

(6) Plaintiffs Deborah R. Campione, Oneyda Fay, and Dawn Lauterborn (1:97–CV–7795) were also transferred from the Northern District of Illinois, Eastern Division.

The court recommends that the Judicial Panel on Multidistrict Litigation remand these cases to the aforesaid districts with instructions to apply New Jersey substantive law to Plaintiffs' remaining claims. It is so ORDERED.

## APPENDIX A

| Case Number | Plaintiffs |
|---|---|
| 1:94cv5001 | Lisa Skinner |
| 1:94cv5002 | Roseanne Mitchell |
| 1:94cv5005 | Susan Williams |
| 1:94cv5008 | Deadra Lillie |
| | Randy Lillie |
| 1:94cv5009 | Robin Malain |
| 1:94cv5012 | Del Baird |
| 1:94cv5013 | Lynette Vogel |
| 1:94cv5015 | Cathy Bernish |
| 1:94cv5017 | Christina Horner |
| | Jane Doe |
| | Bonnie Abbot |
| | Elva Gutierrez |
| | Jane Doe |
| 1:94cv5026 | Jennifer Khuu |
| 1:94cv5028 | Earserlene Smith |
| 1:94cv5029 | Melissa Wilkerson |
| 1:94cv5032 | Lydia Oliver |
| 1:95cv5045 | Patricia Herron |
| 1:95cv5048 | Denise Hobbs |
| | Hazel Cox |
| | Shelly Martin |
| | Juliette Davis |
| 1:95cv5049 | Susan Port |
| 1:95cv5057 | Jewel Cannon |
| 1:95cv5058 | Linda Millette |
| | Particia Pledger |
| 1:95cv5063 | Barbara Morrison |
| 1:95cv5069 | Penny Robinson |
| | Robert Robinson |
| 1:95cv5071 | Linda Anderson |
| | Ladonna Dark |
| 1:95cv5072 | Tonya Redding |
| 1:95cv5077 | Barbara Bueno |
| 1:95cv5078 | Annette Caraveo |
| 1:95cv5080 | Brandy Linsner |
| 1:95cv5081 | Tammy Binet |
| 1:95cv5087 | Sam Robins |
| | Dana Robins |
| 1:95cv5089 | Jerri Ware |
| | James Ware |
| 1:95cv5092 | Patricia Matson |
| 1:95cv5093 | Latrice Lee |
| | Marlissa Locke |
| 1:95cv5098 | Yara Allen |
| | Ginger Alliss |
| | Shawnnee Booth |
| | Antonietta Capocasa |
| | Stacy Carter |
| | Serese Gilbert |
| | Nickiey Kochell |
| | Debbie Lade |
| | Janet Lindsey |
| | Kim Mikel |
| | Jeannie Miller |
| | Cindy Moreman |

| | Lora Nelson | | Sandra Nava |
|------------|------------------------|------------|------------------------|
| | Eileen Weber | 1:95cv5301 | Yen Phan |
| 1:95cv5106 | Rosalyn Mattingly | 1:95cv5319 | Rosalind Barthelemy |
| 1:95cv5111 | Nicole Peterson | | Gary Barthelemy |
| 1:95cv5115 | Lisa Rioux | | Nekitha Tyler |
| 1:95cv5128 | Nancy Garza | | Edna Williamson |
| 1:95cv5148 | Amanda Mungia | 1:95cv5320 | Shamar Carpenter |
| 1:95cv5155 | Mary Hagee | 1:95cv5323 | Jenny Sauceda |
| 1:95cv5160 | Mary Brown | | Carlos Sauceda |
| | Melissa Brown | 1:95cv5325 | Hong Huynh |
| 1:95cv5166 | Angela Coble | 1:95cv5327 | Cindy Price |
| | Melody Harvey | | Laura Riley |
| | Rebecca House | | Ronda Hampton |
| 1:95cv5172 | Tessa Campbell | | Penny Burchett |
| | Jamie Campbell | | Tammy Limings |
| 1:95cv5173 | Joan Armstrong | 1:95cv5332 | Amber Carr |
| | Daniel Becnel, Jr | | Brenda Miller |
| 1:95cv5174 | Crystal Elam | 1:95cv5334 | Veronica Anderson |
| 1:95cv5175 | Tracy Gonzales | 1:95cv5335 | Elizabeth Brownfield |
| | Jessica Gonzalez | | Stephanie Feinman |
| | Elizabeth Gonzalez | 1:95cv5339 | Renee Nolasco |
| | Gudelia Gutierrez | | Tressa Rickard |
| 1:95cv5176 | Angela Ryals | | Sophia Rivera |
| 1:95cv5177 | Esther Salinas | | Felipe Rivera |
| 1:95cv5179 | Cindy Henderson | | Nisa Stevens |
| | Graciela Hernandez | | Lynnae' Thompson |
| 1:95cv5182 | Daniel Becnel, Jr | | Debra Walker |
| 1:95cv5184 | Mitzie Hubert | | Becky Weeks |
| | Tina Hughes | | Gregory Weeks |
| 1:95cv5187 | Janice Griffin | 1:95cv5340 | Zilke Lewis |
| 1:95cv5198 | Kelley Jackson | 1:95cv5341 | Clemente Zamora |
| 1:95cv5199 | Alasha Fowler | 1:95cv5359 | Angela Erbes |
| 1:95cv5200 | Christina Dehnel | 1:95cv5360 | Kimberly Beverage |
| 1:95cv5204 | Teresha Collins | 1:95cv5361 | Malena Medina |
| 1:95cv5208 | Ivory Celestine | 1:95cv5364 | Tiffany Walker |
| 1:95cv5212 | Jacquelin Branch | 1:95cv5366 | Cynthia Rodriguez |
| 1:95cv5213 | Vicky Belvin | 1:95cv5369 | April Montague |
| 1:95cv5216 | Mechelle Caldwell | 1:96cv5384 | Angela Garland |
| 1:95cv5220 | Ramona Avalos | 1:96cv5385 | Monica Glenn |
| 1:95cv5225 | Michelle Mouton | 1:96cv5388 | Amanda Smith |
| 1:95cv5226 | Franchell Whitefield | 1:96cv5396 | Kimberly Davis |
| 1:95cv5227 | Kimberline Williams | | Michelle Meyer |
| | Traci Williams | | Mark Meyer |
| 1:95cv5228 | Ta–Ta Wilson | | Annette Rivera |
| 1:95cv5229 | Lisa Wooten | | Michael Rivera |
| 1:95cv5233 | Lisa Waites | | Sonya Rogers |
| 1:95cv5239 | Dawana Thomas | | Dorothy Toney |
| 1:95cv5241 | Anita Richardson | | Damien Toney |
| | Marietta Riddel | 1:96cv5397 | Tracy Vollenweidner |
| 1:95cv5248 | Judy Seay | | Steven Vollenweidner |
| 1:95cv5249 | Paula Scott | 1:96cv5401 | Timmy Ammons |
| 1:95cv5260 | Emilia Medrano | 1:96cv5410 | Kimberly Weeks |
| 1:95cv5261 | Suzi Renshaw | | Shurma Herrington |
| 1:95cv5262 | Mia Reed | | Jeannine Jones |
| | Virginia Reyes | | Pamela Wipff |
| 1:95cv5269 | Lee Ann Phipps | 1:96cv5414 | Latorrie Baines |
| 1:95cv5270 | Quinta Moore | 1:96cv5424 | Latasha Allen |
| 1:95cv5274 | Robin Leveston | | Mattie Allen |
| 1:95cv5275 | Arienna Adams | | Troy Allen |
| 1:95cv5279 | Autumn Powell | | Alodie Bab |
| 1:95cv5284 | Michelle Naranjo | | Roger Bouffe, II |

| | Latonia Brisco |
| | Yolanda Brisco |
| | Howard Buckner |
| | Jasmine Buckner |
| | Bertha Christoph |
| | Shawanda Ferrell |
| | Dwayne Johnson |
| | Xiomara Ramos |
| | Olivia Richardson |
| | Rose Smith |
| 1:96cv5431 | Jaylee Smith |
| 1:96cv5433 | LaTonya Elloie |
| | Steven Elloie |
| 1:96cv5434 | Barbara Miller |
| | Johnny Miller, III |
| | Subeana Ducros |
| | Lakeisha Howard |
| 1:96cv5437 | Michelle Pretel |
| 1:96cv5447 | Gina Trampusch |
| | Peter Trampusch |
| 1:96cv5452 | Louise Martinez |
| 1:96cv5458 | Shelly Schafer |
| | Tracy Portis |
| 1:96cv5459 | Alicia Williams |
| 1:96cv5460 | Marcy Behrendt |
| | Mathew Behrendt |
| 1:96cv5468 | Sonya Walker |
| 1:96cv5476 | Shelly Ming |
| 1:96cv5483 | Aurelia Bautista |
| | Alicia Carcione |
| | Mary Delgado |
| | Lynn Dempsey |
| | Maria Hinojosa |
| 1:96cv5490 | Melissa Kennedy |
| 1:96cv5492 | Barbara Godwin |
| 1:96cv5496 | Velma Hollingshed |
| 1:96cv5499 | Wendy Sanders |
| 1:96cv5505 | Rachelle Risley |
| | Ana Rodriguez |
| 1:96cv5521 | Dawn Beaty |
| 1:96cv5523 | Nina Dickerson |
| 1:96cv5532 | Delores Hernandez |
| 1:96cv5535 | Cherryl Williams |
| 1:96cv5542 | Sofia Sanchez |
| 1:96cv5543 | Angelique Freeman |
| 1:96cv5544 | Dana Stedham |
| | Lillian Acuna |
| | Ana Paredes |
| | Monica Harris |
| | Dolores Pon |
| | Stacy Sanchez |
| 1:96cv5545 | Susana Cuellar |
| | Michelle Mendoza |
| | Joe Mendoza |
| | Cecilia Vargas |
| | Julain Pecian |
| | Cynthia Vela |
| 1:96cv5547 | Mekisha Walker |
| | Marion Winsier |
| 1:96cv5548 | Sundon Lewis |
| | Derrick Lewis |

| | Lisa McClelland |
| | Shayne McClelland |
| 1:96cv5549 | Evelyn Leyba |
| | Richard Rodriquez |
| | Maria Lozano |
| | Tina Rodriquez |
| 1:96cv5550 | Alma Aguilar–Greenwood |
| | Steven Greenwood |
| | Victoria Emerson . |
| | Paulakai Furgerson |
| | Barry Furgerson |
| 1:96cv5552 | Bonnie Garcia |
| | Victoria Hansen |
| 1:96cv5553 | Penny Gonzales |
| | Douglas Gonzales, Jr. |
| | Virginia Hammond |
| | Jeremy Hammond |
| 1:96cv5556 | Kimberly Richard |
| 1:96cv5557 | Diana Pritchett |
| | Curtis Pritchett |
| | Lanisha Smith |
| 1:96cv5558 | Kimberly Hobbs |
| | Ricky Hobbs |
| | Marilyn McWilliams |
| | Oram McGee |
| | Bethany Meade |
| | Sister–Sherry Odom |
| 1:96cv5561 | Flor Ayala |
| | Cassandra Carter |
| 1:96cv5563 | Pamela Peek |
| | Ines Rivera |
| | Jose Guillen |
| 1:96cv5564 | Juanita Lowe |
| | James Lowe |
| 1:96cv5565 | Rose Brown–Leonard |
| | Robert Leonard |
| | Stacie Green |
| | Kevin Green |
| 1:96cv5569 | Lashondra Johnson |
| 1:96cv5571 | Lashonda Ingram |
| | Shyhonda Turner |
| | Danita LaFrance |
| | Shannon Samson |
| | Nyia Williams |
| | Gail Stockman |
| | Nekitha Tyler |
| | Shawn Pansy |
| | C'lester Jackson, Jr. |
| | C'lester Jackson, III |
| | Christian Jackson |
| | Valarie Gubert |
| | Lark Heston |
| | Arionna Ducre |
| | Jamika Wynder |
| | Jalissa Wynder |
| | Johnny Hicks |
| 1:96cv5572 | Delisa Grant |
| | Lisa Johnson |
| 1:96cv5573 | Roni Huerepue |
| | Deborah Martin |
| | Tammy Medina |

| | |
|---|---|
| | Lisa Munoz |
| | Yolanda Lazareno |
| | Antoinette Neyuenshwander |
| | Elaine Olibas |
| | Sharon Padilla |
| | Jennifer Parra |
| | Veanna Pitts |
| | Diana Rodriguez |
| | Laura Rowser |
| | Maile Saavedra |
| 1:96cv5574 | Olga Velasquez |
| | Teresa Womack |
| 1:96cv5578 | Perline Williams |
| 1:96cv5579 | Lisa Moore |
| 1:96cv5580 | Kathleen Schenck |
| | Tonette Smith |
| | Rebecca Williams |
| 1:96cv5582 | Jennifer Neill |
| | Elizabeth Ray |
| 1:96cv5585 | Zoe Merlos–Tooker |
| | Alexander Merlos |
| 1:96cv5586 | Dody Shelton |
| 1:96cv5587 | Tammie King |
| | James King, Jr. |
| | Deborah Williams–Bailey |
| 1:96cv5589 | Diana Land |
| | Michael Land |
| 1:96cv5590 | Martha Garza |
| | Luis Garza |
| 1:96cv5591 | Kara Davis |
| | John Davis |
| | Greta Williams |
| | Prennis Williams |
| 1:96cv5592 | Deana Magelors |
| | Bridget Moody |
| | Hanga Moody |
| | Judy Sutton |
| 1:96cv5597 | Shannon Hardin |
| | Michelle Howard |
| | Jeffrey Howard |
| 1:96cv5598 | Cathilene Hoffman |
| | Edward Hoffman |
| | Brenda Pickens |
| 1:96cv5602 | Trudy Bellaire |
| 1:96cv5603 | Paula Hooper |
| | Willie Jeff |
| | Gwendolyn Jefferson |
| | Jamie King |
| | Wendy Langley |
| | Kenneth Lott |
| 1:96cv5604 | Rutina Buckner |
| 1:96cv5607 | Rebecca Welch |
| | Ashton Welch |
| 1:96cv5608 | Maria Ramon |
| | Kimberly Waldrip |
| | Johnny Waldrip |
| 1:96cv5609 | Christin Contie |
| | Paul Contie |
| | Sadie Muniz |
| | Fernando Muniz |
| 1:96cv5610 | Lilian Ayala |

| | |
|---|---|
| | Ruben Ayala |
| 1:96cv5611 | Kathy Johnson |
| 1:96cv5612 | Carletta Angelly |
| | James Angelly |
| 1:96cv5632 | Shelby Bartholomew |
| | K. Smith |
| 1:96cv5645 | Jocelyn Garcia |
| | Pedro Garcia |
| 1:96cv5676 | Teresa Haley |
| 1:96cv5697 | Cherr-ree Hagans |
| 1:96cv5703 | Kathy Sain |
| 1:96cv5708 | Melissa Proctor |
| | Tina Mills |
| 1:96cv5731 | Dawn Deibele |
| 1:96cv5736 | Jodi Pearson |
| | Julie Pemberton |
| | Gwen Pigeon |
| 1:96cv5737 | Deanna Papineau |
| 1:96cv5741 | Joanna Klinkbeil |
| 1:96cv5744 | Lisa Alexander |
| 1:96cv5746 | Crystle Coburn |
| 1:96cv5750 | Debra Jones |
| 1:96cv5752 | Marcus Davis |
| | Irandesha Davis |
| | Karla Williams |
| | Kendall Williams |
| | Quinnika Williams |
| | Shannon Evans |
| | Janelle Evans |
| | Shanelle Evans |
| | Danielle Evans |
| | Gaylon Gilbert |
| 1:96cv5762 | La'Shon Willis |
| 1:96cv5765 | Carrie Gandolph |
| 1:96cv5784 | Yen Vu |
| 1:96cv5785 | Rebecca Dwyer |
| 1:96cv5786 | Brenda Ezell |
| 1:96cv5787 | Jacqueline Reese |
| 1:96cv5799 | Jennifer Armstrong |
| 1:96cv5801 | Shannon Cooke |
| | Sherry Cooke |
| 1:96cv5821 | Kim Comer |
| 1:96cv5824 | Brandie Carnes |
| | Tonya Walker |
| 1:96cv5825 | Pamela Thomas |
| 1:96cv5839 | Sabrina Odom |
| 1:96cv5842 | Rebecca Wernli |
| 1:96cv5867 | Pam Griffin |
| | Matthew Griffin |
| 1:96cv5870 | Cheryl Jackson |
| 1:96cv5876 | Tonia Pouncey |
| 1:96cv5882 | Davika Lakhram |
| 1:96cv5883 | Tamara Cummings |
| 1:96cv5884 | Kay Smith |
| 1:96cv5886 | Ronda Vogel |
| 1:96cv5892 | Lavelle Velez |
| 1:96cv5896 | Emily Morrison |
| 1:96cv5912 | Camille Hines |
| 1:96cv5916 | Melanie Goodman |
| 1:96cv5918 | Ilia Santini |
| 1:96cv5922 | Jacqueline Moore |

| | |
|---|---|
| 1:96cv5982 | Nancy Kummer |
| | Jilletta Wright |
| | Tara Clayton |
| | Milly Giles |
| 1:96cv5984 | Leicole Henderson |
| 1:96cv5985 | Dawn Shoenen |
| | Marcia Anthony |
| | Aisha McGuire |
| 1:96cv5986 | Sonya Collins |
| | Wendy Fruechtenicht |
| | Detra Bryant |
| | Pamela Brown |
| | Cheryl Little |
| | Keisha Brown |
| | Krystal McAtee |
| | Rebecca Miller |
| | Heather Stahl |
| | Michelle Andrews |
| | Tracy Bratcher |
| | Kimberly White |
| | Mary Reardon |
| | Lisa Hughes |
| | Rebecca Wiegand |
| | Carmenlita Smith |
| | Nedra Blue |
| | Yolanda Duke |
| | Mona Hayes |
| | Melanie Cummins |
| 1:96cv5987 | Tara Rogers |
| | Nicole Atkins |
| | Cynthia Repine |
| | Kimberly Beauchamp |
| | Stacy Lewis |
| | Melissa Collins |
| | Rebecca Brown |
| | Jennifer McClintock |
| | Rebecca Stotts |
| | Tammy Howell |
| | Jayne Burris |
| | Mary Troupe |
| | Debran Scott |
| | Cindy Blanton |
| | Vicky Leppert |
| | Malisica Byrd |
| | Shannon Ludwick |
| | Julia Hilligross |
| | Paula Abell |
| 1:96cv5991 | Charlotte Schoenagel |
| 1:96cv5993 | Kera Holton |
| 1:96cv5994 | Kathleen Davis |
| 1:96cv5995 | Michele Slaughter |
| 1:96cv5996 | Jennifer Schieb |
| | Deanna Jonas |
| 1:96cv5997 | Darcy Webb |
| 1:96cv6034 | Hillary Smith |
| | Viola Buckner |
| 1:96cv6035 | Claudia Garcia |
| 1:96cv6037 | Tracie Brown |
| | Nora Elkarany |
| | Nicole Peterson |
| 1:96cv6045 | Annette Flanagan |

| | |
|---|---|
| 1:96cv6048 | Kimberly McAdams |
| 1:96cv6051 | Selena Robles |
| 1:96cv6053 | Bernadine Washington |
| 1:96cv6058 | Charema Carson |
| 1:96cv6063 | Stephanie Harmon |
| 1:96cv6070 | Michelle Miller |
| | Jenifer Oliva |
| 1:96cv6081 | Bernekia Stanford |
| 1:96cv6084 | Mary Taylor |
| 1:96cv6098 | Kimberly Lum |
| 1:96cv6107 | Lisa Burgess |
| 1:96cv6112 | Summer Gilson |
| 1:96cv6113 | LaOllie Taylor |
| 1:96cv6122 | Margaret Murphy |
| 1:96cv6132 | Tammi Medders |
| 1:96cv6136 | Annette Jernigan |
| 1:96cv6145 | Melinda Botto |
| 1:96cv6158 | Darnie Hibbler |
| 1:96cv6161 | Karen Johnson |
| 1:96cv6162 | Monica Williams |
| 1:96cv6166 | Tina Moore |
| | Fiesta Murphy |
| | Shala Perry |
| 1:96cv6167 | Vera Mineard |
| 1:96cv6171 | Kathy Kuzma |
| | Melinda Lovaglio |
| 1:96cv6172 | Trina Irwin |
| | Tommiesina Johnson |
| 1:96cv6174 | Susan Duet |
| 1:96cv6175 | Alicia Chisholm |
| 1:96cv6176 | Nicho Bolden |
| 1:96cv6186 | Cathy Hutchinson |
| 1:96cv6200 | Angela Sanford |
| 1:96cv6205 | Raquel Brown |
| 1:96cv6223 | Iva Whitlock |
| | Vernoica Boyles |
| | Ollie Williams |
| | Vanessa Norwood |
| | Loyce Barclay |
| | Veronica Barrientos |
| | Cyndi Briggs |
| | Jennifer Bird |
| | Irence Ayala |
| | Taghreed Awad |
| | Michelle Washington |
| | Gwendolyn Smith |
| | Rachel Stuart |
| | Sherry Clifford |
| | Amy Beers |
| | Lisa Northcutt |
| | Sandra Cox |
| | Vickie Alley |
| | Cammi Green |
| | Lucy Nipp |
| 1:96cv6224 | Fabianne Nunn |
| | Maria Trejo |
| | Kimberly Martin |
| | Janice Peirce |
| | Misty Lawrence |
| | Debra Johnson |
| | Lessie Rogers–Brown |

Tammy Buckley
Felicia Willis
Tara Stengel
Tonya Wallace
Toni Perry
Martha Lopez
Brandy Perry
Lashonda Moss
Brandi Hardin
Pamela Allen
Kristie Bobien
1:96cv6225 Kimberly Yarnell
Laurie Short
Carrie Robertson
Monica Spigner
Laquette Lockett
Aretha Scott
Sharonda Williams
Sherri Long
Sharon Morehouse
Twyla Osborne
Tahnya Lewis
Priscilla Sampson
Karen Wagoner
Stacy Murray
Shelly Mitcham
Pamela Price
Denita Sanders
Annabell Duron
Taree Singleton
Carrie Roberts
Crystal Bruane
Cheryl Braune
1:96cv6226 Lisa Hefner
Eileen Hayes
Priscilla Hernandez
Wendy Cheum
Anntionette Strawn
Kretha Ballard–Brown
Tammy Wheeler
Lawanda Parramore
Robin Haynes
Robin Yancey
Tasha Stafford
Sarah Mitchell
1:96cv6227 Carla Hervey
P Perkins
Crystal Calkins
LaWanda Clay
Dina Minicucci
Jessica Williams
Christi Kellar
Nora Brown
Gracie Alvizo
Amber Adkins
Kristie Acosta
Jackie Allen
Angela Whitmer
Michelle Hinson
Melody Huerta
Jennifer Marxmiller

Debra McCarter
Sharon McGetter
1:96cv6228 Jeanne Flores
Oneida Flores
Shawna Gibson
Patricia Gifford
Martha Garcia
Mary Goodwin
Shelly Gable
Marlese Kemp
Christina Kemp
Mona Lamm
Sherri Jones
Bridgette Johunkin
Joyce Kennon
Julieta Corral
Jami Johnson
Aldrema Conerly
Tina Smith
Darlene Duckworth
Amy Fisher
1:96cv6229 Robin Dye
Cheryl Elder
Brandy Elbert
Candy Elliot
Pauline Diaz
Tanya Ellis
Tammy Ellis
Lajuanna Emery
Lynn Dempsey
Jean Crawford
Keri Crooks
Lisa Craker
Rhonda Chapman
Sherry Crouch
Cemonia Crowder
Vickie Baylor–McLendon
Bridgette Davis
Regina Cruz
Jolene Holt
Latasha McGuire
Marcella Holland
Donna Holdridge
Kathleen Hodges
Debra Howard
Cheryl Hudson
Carol Young
1:96cv6230 Latasha Jackson
Holly McElroy
Traci Proctor
Lisa Pryor
Shirley Radford
Rachel Reagan
Mary Rusher
Wanda Taylor
Elizabeth Primo
Rose Gomez
Rebecca Gowin
Mira Goode
Joana Gonzales
Delma Sosa

| | | | |
|---|---|---|---|
| 1:96cv6231 | Angela Rettig | | Debra Sims |
| | Shenequil Jackson | | Beverly Gonzales |
| | Jana Robertson | | Vickie Farris |
| | Cherry Jenkins | | Christine Burke |
| | Carlotta Johnson | | Crystal Hays |
| | Dalia Resendez | | Shelly Story |
| | Jeanette Henderson | | Jessica Gailey |
| | Maria Rodriquez | | Maria Rodriquez |
| | Lori Handy | | Carolyn Jones |
| | Ernestina Rodriquez | | Loretta Caldwell |
| | Jennifer Jones | | Cherree Reed |
| | Staci Wallace | | Cantrel Laury |
| | Tyra Walker | | Susan Stanfield |
| | Jamie Wherry | | Erin Rutledge |
| | Cheryl Carroll | | Michelle Stanberry |
| | Delannia Reed | | Valarie Hill |
| 1:96cv6232 | Kristi Thornhill | 1:96cv6235 | Lisa O'Boyle |
| | Bridget Rose | | Veronica Cook |
| | Amy Reynolds | | Antonia White |
| | Debbie Foster | | Alondria White |
| | Robbin Ohipps | | Angel Hampton |
| | Tracy Timm | | Ortencia Trujillo |
| | Cynthia Taylor | | Persephone Burks |
| | Shannon Riley | | Deanine Castro |
| | Annette Calhoun | | Anitha Mireless |
| | Denise Riley | | Torsha Johnson |
| | Wendy Riley | | Rosaura Mergarenjo |
| | Kendra Toney | | Dekieska Tate |
| | Shonetta Henderson | | Toni Pope |
| | Shanetta Robinson | | Cassandra Mills |
| | Luci Thompson | | Laura Phillips |
| | Jennifer Tobin | | Gwen Muller |
| | Tammy Townsend | | Shalina Migura |
| | Vanessa Urdialez | | Heather Berry |
| | Thao Le | | LaJuana Phillips |
| | Nancy Reyna | | Tammy Johns |
| | Crystal Romesburg | 1:96cv6236 | Elizabeth Gatlin |
| 1:96cv6233 | Karen Morrow | | Michelle Hernandez |
| | Susan McKinnerney | | Patricia Lee |
| | Shawana Reed | | Juanita Bowen |
| | Diane Vasquez | | Rena Kitrell |
| | Tammy Smith | | Ragan Kirby |
| | Tisha Jeffery | | Esmeralda Wilkerson |
| | Jennifer Morrison | | Jackie Kohr |
| | Amy Lawrence | | Lanisha Smith |
| | Maria Price | | Robin Frazier |
| | Valarie Smith | | Sheila Wilson |
| | Paula Yocham | | Helen German |
| | Laura Thompson | 1:96cv6237 | Rebecca McCaffety |
| | Tamesha Mosley | | Tammy Marling |
| | Mary Leming | | Amanda Martin |
| | Sandra Patterson | | Benita Bryant |
| | Tricie Washington | 1:96cv6238 | Camona Taylor |
| | Jacqueline Thomas–Hicks | | Debbie Wheat |
| | Felicia Scurlock | 1:96cv6239 | Commanda Logan |
| | Tracy Wooly | | Sophia Lora |
| | Laura Wise | | Jenne Lunsford |
| | Jossie Scott | | Violet Miller |
| | Louanda Schodts | | Angela Moore–Thompson |
| | Bobbie Martin | | Ethal Moore |
| 1:96cv6234 | Gerrianna Patton | | Anita Morris |

| Case No. | Name | Case No. | Name |
|---|---|---|---|
| | Dana Nail | 1:97cv6387 | Suzanne Evatt |
| | Toni Ochoa | 1:97cv6465 | Christy Hunt |
| | Teresa Reynolds | 1:97cv6602 | Melissa Thompson |
| | Emily Walzier | 1:97cv6948 | Brenda Taylor |
| 1:96cv6240 | Tonya Adams | 1:97cv7029 | Bonnie Zimmerman |
| | Saundra Allen | 1:97cv7163 | Kathy Reams |
| | Andrea Amos | 1:97cv7310 | Rebecca Castleberry |
| | Tammy Byars | | Lari Cochran |
| | Lisa Callahan | | Kimberly Doke |
| | Melanie Canava | | Tammy Hopkins |
| | Angela Davis | | Constance Jones |
| | Armandina Fennell | | Lisa Lewis |
| | Lori Foster | | Elizabeth Morrison |
| | Amy Hail | | Bridget Motley |
| | Charlotte Heist | | Michelle Murphy |
| | Carri Lewis | | Pamela Pearce |
| 1:96cv6270 | Tracey Milburn | | Mandy Strickland |
| 1:96cv6273 | Victoria Johnson | | Janel Stueve |
| 1:96cv6275 | Yvonne Walls | | Carleen Thomas |
| 1:96cv6282 | Charlene Barnhard | | Barbara Wade |
| 1:96cv6289 | Yulonda Young | | Tonya Walden |
| 1:96cv6290 | Jacqueline Williams | | Martha Winberry |
| 1:96cv6294 | Lisa Chillingworth | 1:97cv7313 | Tracy McClain |
| 1:96cv6297 | Virginia Hall | | Rene Medina |
| 1:96cv6316 | Nancy Espinosa | 1:97cv7314 | Lisa Blasnek |
| | Ernest Espinosa | 1:97cv7317 | Jamaeka Wilson–Webb |
| | Gina Horton | 1:97cv7319 | Tiffany Jacobson |
| | Ann McAlister | 1:97cv7325 | Juanita Razz |
| | Shennika Simmons | 1:97cv7333 | Kristeen Frost |
| 1:96cv6321 | Deborah McCavey | 1:97cv7341 | Valerie Caskey |
| | Cindy Tompai | | Josephine Crothers |
| | Mary Wagner | | Mary Smith |
| | Tasha Wimberly | 1:97cv7345 | Regina Moses |
| 1:96cv6322 | Ashia James | 1:97cv7347 | Reinella Coates |
| | Vickie James | 1:97cv7352 | Kim Williams |
| | Teresa Jones | 1:97cv7355 | Christina Franco |
| | Michele Wilson | 1:97cv7356 | Carolette Meadows |
| 1:96cv6323 | Bridgett McKnight | | Karla Soto |
| | Brittain Smith | | Diana Suarez |
| 1:96cv6324 | Debbie Boldue | | Elsie Virella |
| | Laurie DuBose | 1:97cv7360 | Charolette Jefferson |
| | Melissa Grant | 1:97cv7361 | Kelly–Jo Butler |
| | Regina Roberts | | Brenda Howe |
| | Carol Wells | 1:97cv7369 | Valorie Whatley |
| | Desiree Boomer | 1:97cv7371 | Susan Martin |
| 1:96cv6325 | Lakisha Cherry | 1:97cv7376 | Katherine Boyd |
| | Minnie Faust | 1:97cv7398 | Shelia Thompson |
| | Marcella Muller | 1:97cv7410 | Melinda Andrews |
| | Kendra Parker | | Iliana Griffin |
| | Vickie Vaughn | | Phyllis Hymon |
| 1:96cv6335 | Dawn Aguilar | | Darlene Parish |
| 1:96cv6339 | Crystal Drettwan | | Tammy Roane |
| 1:97cv6340 | Cecilia Puente | 1:97cv7413 | Tamara Demers |
| | Cesar Puente | | Lisa Lopez |
| 1:97cv6343 | Jamie Amato | 1:97cv7414 | Tina Campbell |
| | Jeanette Harmon | 1:97cv7416 | Angela Chakeris |
| | Vanessa Stivey | 1:97cv7417 | Janel Bennett |
| | Theresa Wells | | Mr. Bennett |
| | Tiphany Wilkerson | | Wendy Cloer |
| 1:97cv6345 | Shayne Mosteller | | Moses Cloer |
| 1:97cv6361 | Pamela Smith | | Yvette Wilson |

| | |
|---|---|
| | Terry Wilson |
| 1:97cv7419 | Allison Guarino |
| 1:97cv7420 | Tina Bullard |
| | Andrea Fields |
| | Karen Hardiman |
| | Shenita Harris |
| | Sarah Hearne |
| | Tiheema Howell |
| | Jennifer Hunt |
| | Tammy Johnson |
| | Charlene McCray |
| | Michelle Price |
| | Cynthia Quick |
| | Kisha Owens |
| 1:97cv7429 | Jeanne Sample |
| 1:97cv7456 | Shirley Keys |
| | Craig Keys |
| | Anthony McAffee |
| 1:97cv7457 | Marylin Coburn |
| | Annie Donaldson |
| | Pamela Small |
| 1:97cv7458 | Patricia Carvalho |
| | Paulette Sinclair |
| 1:97cv7459 | Michael Baldino |
| | Dayna Mooney |
| | Philip Mooney |
| | Patricia Pike |
| | Owen Pike |
| 1:97cv7460 | Gwendolyn Anderson |
| | Otilia Figueroa |
| | Geovona Mann |
| | Lenora Moreland |
| | Sonya Nelms |
| 1:97cv7461 | Judy Berg |
| | Robert Berg |
| | Libia Demers |
| | Roland Demers |
| | Marilyn Eloranta |
| | Harri Eloranta |
| | Oscar Gonzalez |
| | Rosario Gonzalez |
| | Rafael Gonzalez |
| 1:97cv7463 | Laura Crosby |
| | Shannon McLeland |
| 1:97cv7466 | Tawana Robinson |
| 1:97cv7476 | Sandra McElmurry |
| 1:97cv7481 | Kara Stumpff |
| 1:97cv7490 | Katy Goodman |
| 1:97cv7498 | Dianna Siebert |
| | Michael Seibert |
| | Colby Seibert |
| 1:97cv7499 | Jose Fernandes |
| | Tricia Morgan |
| | Thomas Morgan |
| | Stacy Antonakis |
| 1:97cv7500 | Nemoneshia Verner |
| 1:97cv7501 | Laura Martinez |
| 1:97cv7502 | Regina Lawrence |
| 1:97cv7508 | Kendal Alkire |
| | Machell Jordan |
| 1:97cv7531 | Shawn Fujita |
| 1:97cv7533 | Sheila Johnson |
| 1:97cv7563 | Shannon Champagne |
| 1:97cv7568 | Regina Hale |
| 1:97cv7569 | Bessie Walker |
| | Brenda Woodard |
| | Kathy Richardson |
| 1:97cv7574 | Stefanie Deem |
| | Melody Donley |
| 1:97cv7580 | Tarri Kimes |
| 1:97cv7582 | Velia Dominquez |
| | Trinidad Hernandez |
| 1:97cv7584 | Kathy Birschbach |
| | Linda Lane |
| | Theresa Wolfe |
| 1:97cv7589 | Sirena Batek |
| | Jacqueline Cook |
| | Misty Jaco |
| | Kim Laughlin |
| | Kerry Logsdon |
| | Cintia Martinez |
| | Heidee Tiner |
| | Consuella Williams |
| | Michelle Alcorta |
| 1:97cv7590 | Yolanda Aguirre |
| | Angelina Cerini |
| | Belinda Flores |
| | Irma Garcia |
| | Angela Griffin |
| | Leticia Hernandez |
| | Deborah Watkins |
| | Lisa Adams |
| | Berda Allen |
| | Tracy Anderson |
| | Pamela Atherton |
| | Donna Branscum |
| | Angela Bryant |
| | Sandra Bustinza |
| | ChaSondra Butler |
| | Stephanie Cade |
| | Maria Castillo |
| | Ruth Ortiz–Cloves |
| 1:97cv7591 | Mitzi Walter |
| | Stephanie Warren |
| | Rebecca Watson |
| | Brenda Watson |
| | Melissa Watson |
| | Baisha Williams |
| | Felicia Wilson |
| | Janet Wise |
| | Nicole Zamora |
| | Tanya Matthews |
| | Crystal McAdoo |
| | Bobbie McCloud |
| | Karen McCoy |
| | Jo McDonough |
| | Dana McLain |
| | Jennifer Mesker |
| | Shannon Miller |
| | Natasha Mitchell |
| | Sonia Moore |
| | Sharma Moreno |

Tameka Norman
Jasmine Parkinson
Brenda Perales
Reina Phillips
Denise Pratt
Tara Pruitt
1:97cv7592 Tina Turner
Dorothy Tuya
Kimberly Ussery
Veronica Valencia
Tiffany Vanek
Melissa Vasquez
Alfreda Walker
LaTonya Walker
Regina Walker
Sharonda Walker
Dytra Walton
Regina Warner
Cheryl Washington
Shirley Washington
Thresir White–Christie
Chrissy Wiggins
Latricia Wiggins
Jennifer Wilbanks
Baisha Williams
Cynthia Williams
Mary Williams
Nicole Williams
Nyree Williams
Tonya Williams
Nicole Willis
Arika Woods
Susan Woods
Selia Ybarra
1:97cv7593 Brenda Witt
Amy Holland
Kimberly Agnew
Jacqueline Aldredge
Stephanie Alexander
Kellie Allen
Jacqueline Anderson
Kimberly Andrews
Lynessa Andrews
Yarnell Baker
Paula Barjer
LaTonya Barnes
Michele Beachum
Rachel Benivamonde
Peggy Black
Tammy Boatwright
1:97cv7594 Gabriella Sanchez
Katherine Sexton
Crystal Shaffer
Sabrina Shepherd
Melissa Sheppard
Pashaa Simmons
Chandra Smith
Jennifer Smith
Patricia Smith
Tanya Smith
Rita Sparks

Jimmie Sparrow
Karin Stanfiel
Sandy Stewart
Crystal Strange
Angela Taylor
Dinesha Thomas
Tamiko Thomas
Kelli Towery
Sandra Trevino
Patricia Rocha
1:97cv7595 Valerie Richardson
JoAnn Rios
Kristi Rodecap
Marsha Royers
Cheryl Rozell
Brandi Rutter
Jenny Morales
Patches Raines
Cynthia Ramirez
Angela Redden
Saundra Reynolds
Joette Rioz
Valerie Roberts
Gayla Rutledge
Rosario Sanchez
Stacy Sims
Sherry Skinner
Cynthia Smitherman
Pamela Stewart
Evelyn Taylor
DeAnn Turner
Louisa Vidaurre
1:97cv7596 Patti–Jo Moore
Tonya Moore
Sandra Morales
Christina Munrose
Angela Munson
Kamelia Osborne
LaToya Owens
Lisa Parsons
Iesha Patterson
Gena Pierce
Jennifer Plunkett
Rhonda Pointer
Ereka Price
Sermalia Price
Jennifer Pringle
Lanna Ramsey
Lisa Randon
Shoa Razvi
Helen Redmon
1:97cv7597 Amanda Kilgore
Santillia King
Sarah Krempl
Sherry LaFleur
Serena Lane
Kimberly Lanza
Yolanda Lerma
Angelita Lopez
Sharon Loring
Teresa Magallon

Lucille Mares
Barbara Martin
Kimberly McKellar
Terra McQuay
Liza Medel
Beverly Miller
Cinda Miller
April Mizzles
Shalesha Mock
Yolanda Monks

1:97cv7598 Catrina Harris
Marilyn Harris–Howard
Dianne Hasley
Shelitha Hawkins
Jessi Hiberd
Lakeisha Hicks
LaTricha Holmes
Mary Hosea
Pamela Hosea
Dimitri Howard
Demetria Hutch
Yolanda James
Audrey Johnson
Rhonda James–Hampton
Desirra Johnson
Ferlinda Johnson
Helen Johnson
Kristie Johnson
Melinda Johnson
Sandy Johnson
Vivienne Johnson
Carole Jones
Dorothy Jones
Jacklyn Jones
Kelly Junkin
Kelli Kelly
Marlene Kerschen

1:97cv7599 Leslie Harris
Melissa Harris
Shannon Harris
Angela Heady
JoAnn Heredia
Shannon Hetzel
Katrina Hill
Hellen Hooper
Anita Hylen
Angie Jackson
Misty Jenkins
Marlena Jimmerson
Angela Johnson
Pamela Johnson
Jana Kennedy
Valerie Lackey
Patricia Limon
Monica Lopez
Sherwanda King

1:97cv7600 Kyeirdea Edwards
Angelica Flores
Sonya Flowers
Anita Ford
Becky Frerichs

Raquel Gamboa
Brandi Garcia
Betty George
Serena Gilbert
Sonia Girdy
Ofelia Gonzalez
Inez Goodman
Jennifer Goodrich
Kimberly Gore
Jody Gossett
Sonia Green
Tonya Green–Sykes
Bridget Griffin
Cherie Griffin
Crystal Grumbles
Nichole Hall
Judith Halley
Lisa Hancock
Beverly Harris

1:97cv7601 Robbin Crenshaw
Marta Croom
April Curtis
Lurie Deloff
Louise Denney
Cynthia Dorries
Lana Fultz
Sharri Gardner
Crystal Gibson
Tammy Gibson
Sue Gober
Mary Brown
Kathy Cabler
LaDawn Capps
Mariana Chacon

1:97cv7602 Lisa Cisneros
Rhonda Clark
Judy Hambrick
Windy Hill
Stacey Stowe
Leah Loomis
Doris Nash

1:97cv7603 Donna Thompson
Christine Standish
Bonita Johnson
Melissa Russell
Deanna O'Neil
Tina Baron
Clarice Evans
Angela Jump
Carol Sharp
Dawn Kayes
Robyn Lattan
Catherine Grant
Beulah Degen

1:97cv7604 Kristin Warren
1:97cv7620 Angeglica Davila
1:97cv7625 Elizabeth Lavazza
1:97cv7630 Wendy Platt
1:97cv7638 Alice Koehlmoos
1:97cv7647 Sheila Davis
Karen Bird

Candice Anderson
Maureen Capozzoli
Lisa Montgomery
Latetia King
Debbie Graham
Elizabeth Dhaeseleer
Kathy Davis
1:97cv7648 Tamara Ayers
Jackie Berenbrock
Carmela Deshon
Leagh Cassell
Holly Jewell
Karen Kerbyson
Joanna Schmidt
Barbara Bridges
Uda McCaleb
Linda Miles
1:97cv7649 Kathy Austin
Janie Brewington
Pamela Carter
Melissa Collins
Tera Haney
Tammy McCandless
Barbara Murray
Ronda O'Shields
Glinda Stewart
Tammy Turner
1:97cv7650 Michele Adgurson
1:97cv7651 Dawn Clarke
Rene Darbyshire
Irene Gomez
Deborah Houghton
Debbie Houston
Patricia Lackey
Frances Lawler
Cathy Richardson
Carrie Stewardson
1:97cv7652 Candace Berry
Belynda Bottoms
Margaret Coon
Tammy Prine
Tammie Shoemaker
Jennifer Smith
Linda Street
Dianna Thomas
Lori Wren
1:97cv7653 Bobbie Cole
Vanessa Gibson
Kathryn Kaczorowski
Tia Knotts
Beth Kunz
Tammy Leonard
Rachel Smithson
Tracy Snyder
Brandy Stewart
Karen Wheeler
1:97cv7654 Melissa Westbrook
Jamie Malone
Melissa Holder
Terri Lafferty
Robyn Tom

Bobbie Sadler
Tracey Young
Debra Wilson
Angie Sams
Posha Honeycutt
Janie Bogue
1:97cv7655 Stacie Johnson
Shane Lewis
Jamie Mendez
Cheryl Reed
1:97cv7656 Tomma Celuch
Brandi Christian
Delores Frazier
Kirston Rodriguez
Jodi Yonts
1:97cv7657 Vallera Butler
Yvonne Essick
Laurie Locker
Renee Thomas
Kerrie Accornero
Cherly Adams
Jacqueline Alameda
Charlene Alba
Antonia Albano
Joanne Apodaca
Melloney Bailey
Alexis Blanchard
Siobain Bonilla
Michelle Brooks
Germaine Brown
Margaret Campbell
Maria Carrasco
Rani Carveo
Dianna Cervantes
Sherlene Chavez
Vaness Clark
Michelle Cohen
Michelle Colsell
Xandralyne Connors
Tonya Cox
Michelle Culbertson
Sheryl Davis
Tracy Davis
Rolinda Dees
Anja Dellith
Rebecca DeRouchey
Cari Esposto
Lindsey Ewald
Natalie Fales
Maria Ferguson
Selina Fernandes
1:97cv7658 Catherine Burke
Catherine Belding
Tracy Hoobyar
Alice Quinn
Robin Rittenhouse
Cynthia Trux
1:97cv7659 Kimberly Hill
Catherine Morant
Denise Murray
Crystal Myers

848

Debbie Schmidt
Shelly Lemon
Jennifer Webb
Victoria Williams
1:97cv7660 Mandi Clark
Kimberly Edwards
Catherine Mangino
Melissa Tester
1:97cv7661 Lisa Cole
Kristina De La Rosa
Tara Deck
Norma De La Cruz
Lydia Delgado
Gracie Dominguez
Valerie Dominguez
Bridget Erekson
Karen Evans
Juanita Fears
Terri Franks
Carmen Garcia
Katina Gee
Penny Goodwin
Kim Harvey
Natasha Harvey
Monica Heredia
Norma Hermosillo
Christie Hobbs
Misty Huff
Veronica Johnson
Tabatha MacDowell
Cristina Curiel
Carla Collingsworth
1:97cv7662 Lori Vaughn
Stacey Wagner
Patricia Flynn
Karen Hougas
Ayanna Hart
Lee Seiber
1:97cv7663 Donna Johnson
Carolyn Owings
Tracy Wilson
1:97cv7664 Tia Cox
Lisa Pounds
Dawn Williamson
Dawn Haymond
Katea Johnson
1:97cv7665 Katrina Longhat
Serene Schwenneker
1:97cv7666 Pamela Flores
Paula Ford
Valerie Fuqua
Raelynn Gotchell
Maria Haase
Laura Henry
Stacy Holder
Lori Iribarren
Lisa Isle
Gina Jones
Kelly Jordan
Dawn Karpinski
Tracy Kavanaugh

Danielle Kempa
Julie Kettering
Stephanie Kiernan
Leslee Logan
Kari Logsdon
Amanda Martin
Paula McAlany
Elizabeth McClelland
Donise McDaniels
Stephanie McLaren
Jacqueline Merritt
Anush Morales
Tammy Morales
Kendra Munroe
Susan Neese
Alicia Norgaar
Lesa Omara
Raylene Ortega
Marlina Palomino
1:97cv7667 Phyliss St. Thomas
1:97cv7668 Jennifer–Wells Dumas
Yolanda King
Shirl Brown
Theresa Brown
Jamie Flippo
Michelle George
Shellie Hinsley
Jenisu Latham
Kerri Nall
Angel Reina
Salena Miller
Princess Miranda
Elizabeth Moore
Melinda Moore
Norma Morua
Annita Oxford
Paula Palmer
Sharon Pringle
Anita Ramos
Michelle Riddle
Sharon Rincon
Angela Sandoval
Roxanne Segovia
Lyn Spiller
Rosa Torres
Melissa Townsend
Katrina Tutt
Doris Vaughn
Angela Watlington
Joann Woods
1:97cv7669 Deirdre Lindsey
1:97cv7670 Kelly Chipps
Jan Hite
1:97cv7671 Carrie Campbell
Lorie Haley
Lavonne Love
Stephanie Moore
Lori Smith
D.J. Wigley
1:97cv7672 Marva Jones
Becky Thornton

Carrie Urquhart
Tina Steele
Amy Vanhorn
Shawnte Maye
Karen McConnell
Deundra Mitchell
Scottie Moody
Kathleen Oneal
Lisa Harris
LoAnn Blanton
Sonya Donaldson
Jane Cunningham
1:97cv7673 Michelle Seay
1:97cv7676 Sheli Willetts
1:97cv7677 Amy Rivera
Kris Margid
Lisa Jarrell
Tammy Guthrie
Sonia Smith
1:97cv7678 Tamara Evans
1:97cv7679 Stephanie Woisard
Druecilla Stephens
Dena Gennings
Holly Jefferson
Peggy Neal
Destiny Gossett
Kira Brown
Tracie Gulley
Deborah Price
Tammy Araujo
1:97cv7680 Heather Hamlet
Lisa Hudson
Michele McCaskill–Miller
Kerry Sanderson
Sheree Spanier
Rosetta Stephenson
Carolyn Stewart
Isauel Valenciano
1:97cv7681 Angela Wagner
Bonnie Kruszewski
Allison Braje
Melissa Rockefeller
Peggy Marsh
Francine Levallee
Laqurdia Robinson
Holly Powell
Samantha Parker
Dorothy Nowatski
Dawn Snyder
Doreen Hale
Jennifer Simmons
Felecia Thomas
1:97cv7682 Mickelle Tomlin
Carol Staron
Denise Martin
Jodie Nezdoba
Laura Kennedy
1:97cv7683 Victoria Melendez–Smith
Naomi Taylor
Wendi Snyder
Anissa Smothers

Trea Jones
Julia Jones
April Friar
Isobel Fitzpatrick
Diana Bess
Angela Bennett
Cindy Campbell–Mosley
1:97cv7684 Susan Shear
1:97cv7685 Michelle Sather
Stacey Lloyd
Petrina Hill
Christina Garvin
1:97cv7686 Elana Basham
Carlena Buckner
1:97cv7687 Zanetta Parks
Gabrielle Parra
Kristie Paulas
Joyelle Miller–Phillips
Oralia Ramirez
Jayne Reizner
Enma Rodriguez
Marisela Sanchez
Theimba Seaich
Tracey Shepard
Rebecca Sinclair
Paula Smith
Kiana Reeves
Joyce Trent
Sherri Vidaurri
Kimberly Hall–Sisson
Heidi Aranson
Billi Coday–Terry
Desiree Thayer
Kristian Thomas
Elyn Timmermans
Rachelle Valverde
Mayra Vides
Nicole Waddell
Racheal Welch
Robin Wilder
Laquinta Williams
Danniele Zmak
1:97cv7688 Jennifer Randall
Jenith Cowley
Amy Olsen
1:97cv7689 Angella Paloni
Betsy Galindo
1:97cv7690 Tricia Myers
Ramoncita Pena
Tori Moore
April Wormly
Katherine Coulombe
Karen Dunn
Annette Garcia
Dawn Petties
1:97cv7696 Heidi Hack
Shannon Haupt
Gwendi Hopkins
Keeshan Jones
Michelle Toth
1:97cv7712 Joy McGregor

| | |
|---|---|
| 1:97cv7719 | Warnell Farrell |
| 1:97cv7733 | Stacey Phillips |
| 1:97cv7735 | Denise Trujillo |
| 1:97cv7736 | Jennifer Drew |
| 1:97cv7744 | Brie Ellul |
| 1:97cv7749 | Carmen Morrell |
| 1:97cv7750 | Cecilia Garcia |
| | Alicia Risueno |
| | Karen Zopatti |
| 1:97cv7753 | Norma Aguirre |
| | Ty Buchanan |
| | Gail Wilkins |
| 1:97cv7756 | Roberta Armour |
| 1:97cv7757 | Rosie Taylor |
| 1:97cv7758 | Michelle Casey |
| | Lori Bauer |
| 1:97cv7759 | Irene Roskovensky |
| | Dorothy Smith |
| | Shawna Mead |
| | Piedad–Bayona Vizcaino |
| | Diane Thompson |
| | Melissa McKinney |
| | Patricia Kelly |
| | Colleen Valente |
| 1:97cv7761 | Sheri Gage |
| | Monique McCabe |
| 1:97cv7762 | Janina Bowman |
| | Priscilla Calhoun |
| | Joy Stanley |
| 1:97cv7763 | Kim Keeran |
| | Tammy McDaniels |
| 1:97cv7764 | Michell Detour |
| | Nina Day |
| 1:97cv7765 | Michelle Leary |
| 1:97cv7767 | Kelly Pezolano |
| | Jennifer Brown |
| | Stacey Burnworth |
| | Teresa Carroll |
| 1:97cv7770 | Shari Davis |
| 1:97cv7771 | Janise Bryson |
| | Anna Camden |
| | Sharon Campbell |
| | Tonita Channel |
| | Rachel Chism |
| | Brenda Christiansen |
| | Amy Conners |
| | Paula Cress |
| | Kurtinya DeBoe |
| | Marna DeClue |
| | Jessica Dick |
| | Christina Dillon |
| | Julie Dominquez |
| 1:97cv7773 | Heather Weir |
| 1:97cv7774 | Laurell Bailey |
| | Lisa Barrett |
| | Erma Major |
| | Kristina Palmer |
| | Penny Shabeeb |
| | Carmen Washington |
| | Debbie Alford |
| | Kenya Collins |

| | |
|---|---|
| | Debbie Lax |
| | Meredith Smith |
| 1:97cv7775 | Nicole Chambers |
| | Judi Romanski |
| | Nilsa Cruz |
| 1:97cv7776 | Migdalia Luga |
| 1:97cv7777 | Tammy Griffin |
| 1:97cv7779 | Charlene Armstrong |
| | Kim Jensen |
| 1:97cv7780 | Trina Boone |
| | Johanna Jones |
| 1:97cv7782 | Kathryn Marshall |
| | Yeyette Sanford |
| | Suzanne Pitt |
| 1:97cv7783 | Mary Hazlewood |
| | Tina Campbell |
| 1:97cv7784 | Susan Edney |
| 1:97cv7785 | Alice Weir |
| | Holly Baker |
| 1:97cv7787 | Lisa Downing |
| | Angela West |
| | Pauline Estes |
| 1:97cv7789 | Barbara Lasalla |
| | Gretchen Hughes |
| | Loretta Glenn |
| | Rosa Corporan |
| 1:97cv7790 | Haven Hachmeister |
| | Nadine Wellington |
| 1:97cv7791 | Angelica Garcia |
| | Margie Henderson |
| 1:97cv7792 | LaChasta Giles |
| 1:97cv7794 | Ingrid Hakala |
| 1:97cv7795 | Kara Williams |
| 1:97cv7796 | Vivian Brown |
| | Denise Couplin |
| 1:97cv7798 | Kristin Ross |
| 1:97cv7799 | Julie Nordsven |
| 1:97cv7801 | Marlena Odom |
| | Marisol Duque |
| 1:97cv7804 | Virginia Peterson |
| 1:97cv7805 | Christy Johnson |
| 1:97cv7806 | Margaret Boland |
| | Mitzi Gentry |
| | Felicia Lewis |
| | Kimberly Davis |
| 1:97cv7807 | Terri Asher |
| | Sandra Cox |
| | Rochelle Dixon |
| | Kimberly Farrell |
| | Brandie Freeman |
| | Debbie Imhof |
| | Lisa Murphy |
| | Lisa Rarick |
| | Candi Sisk |
| | Correna Swaney |
| | Stephanie Thompson |
| 1:97cv7808 | Rhonda Durham |
| 1:97cv7809 | Candace Clark |
| | Mona Cowen |
| 1:97cv7810 | Julie Hughes |
| | Angela Thibodeaux |

| | |
|---|---|
| 1:97cv7811 | Christina Askew |
| | Linda Brown |
| | Tawanda Parks |
| | Stephanie Chambers |
| 1:97cv7812 | Tonya Buschette |
| | Joy Wakonabo |
| | Carol Brown |
| 1:97cv7814 | Julie Zemple |
| 1:97cv7815 | Connie Bellinger |
| | Bethann Briere |
| | Jacqueline Tarver |
| | Lisa Seneca |
| | Paulette Skinner |
| | Stacey Sequin |
| | Markina Cosby |
| | Christine Barringer |
| | Kendra Wetmore |
| | Elaina Morgan |
| | Nancy Marshall |
| | Virginia Fuhs |
| | Brenda Chadwick |
| | Sue Nelson |
| | Janene Bouck |
| | Melanie Bates |
| | Kelly Baurle |
| | Cindy Christensen |
| | Bridget Sanderson |
| | Heather Wolf |
| | Ida Dufault |
| | Laura Ferris |
| | Marge Mendez |
| | Tina Evans |
| | Dacey Wills |
| | Jeanine Vautrin |
| | Delia Phelps |
| | Christine Reynolds |
| | Lisa Langdon |
| | Tina Shatraw |
| 1:97cv7837 | Laura Castronuovo |
| 1:97cv7839 | Linda Weikal |
| 1:97cv7865 | Sharon McConnell |
| | Tami McPherson |
| 1:97cv7868 | Rochelle Davis |
| | Lisa Everidge |
| | Lashanda Flether |
| | Trenda Goodman |
| | Felecia Liddell |
| | Shannon Page |
| | Tamara Tate |
| | Zelantra Williams |
| | Christine Wooton |
| | Susan Boyett |
| | Molisia Braswell |
| | Ashley Busby |
| | Terri Finley |
| | Kimberly Fuschini |
| | Michelle Hall |
| | Catina Howell |
| | Nancy Howell |
| | Becky Humphries |
| | Anita Jones |
| | Lula Knight |
| | Shebretia Livingston |
| | Pamela Manning |
| | Barbara Pryor |
| | Wendy Richardson |
| | Loyetta Weston |
| | Sandra Hedrick |
| | Lisa Arceneaux |
| | Gail Stockman |
| 1:97cv7884 | Jan Meeks |
| 1:97cv7885 | Michele Riley |
| | Angela Rolland |
| 1:97cv7893 | Amy Knifer |
| 1:97cv7912 | Amy Knifer |
| 1:97cv7917 | Shondrikkeyia Gee |
| | Roosevelt Travis |
| | Hanoi Gonzalez |
| 1:97cv7926 | Christine Lemastres |
| 1:97cv7927 | Mary Shinault |
| 1:97cv7948 | Tracey Dickerson |
| 1:97cv7968 | Marya Marvin |
| 1:97cv7976 | Sandra Brewer |
| | Jackye Brim |
| | Carolyn Britten |
| | Kathrene Brunson |
| | Connie Burroughs |
| | Maria Chavez |
| | Belinda Cheney |
| | Lorie Chumley |
| | Kara Clawson–Labrot |
| | Tamika Cleveland |
| | Lola Coffman |
| | Lashown Cousar |
| | Tina Craig |
| | Delana Crawford |
| | Dawn Crawley |
| | Lisa Crocran |
| | Patricia Daniels |
| | Tammy Darty |
| | Cynthia Davenport |
| | Carlesha Davis |
| | Angela Dickerson |
| | Wendy Echols |
| 1:97cv7977 | Angelica Remes |
| 1:97cv7978 | Theresa Hardy |
| | Laketa Sutton |
| 1:97cv7993 | Tina Barlar |
| 1:97cv8027 | Hope Dasher |
| 1:97cv8045 | Brandy Adams |
| 1:97cv8049 | Tammy Akana |
| | Isabella Alcantra |
| | Roberta Casabar |
| | Cara Castro |
| | Jelena Clay |
| | Dena Dooley |
| | Ann Dugos |
| | Laurie Freimark |
| | Furyisa Gagnon |
| | Lisa Kuahuia |
| | Kimberly Kululoia–Juan |
| | Stacey Martin |

| | | | |
|---|---|---|---|
| | Brandy Mulock | 1:97cv8256 | Latrise Mitchell |
| | Milly Orquia | | (Jane Doe) Moody |
| | Erica Poveda | | Michelle Oberholzer |
| | Lititia Sakai | | Afa Olguin |
| | Dina Wessel | | Kristeen Parnow |
| 1:97cv8068 | Natasha Alvarado | | Phyllis Patterson |
| | Melissa Bell | | Patricia Preyer–Jones |
| | Cathy Benoy | | Mary Rescigno |
| | Coleen Bertram | | Maria Rjorla |
| | Karla Bestul | | Carmen Roberts |
| | Kimberly Blalock | | Tammi Robinson |
| | Trisha Brieske | | Debra Rodriguez |
| | Stefanie Bunch | | Heather Rossman |
| | Terry Buttweiler | | Ocotolan Rouse |
| | Tina Butzer | 1:97cv8257 | Nancy Miranda |
| | Melissa Cornish | 1:97cv8265 | Karen Edgett |
| | Jordeana Deallenbach | | Jennifer Atkinson |
| | Collette Davis | | Shelly Martin |
| | Dana Bernetzke | | Ronda Green |
| | Amanda Dycus | | Trevon Anderson |
| | Suzanne Falter | | Lesa Davis |
| | Stephanie Grambort | | Juliette Davis |
| | Shelly Grosskreuz | 1:97cv8268 | Sundae Weems |
| | Donna Hammond | | Malissa Whitfield |
| | Jennifer Hayward | | Kimberly Wilkerson |
| | Cynthia Holm | | Lydia Williams |
| | Yolanda Holmes | | Stacy Yost |
| | Jada Jackson | 1:97cv8269 | Royce Murray |
| | Peggy Jamerson | | Anne Nehring |
| 1:97cv8070 | Tammy Johnson | | Karen Newton |
| 1:97cv8080 | Amntina Payano | | Bernadine Orwan |
| 1:97cv8089 | Andrea Radke | | Barbara Patterson |
| 1:97cv8093 | Maria Martinez | | Sabrina Perrin |
| 1:97cv8094 | Deborah Pogue | | Mechelle Porter |
| 1:97cv8123 | Natalie Melero | | Santanya Ramsey |
| | Jessica Velez | | Terri Redd |
| | Ndia Mangual | | Kristie Rheubottom |
| 1:97cv8129 | Aretha Tucker | | Sharon Richardson |
| 1:97cv8132 | Vorita Ackley | | Terri Schrack |
| | Carolyn Sturm | | Sharrisse Scott |
| 1:97cv8133 | Shirley Newsom | | Ann Spencer |
| | John Newsom | | Pearl Tate |
| 1:97cv8134 | Julie Williams | | Sheila Taylor |
| 1:97cv8173 | Darlene Patrick–Aust | | Chenchira Trotter |
| 1:97cv8179 | Ralph Cole | | Angela Walters |
| | Buddy Simpson | 1:97cv8270 | Katherine Freeman |
| 1:97cv8180 | Antonio Solorio | | Virginia Glickman |
| 1:97cv8184 | Vickie Copeland | | Japonica Harding |
| 1:97cv8198 | Peggy Tallent | | Shannon Hardwick |
| 1:97cv8200 | Alycia Worth | | Ceneria Hirschowitz |
| | David Worth | | Jacquette Hopkins |
| 1:97cv8204 | Felicia Howard | | Linda Horton |
| 1:97cv8205 | Joann Fausphoul | | Kimberly Johnson |
| | Myarla Poullard | | Keri Klausing |
| 1:97cv8210 | Steven Sanchez | | Nichole Lassiter |
| 1:97cv8219 | Carla Brady | | Tomiko Lovette |
| | Veronica Ham | | Mary McAllister |
| | Teresa Smith | | Lyndi McDowell |
| 1:97cv8226 | Marisol Martinez | | Danielle Medley |
| 1:97cv8250 | Harold Smith | | Glenda Mellinger |
| | Renee Smith | | Marquette Mitchell |

 ██

1:97cv8271 Ruth Arvin
Tawanda Baker
Theresa Banks
Janie Battle
Pamela Boom
Katina Brown
Rachel Carter
Kimberly Clemons
Angela Coale
Donna Cohen
Shakita Cunningham
Shyreese Daniel
Lynette Dudley
1:97cv8305 Robert Williams
1:97cv8309 Angela Jensen
Richard Jensen
1:97cv8310 Sandy Miller
Robert Miller
1:97cv8312 Angela Holmes
Lisa Mandell
Tammy Benner
1:97cv8315 Jessica Font
Osvaldo Font
1:97cv8325 Debby Allen
Soraya Ayala
Pamela Brown
Marie Chavez
Nicole Ciulla
Sharmari Coates
Rosa Dunning
Georgina Fatam
Kimberly Fields
Terry Frank
1:97cv8327 Kathryn Bedgood
Randy Bedgood
1:97cv8328 Rosalea Segura
1:97cv8329 Rebecca Young
1:97cv8333 Denise Clark
1:97cv8335 Susan Lariviere
Tammy Latham
1:97cv8336 Laura Kimbrell
1:97cv8337 Justina Guy
Cindy Hammett
Christine Harvey
Debra Hayworth
1:97cv8339 Felecia McGruder
Lakisha Oliver
1:97cv8342 Kimberly Faulks
1:97cv8348 Anita Williams
1:97cv8350 Loree Williams
1:97cv8358 Tammy Latham
1:97cv8359 Laura Kimbrell
1:97cv8361 Justina Guy
1:97cv8362 Cindy Hammett
1:97cv8363 Christine Harvey
1:97cv8364 Debra Hayworth
1:97cv8372 Lakisha Oliver
1:97cv8381 Janet Flanders
1:97cv8384 Kimberly Foster
1:97cv8393 Athena Curry
1:97cv8397 Tammy Spears

1:97cv8398 Patricia Ragan
1:97cv8409 Bernice Anderson
1:97cv8414 Iris Rodriguez
1:97cv8421 Michelle Hardley
Deshonda Hines
Carla Johnson
Jacklyn Jones
Sherry Lewis
Jennifer Liebersbach
Holley Lowe
Sherry Lowe
Karen Marin
Ann McKee
1:97cv8422 Stacey Swenson
Kyra Tepaski
Jody Thomas
Gina Trampush
Tara Tyler
Rebecca Vanderwal
Colleen Wehrly
Susan Williams
Tracey Wood
Kim Zarcone
Cherilyn Present
Cynthia Batiste
Nina Mills
Regina Prosser
Sabrina Edmond
Star Montgomery
Donna Webb
Shirley Dickson
Tammy Boren
Gloria Lawai
Christiane Gincore
1:97cv8424 Amy Sifuentes
Ciro Sifuentes
1:97cv8427 Betty Moore
Loretta Grigg
Annie Nguyen
1:97cv8428 Takesha Knox
1:97cv8432 Lisa Sterling
1:97cv8433 Christine Franks
1:97cv8434 Monique Diamond
Shannon Wilson
1:97cv8435 Chandler Joyce
Amanda Nix
1:97cv8437 Golden Bradford
1:97cv8439 Rosa Thomas
Tammy Shelton
Connie Strickler
Sheila Walters
1:97cv8440 Tammy Brzezinski
Elizabeth Belcher
1:97cv8443 Stephanie Burnham
Jacqueline Burns
Meladie Carlson
Terri Casnel
Deandra Clan
Aelena Collinson
Yolanda Curry
Alyssa Daniel

1:97cv8444 Angela Deloach
Jeannie Dobbs
Adrienne Fayard
Amber Ferguson
Faith Ford
Erika Foster
Ronda Fulgham
Jacqueline Garrett
Kathleen Gillum
1:97cv8445 Samantha Gwaltney
Amanda Hayes
Jacqueline Hayes
Frankie Hemphill
Jana Hoda
Tina Husband
1:97cv8446 Robin Kane
Elizabeth Kleinshmidt
Lisa Langley
Christy Lapniewsky
Rene Leonard
Isakina Little
1:97cv8447 Crystal Lucas
Sandra Lumpkin
Meda Magnusen
Belinda Martin
Ginger Bergeron
Jacqueline McClinton
Mary McConnell
Angel McGee
Angel McGee
Mary Millwood
1:97cv8448 Venescia Owens
Sophia Parish
Temeka Parker
Robin Pascual
Latoya Phillips
Robin Posey
Varnieca Price
Barbara Randle
1:97cv8449 Stephanie Roberson
Glenda Rogers
Darlana Ryan
Amy Smith
Tamia Smothers
Bridget Sproles
Lisa Stone .
Cynthia Stonecypher
1:97cv8450 Randie Bostick
1:97cv8451 Sonya Thompson
Ellen Turner
Angela Waltman
Jeffrey White
Carlotta Williams
Rhonda Williams
1:97cv8452 Anjanette Broome
Tammy Grier
Amanda Haley
Kandy Nichols
Dawn Beckel
Sherry Sissom
1:97cv8453 Darlene Walters

Julia Mitchell
Neckida Young
Angela Singleton
Brandi Smathers
Margo King
Noretta Coley
1:97cv8454 Karen Adams
Tonia Bangs
Joyce Bateman
Tammie Bell
Sherri Bobinger
Stephanie Brown
1:97cv8494 Maribel Miron
Adrienne Ramirez
1:97cv8496 Asia Ludlow
1:97cv8505 Laverne Steivey
1:97cv8506 Carlos Martinez
1:97cv8507 Francine Kucan
Jennifer Maile
1:97cv8510 Dayna Pennington
Murphy Pennington
1:97cv8511 Nicole Weaver
Lietrese Rogers
Tiffany Weakley
1:97cv8517 Evelyn Islam
1:97cv8522 Quileisha Jones
1:97cv8523 Tommie Paulk
1:97cv8526 Willie Malone
Versoal Turner
1:97cv8527 Diana Rosado
Adriana Morales
1:98cv8533 C Smith
1:98cv8536 Karen Bailey
1:98cv8539 Gale Brown
1:98cv8541 Rubie Castro
Kari Denison
Teresa Fuentes
1:98cv8553 Terri Jamison
1:98cv8555 Jody Sangster
Azalia Vazquez
1:98cv8556 Jan Bolemis
Heather Brown
Patricia Emond
Anne Goyer
Christine Graff
Lisa Green
Stephanie Inscore
Denise Laroche
Rebecca Major
Sandra Moldonaro
Melisa Pestana
Virginia Reidy
1:98cv8563 Ashley Stringer
1:98cv8567 Stacey Jackson
1:98cv8577 Monique Burton
Betty Cole
Angela Daniels
1:98cv8578 Julie Forbus
Cynthia Gore
Linda Greer
Lena Hall

| | | | |
|---|---|---|---|
| | Stacy Hardy | 1:98cv8732 | Jennifer Griffin |
| | Johnette Harper | 1:98cv8734 | Beverly Gulledge |
| | Tomica Harris | 1:98cv8737 | Tiwanda Hampton |
| | Annzetta Hayes | 1:98cv8739 | Amanda Harding |
| | Glenna Higbee | 1:98cv8740 | Alisha Harris |
| 1:98cv8579 | Catherine Johnson | 1:98cv8745 | Natasha Hooks |
| | Tina Johnson | 1:98cv8749 | Misty Hunter |
| | Toni Johnson | 1:98cv8752 | Altovise Jackson |
| | Sylvia Leech | 1:98cv8767 | Tammy Lee |
| 1:98cv8580 | Sylvia Mallard | 1:98cv8776 | Sarah Mims |
| | Glenda Mangrum | 1:98cv8777 | Katherine Mitcham |
| | Jolene Manuel | 1:98cv8786 | Felicia Nelson |
| | Tammy Meeks | 1:98cv8787 | Amy Nicholson |
| | Amanda Moran | 1:98cv8792 | Michelle Ogdon |
| | Leanne Netto | 1:98cv8794 | Dorothea Oliver |
| | Tiffany Nistor | 1:98cv8801 | Jeanette Phillips |
| | Tasha Perkins | 1:98cv8805 | Joyce Porter |
| 1:98cv8581 | Constance Peterson | 1:98cv8810 | Angela Randall |
| | Sharon Roach | 1:98cv8815 | Audrey Robinson |
| | Latarsha Shaw | 1:98cv8816 | Shorne Robinson |
| | Tracie Shelton | 1:98cv8818 | Celetha Roquemore |
| 1:98cv8582 | Tysha Stewart | 1:98cv8823 | Jennifer Sanders |
| | Dawn Swanson | 1:98cv8825 | Jennifer Scott |
| | Dawn Thornton | 1:98cv8828 | Rosemary Simmons |
| | Pamela Vasser | 1:98cv8831 | Debra Smith |
| 1:98cv8583 | Natasha Williams | 1:98cv8838 | Shaundra Smith |
| 1:98cv8590 | Lena McElroy | 1:98cv8839 | Spanjatta Smith |
| 1:98cv8595 | Shannon Sandefur | 1:98cv8840 | Terry Smith |
| 1:98cv8604 | Maureen Bailey | 1:98cv8850 | Veronia Stubbs |
| 1:98cv8605 | Gloria Bell | 1:98cv8851 | Melanie Suddeth |
| 1:98cv8607 | Debra Brumback | 1:98cv8853 | Katina Toler |
| 1:98cv8609 | Theresa Clay | 1:98cv8858 | Robin Wade |
| 1:98cv8612 | Sonya Copeland | 1:98cv8860 | Terry Wall |
| 1:98cv8615 | Beverly Diamond | 1:98cv8863 | Tamisha Wells |
| 1:98cv8618 | Deborah Fitzpatrick | 1:98cv8865 | Lisa White |
| 1:98cv8638 | Kimberly Smith | 1:98cv8869 | Tamiko Wimberly |
| 1:98cv8644 | Laurie Abney | 1:98cv8875 | Katheryn Parrish |
| 1:98cv8651 | Jennifer Baker | 1:98cv8882 | Karen Teems |
| 1:98cv8653 | Cynthia Basemore | 1:98cv8885 | Tamela Allen |
| 1:98cv8655 | Kimberly Bate | 1:98cv8887 | Carlene Young |
| 1:98cv8660 | Nancy Berry | 1:98cv8889 | Sheryl Gowdy |
| 1:98cv8661 | Laurie Abney | | John Gowdy |
| 1:98cv8666 | Sotonyio Bonner | | Jessica Gowdy |
| 1:98cv8670 | Laurie Abney | | Christopher Gowdy |
| 1:98cv8671 | Jeanette Bryant | | Rebecca Gowdy |
| 1:98cv8677 | Sandra Calhoun | 1:98cv8890 | Tina Spear |
| 1:98cv8678 | Faye Callaway | 1:98cv8894 | Pamela Maleveaux |
| 1:98cv8679 | Holly Candellas | | Maribel Contretas |
| 1:98cv8681 | Amy Childs | 1:98cv8899 | Michelle Johnson |
| 1:98cv8686 | Akuiller Cole | 1:98cv8901 | Victoria Kresse–Troxell |
| 1:98cv8693 | Margie Cunningham | 1:98cv8904 | Sandra Clemons |
| 1:98cv8694 | Samantha Daniels | | Evelyn Elliot |
| 1:98cv8695 | Alesia Carlette | | Ollie Hill |
| 1:98cv8698 | Shawanna Davis | | Lisa Jensen |
| 1:98cv8699 | Virginia Davis | 1:98cv8905 | Christine Pate |
| 1:98cv8700 | Cathy Dean | 1:98cv8913 | Charnell Mims |
| 1:98cv8704 | Terri Doxey | | Demeko Parker |
| 1:98cv8708 | Sharon Eason | | Deborah Pope |
| 1:98cv8710 | Lori Elmendorf | | Kimberly Pressley |
| 1:98cv8714 | Latarria Farlar | | Celina Robinson |
| 1:98cv8729 | Paula Grabowski | | Michelle Stallworth |

| | | | |
|---|---|---|---|
| | Robin Steadman | | Tonya Buschette |
| | Cynthia Taylor | | Weyaka Cavanaugh |
| | Tammy Walker | | Anita Cloud |
| | Natasha Wheeler | | Maria Cloud |
| 1:98cv8917 | Ly Perry | | Consuelo Defoe |
| 1:98cv8920 | Lisa Cloyd | | Judy Drift |
| 1:98cv8923 | Bridget Lindner | | Ingrid Gross |
| | Kathryn Peoples | | Nicki Heisler |
| 1:98cv8929 | Lacresha Montgomery | | Janice Holstein |
| | Yvonne Salazer | | Cynthia Jackson |
| | Jennifer Kinnard | | Kristine Manning |
| | Emma Ayon | | Connie Neadeau |
| | Dorothy Nieto | | Barbara Robinson |
| | Wakesha Bolen | | Joy Wakonabo |
| | Anna Friedlander | | Cynthia Wriskey |
| | Tina Sotelo | | Jennifer Lacey |
| | Sandra Ortiz | | Redfish Candace |
| | Tracy Ray | | Hattie Dunham |
| | Delma Chavez | | Carol Brown |
| 1:98cv8930 | Kristal Garcia | | Tammy Blair |
| | Lisa McCellon | | Michelle German |
| | Heidi Murdock | | Martha Lemay |
| 1:98cv8935 | Sherilyn McKenzie | | Melva Clifford |
| 1:99cv8937 | Virginia Bozeman | | Melanie Maconnell |
| 1:99cv8942 | Angela Glisson | | Tracy Tallman |
| 1:99cv8945 | Christa White | 1:99cv8952 | Laura Lee |
| 1:99cv8950 | Janice Airy | | Christine Bennett |
| | Seda Avartanian | | Heather Brown–Johnson |
| | Angela Bonner | | Rhonda Bruce |
| | Tonya Bouillion | | Roberta Cooper |
| | Kristy Bush | | Kathryn Finley–Volkert |
| | Julie Carter | | Brenda Book |
| | Lorelei Flook | | Amy Hensley |
| | Angel Freeman | | Tamara Janicke |
| | Debra Furrh | | Constance Johnson |
| | Gina Galicia | | Elizabeth Jones |
| | Abby Garza | | Tina Morris |
| | Beverly Gonzalez | | April Richardson |
| | Monica Grant | | Kimberly Seagraves |
| | Shameka Griffith | | Gina Townsend |
| | Bonnie Henderson | | Joni Wilson |
| | Pamela Henderson | | Dana Adams |
| | Joyce Henry | | Valarie Finn |
| | Shanna Hipp | | Kris Lambert |
| | Carla Hornbuckle | | Tina Mahaffey–Simon |
| | Melony Houston | | Michelle Parson |
| | Anita Howard | | Paula Smith |
| | Yolette Jackson | | Cora Stonewell |
| | Shannon Johnson | | Lisa Stratton |
| | Twanna Johnson | | Rachel Walsh |
| | Stephanie Kiker | | Mary Williams |
| | Vanessa Mays | | Paula Beaty |
| | Jeaneen Morris | | Sara Buckley |
| | Belinda Morrison | | Lori Cox |
| | Shelly Myers | | Tracy Campell |
| | Catherine Roche | | Angela Griffin |
| | Michelle Uzzell | | Linda Jones |
| | Magdalena Velaquez | | Peggy Crim |
| | Monisha Williams | | Lisa Grimes |
| | Jacquelin Eaglin | | Sharon Ivy |
| 1:99cv8951 | Cynthia Beste | | Melinda Williams |

Elizabeth Adkins
Donna Bardenwerper
Kimberly Brooks
Barbara Meyer–Spidwell
Christina Ruckin
Paula Young
Angela Barriger
Cathey English
Patricia Gast
Crystal Gonzales
Terrie Gossett
Peggy Hitchcock
Valerie Kent
Melissa Martinez
1:99cv8953 Aimee Reasoner
Sheilah Mathis
Karen Mooney
Kristin Nighswonger
Angela Reed
Sheri Riddle
Rina Sheilds
Jill Streit
Donna Teels
Lisa Townsley
Sheri Vincen
Misty Bowman
Debra Bradshaw
Pauletta Brown
Cheryl Bruckman
Melissa Brundige
Michelle Bucher
Connie Cobb
Polly Daniel
Michelle Davis–Prince
Teri Dollard
Angela English
Nancy French
Lakeshia Hampton
Rebecca Herron
Christina Hill
Pamela Hoskins
Sherry Ingram
Kristi Jeffress
Dena Jennings
Gwendy Mann
April McCauley
Elizabeth McCollum
Robin McSpadden
Rose Merrell
Sadie Mills
Monica Mitchell
Jennifer Morrow
Carol Nichols
Cathy Reynolds
Tammie Schlude
Katrina Solley
Melinda Stackle
Betty Talley–Pruitt
Jennifer Tatum
Dawn Terry
Khristina Ward

Linda White
Yvonne Whitner
Christine Willis
1:99cv8954 Tina Schmidt
Kelley Winkle
Rhonda Horton
Robyn Chistensen
Karen Serrano
Cindi Cave
Faye Cox
Julie Kats
Susan Paggeot
Pamela Robotham
Susan Burzynski
Kerry Crise
Cynthia Cox
Linda Martinson
Jerriann Picton
Tonya Richmond
Sharon Wilson
Candi Bellanger
Robin Knox
Cynthia Slemin
Tammy Anderson
Melynda Arnold
Selina Bryant
Theresa Burkett
Sabrina Burley
Anjanee Carter
Johnette Carter
Jennifer Carter
Lori Collins
Lateasha Copeland
Yolanda Cornelious
Linda Crews
Tammy Cummings
Debbie Daniels
Glenda Franklin
Betty Fritz
Christina Fulton
Shirley Gardner
Vickie Glass
Bettina Griffin
Mary Griffin
Brenda Grubbs
Linda Hart
Johanna Hill
Michelle Hughes
Randie Johnson
Jodi Jones
Patricia Jones
Ruby Larkins
Joy Lashley
1:99cv8955 Heather Gilbertson
Marnell Keller
Fanthom Mason
Martha Vann
Sandy Ballenger
Relinda Drake
Amanda Durham
Sherri Farley

Paula Gorff
Melissa Green
Lisa Hannawell
Natalie Harris
Anita Hooper
Roxanne Hopple
Natasha Hutchinson
Vickie Jenkins
Wendi Jones
Angela Maddox
Jennifer Martin
Shannon Stephens
Libby Worley
Debra Wolfe
Brandy Bentley
Jodi Branscom
Katherine Carney
Dala Clutter
Jerie Crabtree
Jennifer Fortner
Christy Frank
Misty Frank
Angela Gibson
Connie Henson
Trischa Johnson
Angela Jones
Marlo Keith
Kimberly Lewis
Angeline May
Robin Meadows
Nicolle Randolph
Deanna Smith
Anne Marie Stephens
Kimberly Sturman
Donna Tolle
Jackie Vitali
Kathy Walke
Angela Bennett
Donna Blankenship
Doris Bowers
Tiffany Brown
Melissa Cunningham
1:99cv8956 Tara Minnick
Teresa Ford
Sally Foster
Jill Fox
Elizabeth Gould
Jessica Hall
Tina Harry
Rebecca Hosey
Tanya King
Marie Mallow
Angela Pullin
Elizabeth Raley
Patricia Rotsolk
Tammy Rowe
Laurie Sample
Melinda Shepherd
Heather Stultz
Pamela Swartz
Melissa Taylor

Helen Thornton
Vickie Wilkerson
Anne Wilkins
April Morgan
Angela Manuel
Melissa Martinez
Angel McDonald
Susan McKinley
Tonya McNab
Latishie McNair
April Mercer
Donna Mincey
Amy Moon
Sandra Moon
Suzi Morris
Patricia Moss
Angela Nash
Delisa Renew
Maria Riley
Rebecca Sellers
Joy Skelton
Debbie Smith
Jennifer Smith
Pamela Smith
Cindy Steedley
Jennifer Tawzer
Tracy Taylor
Diane Williams
Tammy Williams
Duretta Billedeaux
Eileen Hoyt
1:99cv8957 Dawn Anson
Christina Burris
Tamara Clark
Diana Cody
Vickie Cooper
Leslie Duncan
Palora Fowler
Shiela Gilbert
Enola Hicks
Sara Hillis
Kimberly Hubbard
Misti King
Tam Le
Heather McCarty
Yolanda McDuffie
Lavenia McFarland
Mary Miller
Rebecca Minton
Linda Price
Stephanie Parker
Tracie Standlee
Sherry Snyder
Tabitha Sixkiller
Brenda Russ
Tina Strunk
Elizabeth Teague
Stacy Tevebaugh
Maria Gonzalez
Mary Hayden
Lisa Jordan

Kay Joslin
Eveline McCombs
Norine Papiese
Robyn Werham
Mei Torgeson
Peggy Dick
Brandy Groves
Nicole Lamotte
Melissa Makler
Jodi McLellan
Rebecca Listol
Tara Steele
Deborah Williamson
Toynette Hill
Karen Leblanc
Chandra Allen
Kelly Adams
Deedre Anderson
Erica Blackman
Julie Deluca

1:99cv8959 Sheri Ketchins
Linda Valdivieso
Kimberly Dorsey
Kimberly Griffin
Bridgett Kennedy
Brandy Quinn
Teneshia Smith
Shantrell Cains
Kristy Stevenson
Regina Scott
Angelle Keeney
Nicole Hicks
Rogina Shaw
Stacey Clark

1:99cv8960 Jennifer Wilson
1:00cv8961 Latoya Skillman
1:00cv8962 Alene Adams
Deidre Bean
Lesta Burgess
Julie Burris
Shana Crosby
Katrina Herring
Rebecca Krouse
Annette Lee
Robin March
Dana Miguez
Marie Morgan
Ginger Newton
Angela Owens
Rae Ayers
Tamara Burnett
Evelyn Childress
Brenda Courtney
Jessica Ebert
Holly Grisby
Teresa Herndon
Tammy Ketchum
Shana McDonald
Tanganyika Reed
Julie Rhea
Tawanda Sherrin

Norma Simpson
Violet Snow
Johnetta Taylor
Jennifer Vaughn
Kathy Vieux
Crystal Walton
Davena Wartchow
Vatesta Washington
Jamsey Weaver
Debra Whitten
Jennifer Williams
Tamma Woulfe

1:00cv8963 Amy Anderson
Jodi Anderson
Eva Bales–Bone
Melissa Bedford
Melissa Buntt
Helen Byrum
Connie Carson
Angela Clark
Kearl Coke
Crystal Coulson
Laura Gildhouse
Lesa Gray
Jennifer Green
Felicia Gregory
Melanie Johnson
Vanetta Johnson
Kelli Jones
Ginger Kirkland
Katrina Lemley
Stephanie Lusby
Lea Malone
Linda McCaul
Antoni McPherson
Elizabeth Michael
Adrian Moore
Talisa Newton
Regina Owens
Jennifer Peevy
Lorie Ray
Lori Readnour
Peggy Rose
Angela Rucker
Ronda Shepherd
Diana Smith
Cindy Stanley
Shawna Steele
Amanda Stroud
Linda Sweezy
Stacey Ward
Cathy Wilson
Marilyn Wood
Laura Kemp

1:00cv8964 Tammy Ellis
Catherine Bailey–Morgan
Regina Baker
Angie Balentine
Christina Barnhill
Trina Beadle
Dawnya Rice

Debbie Blower
Lee Breedlove
Elnora Bridges
Kelley Burris
Cynthia Chapman
Lisa Chatham
Telisa Chavez
Linda Cross
Karla Donaldson
Sandy Ferrell
Lorraine Flournnoy
Brandy Ford
Leigh Freeman
Tracy Goad
Denise Green
Shelly Hickman
Helena Horton
Michelle Jackson
Katherine Kilpatrick
Tammy Lambert
Sherri Jones
Sally McIntosh
Georgina Meis
Monique Murrell
Sonya Powell
Nikki Parton
Natasha Rosaker
Natasha Russell
Jamie Schwarz
Cynthia Shaw
Alicia Smith
Deborah Smith
Lisa Smith
Kim Sowers–Hanson
Angela Spencer
Robin Stevens
Brandi Blower
Sharon Tatum
Adron Bowen
Christina Weins
Sarah Willis
Stephanie Martin
1:00cv8965 Tracy McDowell
Miriam Garrafa
1:00cv8966 Sherall Jackson
1:00cv8967 Shannon Brown
Paula Osborne
Melissa Owen
Jacqueline Poniewierski
Sondra Slone
Laura Smith
Cynthia Robertson
Gail Robert
Angela Thacker
Jennifer Wert
Mary Wilson
Loretta Wilson
Tina Williams
Terri Wright
Susan Padgett
Katina Pannell

Lisa Payton
Tia Plowman
Patty Sallaz
Christine Shultz
Melody Shelton
Veola Shenk
Missy Davis
Jennifer Deeter
Joyce Donan
Kyra Hartwig
Kimberly Allen
Shannon Allen
Melissa Baker
Mindy Barker
Conda Mann
Krissi Handwerger
Tammy Harston
Candy Matthews
Dina Mazurek
Beverly McCarty
Cassie McCarty
Tamara Letcher
Lisa Lewis
Anna Carroll
Dana Collins
Dorothy Joiner
Jerilyn Kaid
Barbara Jones
Terri Bates
Natasha Burris
Holly Bartlett
Linda Barnhardt
Rosa Ozemok
Linda Parker
1:01cv8968 Susan Aguayo
Gerald Aguayo